## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MEGAN PETE, an individual

*Plaintiff,*                                          Civil Action No. 1:24-cv-24228

v.

MILAGRO ELIZABETH COOPER,
an individual,

**JURY TRIAL DEMANDED**

*Defendant.*

_____

  Plaintiff Megan Pete hereby files this action (hereinafter, (the "Complaint")) against Milagro Elizabeth Cooper ("Defendant").  Ms. Pete alleges the following facts, upon her own knowledge and upon information and belief:

### NATURE OF THE ACTION

  1. For years, Defendant Cooper acted, and continues to act, on behalf of Daystar Peterson (also known as Tory Lanez) as an online rumor mill churning out falsehoods about Ms. Pete to her tens of thousands of social media followers. Since Mr. Peterson's 2020 indictment for felony assault with a deadly weapon after shooting Ms. Pete, to his later conviction in December 2022 (the "Trial"), up through today, Defendant Cooper performed Mr. Peterson's public bidding to denigrate, belittle, insult, and spread false statements about Ms. Pete on her online social media platforms, for no other reason than to bully, harass and punish Ms. Pete for Mr. Peterson's conviction and to tarnish her reputation, causing emotional distress.

  2. The lengths to which Defendant Cooper goes to harass Ms. Pete knows no bounds. For example, she has gone so far as to share a deepfake pornographic video of Ms. Pete. In June 2024, Defendant Cooper encouraged her 27,000 X followers to view an X post by Bimbella that

shared a doctored, artificially created video of Ms. Pete purportedly engaged in sexual acts without Ms. Pete's knowledge or consent. After Defendant's conduct led to a firestorm of negative reaction from others, Defendant doubled-down in a YouTube video on June 9, 2024, claiming Ms. Pete was a "professional victim" and denying any wrongdoing. But Defendant is wrong—her conduct was an unlawful promotion of an altered sexual depiction and caused Ms. Pete severe emotional distress and reputational harm.

3.      In another instance on September 2, 2024, Defendant Cooper accused Ms. Pete of having "a severe drinking problem" who "needs to spend more time in a relationship with herself and her therapist and maybe AA." Defendant has no personal relationship with Ms. Pete and had no basis to make such outlandish and false claims.

4.      In yet another instance on July 30, 2024, Defendant Cooper went so far as to cast doubt on Ms. Pete's "mental status," asking her followers if Ms. Pete "ha[s] a guardian or no?" and whether Ms. Pete has "ever been deemed, like legally retarded?"

5.      Defendant's low blows did not stop there. Defendant consistently resorted to name calling Ms. Pete, characterizing her as an "angry black woman" and a "lying ass hoe" during her online livestreams.

6.      Additionally, in or around June 29, 2024, Defendant tried to pull information on Ms. Pete's father in an attempt to publish private information about her family and cause damage to Ms. Pete's reputation.

7.      Ms. Pete has repeatedly tried to stop Defendant Cooper's misconduct and asked what it would take to stop being posted on Defendant's platforms. In response, Defendant provided the snide advice that Ms. Pete should "just get over it, or go away."

2

8.      Defendant Cooper also made numerous false statements about Ms. Pete regarding Mr. Peterson and the Trial. Defendant's conspiratorial relationship with Mr. Peterson is troubling. Defendant acts as a paid surrogate used to spread Mr. Peterson's lies about Ms. Pete.

9.      For example, on October 27, 2024, Defendant Cooper falsely claimed that the firearm Mr. Peterson used to shoot Ms. Pete was not produced during the Trial because it was missing. That is not the case. The firearm remains in the custody of the Los Angeles Police Department. Defendant Cooper could have easily verified this information, but instead chose to ignore it and spread lies about the integrity of the Trial and related investigation.

10.     Additionally, Defendant Cooper spread the false rumor that Mr. Peterson did not shoot Ms. Pete, even after a unanimous jury of Mr. Peterson's peers decided otherwise. For instance, on October 28, 2024, Defendant Cooper posted a video on her X account directed at Ms. Pete and asked, "can you even prove that you was shot?" The State did prove that fact, and Mr. Peterson is currently serving a 10-year sentence for it.

11.     In May 2022, Defendant posted an image of a Los Angeles Police Department report from Mr. Peterson's arrest stating that the first doctor to see Ms. Pete "confirmed laceration due to stepping on glass," not a firearm wound. However, the information from the police report was recorded before bullet fragments were discovered in Ms. Pete's feet during surgery, which completely debunked Defendant's post. That did not stop bloggers from picking up on Defendant's post and spreading the misinformation.

12.     Defendant also attended the Trial and livestreamed her falsehoods during hearings. Defendant's posts consistently spread misinformation challenging the stories of witnesses and their credibility while sharing their names online, amounting to witness intimidation.

13.     During the Trial, Defendant posted the following Tweets:



← **Tweet**

IG: **@MilagroGramz** ✓ 🔒
@MilagroGramz__

Talking about credible when we all sitting in there. Stfu

5:06 AM · Dec 16, 2022

**37** Retweets   **3** Quote Tweets   **472** Likes



IG: **@MilagroGramz** ✓ 🔒
@MilagroGramz__

Kelsey spoke to prosecutors and told them one thing, but today says she LIED.

Kelsey says she never saw Tory pull a gun on Megan or shoot her.

5:33 PM · Dec 14, 2022

**885** Retweets   **937** Quote Tweets   **2,988** Likes



**Milagro Gramz** ✔
@MilagroGramz__

All this case taught anyone was that your father, brother, cousin, or son could face over 20 years in prison without proper evidence, a botched investigation, & another likely suspect just because non credible witnesses said you did something.

& y'all slow a🌀s cheering

14.     More recently, after posting about a lawsuit a former videographer filed against Ms. Pete in April 2024 and Ms. Pete's motions to dismiss, Defendant also falsely claimed that Ms. Pete was "caught trying to deceive the courts again," referencing her testimony in the Trial.

15.     Enough is enough.  Ms. Pete—a victim of violent crime and champion of women's rights to her millions of fans worldwide—will no longer stand for Defendant's campaign of harassment.  She brings this Complaint for damages and equitable relief to end Defendant Cooper's vendetta against her.

## II.     THE PARTIES

### A.     The Plaintiff

16.     Megan Pete, a performance artist also known as Megan Thee Stallion, is a citizen of Florida who permanently resides in Miami, Florida.

### B.     The Defendant

17.     Milagro Elizabeth Cooper, also known as Milagro Gramz, is a citizen of Texas who permanently resides in Houston, Texas.

## III.    JURISDICTION AND VENUE

18.     This Court has subject-matter jurisdiction over the state law claims alleged herein under 28 U.S.C. § 1332, because there is complete diversity between the parties, and the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs.

19.     Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this complaint occurred in this District.

20.     This Court has personal jurisdiction over Defendant Cooper pursuant to the Florida Long-Arm Statute, Section 48.193, Florida Statute, because she (a) committed tortious acts within the State of Florida; and (b) caused Ms. Pete to suffer injury in Florida.  Additionally, Defendant Cooper (a) committed tortious acts outside the state; (b) while engaged in solicitation and service activities within the state; and (c) caused Ms. Pete to suffer injury in Florida.

IV.     **FACTUAL ALLEGATIONS**

    A.     **Defendant Is A Malicious Actor That Operates Social Media Accounts That Spread False And Harassing Content**

21.     Defendant Cooper is a well-known online social media grifter who traffics in false and sensationalist narratives.

22.     Defendant controls and operates an X (formerly Twitter) account under the screenname @MobzWorld; Instagram and TikTok accounts under the username @milagrogramz; and a YouTube account under the screenname @MobRadio (collectively, the "Social Media Accounts"). Defendant has the power to determine the subject matter and specific content that is published on her Social Media Accounts, and to remove or refrain from publishing content if she chooses.  Defendant is the sole writer and/or editor of every post on her Social Media Accounts.

23.     On information and belief, Defendant Cooper deployed, and continues to deploy, fake bot accounts on her Social Media Accounts to attack any social media users who defend Ms. Pete or criticize Defendant's characterizations of Ms. Pete.

    B.     **Defendant Engaged In A Years-Long Campaign of Harassment Against Ms. Pete**

24.     Throughout Mr. Peterson's Trial and through today, Defendant Cooper has engaged in a campaign of harassment on behalf of Mr. Peterson to spread false and harassing messages about Ms. Pete on her Social Media Accounts based on her close relationship with Mr. Peterson and his father.

25.     In June 2024, a deepfake video purporting to show an artificially created version of Ms. Pete engaging in sexually explicit acts circulated on the internet (the "Deepfake Video").

26.     It is unknown who created the Deepfake Video. Ms. Pete had no knowledge of, or involvement in the creation or distribution of the Deepfake Video, nor did she consent to or authorize the creation or distribution of the Deepfake Video.

27.    On or about June 8, 2024, Defendant Cooper published on her X account a post that encouraged her followers to watch the Deepfake Video. As reported by news publication Uproxx, Milagro "encouraged users to check [the Deepfake Video] out."[1]  Numerous individuals followed her advice and accessed the video from Defendant Cooper's X page.

28.    On June 9, 2024, Defendant Cooper published a video on her YouTube account that addressed her X post related to the Deepfake Video. [2]

29.    In the YouTube post, Defendant shared an image of Ms. Pete over a news chyron that questioned whether Ms. Pete is "[a] professional victim." A true and correct copy of the screenshot of the image is below.



30.    Defendant then shared a screenshot of an X post dated June 8, 2024 that directed her followers to "[g]o to my likes." A true and correct copy of the screenshot of the image is below.

---

[1]    https://uproxx.com/music/megan-thee-stallion-ai-sex-tape-response/

[2]    https://youtu.be/FUUzzmSNWIQ?si=aGv89UlmII2BcMlE



31.    Defendant's "Likes" page included a post that promoted, transmitted, posted, and/or shared a publication of the Deepfake Video, and thus provided her followers access to the Deepfake Video.

32.    Defendant Cooper affirmed this in her YouTube post. She stated that she "told whoever follows me on social media to go to my likes to see what it is that we're discussing", which confirmed that she encouraged her followers to watch the Deepfake Video.

33.     Most recently, on October 27, 2024, Defendant Cooper made the false and outlandish claim that the firearm Mr. Peterson used to shoot Ms. Pete had gone missing. Defendant Cooper Tweeted: "Didn't I tell y'all tht the gun was never presented in court and tht ain't make no damn sense? They gave the serial number and breezed past it. Liiike, first off whose is it?? Origin point please."



34.     Defendant Cooper's statements recklessly disregarded the truth and suggested that the firearm was never presented in court because it had allegedly disappeared. It has not. The firearm remains in the custody of the Los Angeles Police Department. It is standard procedure in

California criminal cases to show an image of the firearm in question rather than present the firearm in court. Defendant Cooper could have easily verified this information but chose to ignore it and instead promulgated lies about the integrity of the Trial and related investigation.

35.    On October 28, 2024, notwithstanding that a jury of Mr. Peterson's peers found him guilty of shooting Ms. Pete in December 2022, Defendant Cooper reposted a video of herself where she discussed the Trial on her X account. In the video, Defendant Cooper asks Ms. Pete, "***Can you even prove that you was shot***?"[3]

36.    On October 5, 2024, Defendant Cooper posted on her X account, "Milagro, stop talking about the case. We've moved on. Every time they lie, ima make y'all cry."[4] The "they" Defendant Cooper referred to is Ms. Pete and her supporters.



---

[3]    https://x.com/MobzWorld/status/1851068034229956698

[4]    https://x.com/MobzWorld/status/1842551006078415155

Defendant Cooper also commented in a follow-up post, "& if y'all believe her why is, 'who shot Megan?' a question that's being posed? Y'all so timid, speak up."[5]

37.     Defendant Cooper also reposted an online petition on September 15, 2024, that encouraged her followers to sign the petition to free Mr. Peterson from prison "citing exculpatory evidence," when there is none.[6]



38.     On September 2, 2024, Defendant Cooper reposted a video in which a talk show host stated, "Megan allegedly still has a severe drinking problem. From what I've heard… I think she needs to spend more time in a relationship with herself and her therapist and maybe AA."[7]

39.     Defendant Cooper's obsessive posts about Ms. Pete continued in August 2024, when she posted a Tweet asking if "Megan Thee Stallion [was] caught trying to deceive the courts again."[8]

---

[5]   https://x.com/MobzWorld/status/1842551006078415155

[6]   https://x.com/MobzWorld/status/1835314764307648891

[7]   https://x.com/MobzWorld/status/1830690681959952446

[8]   https://x.com/MobzWorld/status/1821131325736194328

40.     Defendant continued to spew false statements and narratives about Ms. Pete. On July 30, 2024, Defendant Cooper posted a podcast-style video on X, in which she states, "What is Megan's mental status? Does she have a guardian or not? Has she been listed as a capable person? Has she ever been deemed, like, legally retarded? Like anything of the nature? Anything of the sort?"

41.     On December 24, 2023, Defendant Cooper posted the following statement on X:



42.     On June 22, 2023, X user account @holidayholidayK shared audio of Defendant Cooper calling Ms. Pete a "lying ass hoe," and claiming that Ms. Pete "ruined Tory Lanez' life." Defendant Cooper liked the post.[9]

43.     Even Defendant Cooper's former friend, King Noir, exposed her for working alongside Mr. Peterson to smear Ms. Pete's reputation. King Noir also noted that Defendant Cooper has "a disdain for Megan" and that she "talks to Tory's daddy" in an effort to leak information to the press that comes from Mr. Peterson himself.[10]

---

[9]   https://x.com/holidayholidayK/status/1671979971953172492?s=20

[10]   https://thesource.com/2022/07/27/former-friend-of-milagro-gramz-blasts-her-for-allegedly-working-with-tory-lanez-in-smear-efforts-against-megan-thee-stallion/

44.     Another example of Defendant Cooper's reckless disregard for the truth is a May 2022 post on her X account, when Defendant Cooper posted an image of a Los Angeles Police Department report from Mr. Peterson's arrest stating that the first doctor to see Ms. Pete "confirmed laceration due to stepping on glass," not a firearm wound.

45.     However, the information from the police report was recorded before bullet fragments were discovered in Ms. Pete's feet during surgery, which completely debunked Defendant's post.

46.     Nonetheless, bloggers and podcasters like DJ Akademiks presented Defendant's post alongside conspiracy theories that Ms. Pete was never shot.  Rather than retract the false story, Defendant doubled-down to NBC News, stating "everything is not going to be something that was intended to be a factual statement . . . [i]t might have a comedic effect."[11]

47.     Defendant Cooper also doubled-down on her falsehoods throughout the Trial; indeed, she traveled from Houston, Texas, to Los Angeles to attend the court proceedings and livestreamed her skewed take on the criminal proceedings daily to her online followers.  Defendant Cooper consistently denigrated witnesses called by the State, including in the below examples of Defendant's posts:

---

[11]   https://www.nbcnews.com/news/nbcblk/tory-lanez-trial-bloggers-gossip-megan-thee-stallion-rcna61600

14

← **Tweet**



**IG: @MilagroGramz** ✓
@MilagroGramz__

Megan paid Kelsey rent for a year. If that would have been Tory that would have been a bribe.

1:05 PM · Dec 16, 2022

**94** Retweets   **47** Quote Tweets   **410** Likes

**IG: @MilagroGramz** ✓
@MilagroGramz__

Guess what?

Shawn Holley wasn't representing Tory when Kelsey says Tory said my lawyer said to word things a particular way. Just like he was never on probation.

These hoes very slow

1:11 PM · Dec 16, 2022

**32** Retweets   **5** Quote Tweets   **196** Likes



**IG: @MilagroGramz** ✓ 🔒 @MilagroGramz__ · 10h

Talking about credible when we all sitting in there. Stfu

💬 10          🔁 40          ♡ 472          ⬆️

---

← **Tweet**

**IG: @MilagroGramz** ✓ 🔒
@MilagroGramz__

The audio pulled on the heartstrings of all of the people that aren't willing to say, but wait, what about gunshot residue on your hands and the witness statements? Orrr the fact that she said nothing like this and weren't going to speak until she was told it could be her.

3:12 PM · Dec 16, 2022

**48** Likes

💬          🔁          ♡          ⬆️



All this case taught anyone was that your father, brother, cousin, or son could face over 20 years in prison without proper evidence, a botched investigation, & another likely suspect just because non credible witnesses said you did something.

& y'all slow a😵s cheering

48.     Defendant intended these Tweets to intimidate Ms. Pete and any witness that called on behalf of the State.[12] For example, on her December 13, 2022 Instagram Live session, Defendant Cooper called Ms. Pete an "angry black woman" because she supposedly believed Ms. Pete had an "attitude" during her testimony. Ms. Pete had no attitude; instead, Ms. Pete's testimony

_____

[12]   A December 23, 2022 Los Angeles Times Article, titled "A jury believed Megan Thee Stallion. It's shameful so many social media influencers didn't," noted that "Milagro Gramz, a Houston-based hip-hop news personality who *showed no remorse for pushing the 'Megan might have stepped on glass' theory long after a surgeon had found bullet fragments in her foot*, just called the verdict 'one of the greatest miscarriages of justice.'" (emphasis added). Article available here (last accessed on October 29, 2024):  https://www.latimes.com/entertainment-arts/music/story/2022-12-23/megan-thee-stallion-tory-lanez-verdict-influencers-bloggers.

was extraordinarily difficult for her, as she had to recount the traumatizing events that led to the Incident.

49.     Defendant Cooper continued to spew false statements about Ms. Pete and other witnesses at Trial, including in the below examples of Defendant's posts[13]:



---
[13]  https://x.com/MobzWorld/status/1751931257317917171

https://x.com/MobzWorld/status/1764415237028032810



50.    Defendant's disparaging remarks had, and continue to have, a negative effect on Plaintiff's mental and emotional state. Defendant's conduct caused, and continues to cause, significant personal and economic harm to Ms. Pete. It injured her reputation and standing as a professional musician. It caused severe mental and emotional harm. It caused economic harm in Plaintiff's efforts to remove the various "bots" Defendant enlists to attach Plaintiff's supporters. In sum, Plaintiff's damages exceed $75,000 exclusive of interest and costs, in an amount to be determined at trial.

V.      **CAUSES OF ACTION**

**COUNT ONE**

**Promotion of an Altered Sexual Depiction,
Section 836.13, Florida Statutes**

51.     Ms. Pete repeats and re-alleges paragraphs 1 through 50 as if fully set forth here.

52.     Ms. Pete is an identifiable person as defined under the statute.  Ms. Pete is a performance artist who is recognizable as an actual person by her face, likeness, and/or other distinguishing characteristic(s).

53.     The Deepfake Video is an altered sexual depiction as defined under the statute.  It is a digital, electronic, mechanical, and/or other modification, alteration, or adaptation that depicts a realistic version of Ms. Pete with computer-generated nude body parts presented as the nude body parts of Ms. Pete engaged in sexual conduct as defined in Section 847.001, Florida Statute in which Ms. Pete did not engage or participate.

54.     Defendant Cooper promoted the Deepfake Video by transmitting, transmuting, publishing, distributing, circulating, disseminating, presenting, exhibiting, sending, posting, sharing, and/or advertising on her X account. Defendant "liked" an account promoting the Deepfake Video, which saved the "like" on her X account.  Defendant then encouraged her followers to "[g]o to my likes", where they could access the Deepfake Video via her "liked" Tweet.

55.     Defendant Cooper willfully and maliciously promoted the Deepfake Video without Ms. Pete's consent.

56.     Defendant Cooper knew or reasonably should have known that the Deepfake Video was an altered sexual depiction.

57.     As a result of Defendant Cooper's misconduct, Ms. Pete has been injured in an amount to be proven, including reputational damages and emotional injuries.

58.     Ms. Pete is entitled to recover monetary damages to include $10,000 or actual damages incurred as a result of a violation of subsection (2), whichever is greater, as well as an award of Ms. Pete's reasonable attorneys' fees and costs, and a permanent injunction barring Defendant Cooper from any future use or publication of intimate visual depictions of her.

## <u>COUNT TWO</u>

### Cyberstalking Injunctive Relief,
### Section 784.0485, Florida Statutes

59.     Ms. Pete repeats and re-alleges paragraphs 1 through 50 as if fully set forth here.

60.     Ms. Pete is the victim of cyberstalking by Defendant Cooper because Cooper engaged in a course of conduct to communicate, or to cause to be communicated, images by and through the use of electronic mail directed at Ms. Pete, which caused substantial emotional distress to Ms. Pete and served no legitimate purpose.

61.     Cyberstalking is a form of wrongful conduct, not speech, which is prohibited by Section 784.0485, Florida Statute.

62.     Cyberstalking is a form of harassment that can be enjoined under Section 784.0485, Florida Statute, as well as under common law, which provides for the entry of injunctions to prevent harassment.

63.     Justice, reason, and common sense justify the entry of an injunction for the cyberstalking Ms. Pete has experienced in this case.

64.     Ms. Pete has a clear legal right to the entry of an injunction.

65.     Ms. Pete will suffer irreparable harm if an injunction is not issued, for which there is no adequate remedy at law.

66.     Ms. Pete has a substantial likelihood of success on the merits of her claim.

67.     The threatened injury to Ms. Pete as a result of Defendant Cooper's continued misconduct outweighs any possible harm that would result from the entry of an injunction.

68.     The considerations of the public interest support the entry of an injunction.

69.     Ms. Pete has not made any previous attempt to obtain an injunction for protection against Defendant Cooper in this or any other court.

70.     WHEREFORE, Ms. Pete seeks a temporary and permanent injunction restraining Defendant Cooper from committing any acts of cyberstalking against her and providing any terms the Court deems necessary for the protection of Ms. Pete, including any injunctions or directives to law enforcement agencies.

## COUNT THREE

### Intentional Infliction of Emotional Distress

71.     Ms. Pete repeats and re-alleges paragraphs 1 through 50 as if fully set forth here.

72.     Defendant Cooper intentionally or recklessly inflicted emotional distress upon Ms. Pete, when she knew or should have known that emotional distress would result, by making social media posts related to the Deepfake Video and the statements described above.

73.     Defendant Cooper's conduct was outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community.

74.     The revilement Defendant Cooper inflicted upon Ms. Pete is explicit and egregious.

75.     Defendant Cooper's conduct has caused and will continue to cause severe emotional distress, shame, humiliation, and embarrassment to Ms. Pete.

76.     As a direct and proximate result, Ms. Pete is entitled to recover damages from Defendant Cooper, in an appropriate amount to be determined by the trier of fact.

## COUNT FOUR

### Invasion of Privacy, False Light

77.     Ms. Pete repeats and re-alleges paragraphs 1 through 50 as if fully set forth here.

78.     Defendant Cooper acted knowingly and/or in reckless regard as to the falsity of the Deepfake Video and the false light the Deepfake Video would place Ms. Pete.

79.     The actions by Defendant Cooper are highly offensive and objectionable, and would outrage or cause mental suffering, shame, humiliation, or hurt feelings to a person of ordinary sensibilities.

80.     Defendant Cooper's conduct was outrageous, as to go beyond all bounds of decency and to be regarded as odious and utterly intolerable in a civilized community.

81.     Defendant Cooper's conduct caused emotional distress, humiliation, shame, and embarrassment to Ms. Pete.

82.     As a direct and proximate result, Ms. Pete is entitled to recover damages from Defendant Cooper, in an appropriate amount to be determined by the trier of fact.

### JURY DEMAND

Ms. Pete requests a jury trial on all issues to be tried.

### PRAYER FOR RELIEF

WHEREFORE, Ms. Pete respectfully requests that this Court enter judgment in an amount for all damages owed to Ms. Pete, including but not limited to compensatory damages, punitive damages, statutory damages, attorney's fees, costs, interest, and all other damages as are just and proper as well as declaratory judgment to remedy Defendant's unlawful behavior.

Dated:  October 29, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Daniel L. Humphrey
Olga Vieria (Fla. Bar No. 29783)
Daniel L. Humphrey (Fla. Bar No. 1024695)
olgavieira@quinnemanuel.com
danielhumphrey@quinnemanuel.com
(305) 402-4880
QUINN EMANUEL URQUHART & SULLIVAN, LLP
2601 S. Bayshore Dr., Suite 1500
Miami, FL 33133

Mari F. Henderson (pro hac vice forthcoming)
Janet C. Shamilian (pro hac vice forthcoming)
Julian T. Schoen (pro hac vice forthcoming)
marihenderson@quinnemanuel.com
janetshamilian@quinnemanuel.com
julianschoen@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

*Attorneys for Plaintiff Megan Pete*