UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 24-24228-CIV-ALTONAGA

MEGAN PETE, an individual

    *Plaintiff,*

v.

MILAGRO ELIZABETH COOPER,
an individual,

    *Defendant.*
_____/

**DEFENDANT'S MOTION TO DISMISS COMPLAINT**

Defendant, MILAGRO ELIZABETH COOPER, through undersigned counsel, pursuant to Rule 12(b)(6), Fed.R.Civ.P., files this, her Motion to Dismiss Plaintiff's Complaint, and in support thereof, states the following:

**INTRODUCTION**

As noted recently by Law Professor and author Jonathan Turley, "We are living in an age of rage. It permeates every aspect of our society and politics."[1] This is especially true on the internet and online forums which have become the new public square. This rage is especially commonplace in today's online universe where one can find, *inter alia*, a panoply of opinions, ideas, and rhetorical hyperbole especially when it comes to celebrities. The recent trend by those who may dislike certain ideas or views expressed online is simply to silence or censor those views by arbitrarily labeling such speech as "harmful." As noted by Professor Turley, notwithstanding any free speech rights one may have under the First Amendment, "[o]nce declared as harmful, it is no longer free speech and is worthy of censorship or cancellation. It is that easy." *Id.* p. 92. One such tactic, especially by those with the financial means, is to use the courts as a tool for

---

[1] Jonathan Turley, *The Indispensable Right: Free Speech in An Age of Rage,* p. 6 (1st Ed. 2024).

1

intimidating and silencing criticism through expensive, baseless legal proceedings. This is precisely what is occurring in the instant case.

The Plaintiff is a well-known grammy award winning rapper/entertainer with millions of fans worldwide who goes by the moniker "Megan Thee Stallion." (DE #1, ¶¶ 15-16). The Defendant is a social media blogger with approximately 27,000 followers who has written about current topics including celebrities, rappers, and the entertainment world. (Id. ¶¶ 2, 21-22). Rather than rebut the allegations online, Plaintiff chose to use the Courts to intimidate and silence the Defendant from exercising her First Amendment rights to publish her opinions and beliefs and also to serve as a warning to other critics that if the Plaintiff does not like what you say about her, you will likely have to deal with a federal lawsuit. This is evidenced by Plaintiff's Complaint, which reads more like a press release than a legal document. Defendant submits that that Plaintiff's Complaint which is buttressed on dubious legal claims and irrelevant and impertinent allegations that at best only tangentially relate to the Plaintiff, fails to state a cause of action under Florida law and should be **DISMISSED**.

## BACKGROUND

1. Plaintiff's Complaint purports to assert four causes of actions under Florida law: (1) Promotion of an Altered Sexual Depiction, Section 836.13, Florida Statutes; (2) Cyberstalking Injunctive Relief, Section 784.0485, Florida Statutes; (3) Intentional Infliction of Emotional Distress; and (4) Invasion of Privacy, False Light.

2. Jurisdiction in the instant action is based on diversity though Counts I and II appear to be brought pursuant to the Court's Supplemental Jurisdiction under 28 U.S.C. § 1367.

3. The gravamen of Plaintiff's Complaint is buttressed entirely on online posts either made directly by the Defendant, reposts of third-party posts by the Defendant, and by Defendant pressing the "like" button on third party posts. These posts can be divided into the following

2

categories: (1) posts relating to the public criminal trial of Daystar Peterson; (2) a repost of a third party video where a talk show host offers opinions on whether Plaintiff still has a drinking problem; (3) name calling; (4) Defendant liking a post by a third party, Bimbella, of what is alleged to be a deep fake video of the Plaintiff followed by a June 8, 2024 posting on X where Defendant wrote "Go to my likes;" and (5) a June 9, 2024 YouTube Post by Defendant where she raised the rhetorical question if Plaintiff was a "professional victim."

4. With respect to the first category, Plaintiff alleges that Defendant posted online: (a) a false claim that "the that the firearm Mr. Peterson used to shoot Ms. Pete was not produced during the Trial because it was missing," (DE 1, ¶¶ 9, 33-34); (b) "can you even prove that you was shot," (¶¶ 10, 35, 44); (c) an LAPD "report from Mr. Peterson's arrest stating that the first doctor to see Ms. Pete "confirmed laceration due to stepping on glass," not a firearm wound; (d) "falsehoods" and "misinformation" about the trial and witnesses while livestreaming the trial that she attended and attacking the credibility of witnesses (¶¶ 12-13, 47, 49); (e) on X "Milagro, stop talking about the case. We've moved on. Every time they lie, ima [sic] make y'all cry," (¶ 36); a petition to free Mr. Peterson from prison "citing exculpatory evidence," (¶ 37); and that Defendant (who with other bloggers) were posting about the trial said the following to NBC news: "On my end, everything is not going to be something that was intended to be a factual statement, … It might have a comedic effect." (¶ 46).

5. With respect to the second category, Plaintiff alleges that on September 2, 2024, Defendant reposted a third-party video in which an unnamed talk show host stated, "Megan allegedly still has a severe drinking problem. From what I've heard… I think she needs to spend more time in a relationship with herself and her therapist and maybe AA." (*Id.* ¶ 38).

6. With respect to the third category, Plaintiff alleges that: (a) in August 2024, Defendant posted on X that Plaintiff "was caught trying to deceive the courts again" when

describing a lawsuit filed against Plaintiff by her videographer. (*Id*. ¶¶ 14, 39); (b) on July 30, 2024, Defendant posted a video where she said: "What is Megan's mental status? Does she have a guardian or not? Has she been listed as a capable person? Has she ever been deemed, like, legally retarded? Like anything of the nature? Anything of the sort? (*Id*. ¶ 40); (c) on December 24, 2024, Defendant posted on X stating "Megan wants to know what she has to do to stop being posted on certain outlets and they says she's going to 'Cardi B y'all h---s … My suggestion would be to just get over it or go away. Cardi won her case because Tasha K handed it to her. Other than that, you're going to get posted." (*Id.* ¶ 41); (d) that on June 22, 2023, a third-part X user @holidayholidayK shared audio of the Defendant calling Plaintiff "a lyin ass hoe," and claiming that Plaintiff "ruined Tory Lanez' [Daystar Peterson] life" and that the post was "liked" by Defendant. (*Id*. ¶ 42); and (e) that during a livestream on Instagram Live Defendant in describing Plaintiff's trial testimony called Plaintiff an "angry black woman" and that she had an "attitude." (*Id*. ¶¶ 5, 48).

7. With respect to the fourth category, Plaintiff alleges that in June 2024, an unknown third-party by the name of "Bimbella" posted on X what purported to be a deep fake pornographic video of the Plaintiff which had been circulating on X and that the Defendant allegedly pressed the "like" button on this post and later posted on X the comment "[go] to my likes." (*Id*. ¶¶ 2, 25, 27, 30, 54).

8. With respect to the fifth and final category, Plaintiff alleges that following an article in a news publication Uproxx entitled "Megan Thee Stallion Slams 'Fake Ass' Seemingly AI-Generated Sex Tape Circulating Online" which mentions and links to the video as well as mentioning that Defendant "liked" the video, that on June 9, 2024, Defendant later published a YouTube video where she discussed the Uproxx article and questioned whether the Plaintiff, a worldwide celebrity with millions of fans, was a "professional victim." (*Id*. ¶¶ 27-29).

9. Accepting all of the Plaintiff's allegations as true for purposes of this motion to dismiss, it is evidently clear that the Plaintiff has not and cannot state a plausible claim under Florida law requiring the Complaint to be DISMISSED. Defendant submits the following memorandum of law in support of the instant motion.

## MEMORANDUM OF LAW

### Standard of Review

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground on which it rests. The Supreme Court has held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* (quoting Bell Atlantic Corp. v. Twombly 550 U.S. 544, 555 (2007)). Under Rule 10(b), the pleader "must state [her] claims ... in numbered paragraphs, each limited as far as practicable to a single set of circumstances." "When a complaint fails to follow Rules 8 and 10, it may be classified as a shotgun pleading." *Hickman v. Hickman*, 563 F. App'x 742, 744 (11th Cir. 2014).

## I. Count One Fails to State a Claim for Violation of Section 836.13, Florida Statutes

In addition to specific criminal penalties, section 836.13(5), Florida Statutes, provides a civil remedy of injunctive relief, actual monetary damages *or* $ 10,000, whichever is greater, and attorney fees and costs against "[a] person who willfully and maliciously promotes any altered sexual depiction of an identifiable person, without the consent of the identifiable person, and who knows or reasonably should have known that such visual depiction was an altered sexual depiction." Section 836.13 was enacted by the Florida Legislature in 2022. Currently, there are no cases interpreting the provisions of this statute. However, applying the general rule of statutory construction, it is axiomatic that "statutes imposing a penalty must always be construed strictly in favor of the one against whom the penalty is imposed and are never to be extended by construction." *Galbut v. City of Miami Beach*, 605 So. 2d 466, 468 (Fla. 3d DCA 1992*), opinion adhered to on denial of reh'g* (Oct. 13, 1992), *approved*, 626 So. 2d 192 (Fla. 1993) *quoting Hotel & Restaurant Comm'n v. Sunny Seas No. One, Inc.,* 104 So.2d 570, 571 (Fla.1958); *accord State v. Llopis,* 257 So.2d 17, 18 (Fla.1971); *See also 3B TV, Inc. v. State, Off. of Atty. Gen.,* 794 So. 2d 744, 749 (Fla.1st DCA 2001); *In re Forfeiture of $37,388.00*, 571 So.2d 1377 (Fla. 1st DCA 1990); *Holmberg v. Department of Natural Resources,* 503 So.2d 944 (Fla. 1st DCA 1987).

To state a cause of action pursuant to this statute, the Plaintiff must establish the following: (1) that the Defendant willfully and maliciously promoted an altered sexual depiction of an identifiable person, (2) without the consent of the identifiable person(s) depicted; and (3) that at the time, the defendant knew or reasonably should have known the depiction was an altered sexual depiction. *See* FLA. STD. CRIM. JURY 11.23. Under the statute, "promote" is defined as follows: "'Promote'" means to issue, sell, give, provide, lend, mail, deliver, transfer, transmit, transmute, publish, distribute, circulate, disseminate, present, exhibit, send, post, share, or advertise or to offer or agree to do the same." Fla. Stat. § 836.13(3)(d). Given that this Court must strictly construe this

6

statute, it is evidently clear that the Plaintiff's Complaint is suggesting that this Court do the opposite by promoting an overtly broad definition of what the term "promote" means under the statute.

In her Complaint, Plaintiff alleges that in June 2004, some unknown person created a deep fake video which depicted "a realistic version of [Plaintiff] with computer-generated nude body parts presented as the nude body parts of [Plaintiff] engaged in sexual conduct … which [Plaintiff] did not engage or participate." (DE #1, ¶¶ 25-26, 53). The Complaint further alleges that the Defendant "'liked' an account promoting the Deepfake Video" and then "encouraged her followers to '[g]o to my likes', where they could access the Deepfake Video via her 'liked' Tweet." (Id. ¶¶ 30, 54). Interestingly enough, the Complaint also alleges that the above allegations were reported on a news publication Uproxx which itself also linked to the same video. (Id. ¶ 27). The Complaint then alleges that Defendant then published a video entitled "Milagro Gramz Officially Responds to Claims of A Lawsuit & Harassment Against Megan Thee Stallion" on YouTube where she "addressed her X post related to the Deepfake Video" where in the YouTube post she "questioned whether Ms. Pete is '[a] professional victim.'" (Id. ¶¶ 28-29).² To suggest that these allegations fall within the scope of the statute is a serious overreach.

It is undisputed from the Complaint's allegations and the cited links to the online publications that the Defendant did not create the video, nor did she repost or share the video on her social media or any media. There are no allegations that the Defendant represented whether or not the video was authentic or not. All that is alleged in this lawsuit is that: (1) the Defendant "liked" the video which had been posted in an online public forum, (2) Defendant later posted a Tweet saying "Go to my

---

² The URL of the Defendant's YouTube video is cited at footnote 2 of page 8 of the Complaint. When the URL is clicked, the video posting contains a disclaimer that reads: "This video was created and published by MOB RADIO in her personal capacity. The opinions expressed in this video are the creator's own and should not be taken as fact. The validity of any evidence provided should be independently checked for authenticity, and MOB RADIO takes no responsibility for the actions of those viewing this video."

likes," and (3) Defendant later published a YouTube video where she discussed the Uproxx article and questioned whether the Plaintiff, a worldwide celebrity with millions of fans was a "professional victim." In fact, the conduct Defendant is accused of engaging in (liking an online video post) is not so different from what the media site Uproxx did by linking to the purported video. Notwithstanding that § 836.13 is a statute with criminal and civil penalties where its definition of "promote" must be strictly construed, Plaintiff is suggesting here that merely liking, linking to, or talking about an online post regarding a public figure is a criminal offense subjecting one to criminal and civil liability. This argument is perverse and frivolous given the clear statutory definition of "promote." The statutory definition at §836.13(3)(d) requires that the violating party actually put the offending video into circulation or that they provide a copy of the offending video to someone, or that they post it or provide a copy to the video in exchange for remuneration. Plaintiff's distorted interpretation of the statute would clearly be unconstitutionally overbroad. In fact, if Plaintiff's view had any merit, then any news organization such as Uproxx, which linked to the video and spoke about the video, or any individual simply pressing the "like" button would be subjected to criminal and civil penalties. There is no factual allegation that the Defendant procured, manufactured, issued, or sold the video. Neither is there any allegation that Defendant, provided a copy of the video to anyone. The Complaint is devoid of any factual allegations showing that the Defendant broadcast or transmitted the video, or transmuted it, or published, posted, or exhibited it in any form. Nor is there any allegation that the Defendant represented that this online video was in fact the Plaintiff. There are no factual allegations that Defendant shared or disseminated the video to anyone. It is not surprising that the Complaint simply recites legal conclusions in its shotgun style by quoting the statute's definition without any support from any substantive facts. (DE # 1, ¶ 54). As such, Count I of the Complaint does not allege any facts that plausibly state a cause of action under section 836.13. If anything, the "promotion" of the alleged deep fake video was perpetrated by the unknown individual who published and posted it

online, not the Defendant. Accordingly, Count I should be dismissed with prejudice and Defendant should be awarded reasonable attorney's fees and costs pursuant to § 836.13(5)(c), Fla. Stat.[3]

### II. Count Two Fails to State a Claim for Cyberstalking and Should Be Filed in the Domestic Violence Division of the Circuit Court

Count Two of the Complaint purports to bring a claim for injunctive relief pursuant to Section 784.0485, Florida Statutes Cyberstalking provisions.  As this claim does not provide for an award of damages, and seeks only injunctive relief, presumably, the Plaintiff is attempting to bring this claim by invoking this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Again, while it is difficult to discern what facts the Plaintiff is specifically relying on to support a claim of cyberstalking, Count II should nevertheless be dismissed for Plaintiff's failure to follow the mandatory statutory requirements set forth in § 784.0485.  Specifically, § 784.0485(1)(a) states that a "A person who is the victim of stalking … has standing in the circuit court to file a sworn petition for an injunction for protection against stalking." Further, §784.0485(3)(a) requires that the Petition be filed under oath and follow the format outlined within the statute, which Plaintiff fails to do so here. As Count Two is not under oath and fails to comply with the statutory requirements outlined in section (3)(a), it should be dismissed. See *Harvick v. Oak Hammock Preserve Com.,* 2015 WL 667984 (M.D. Fla. Feb. 17, 2015).

In the event that the Plaintiff seeks leave to amend on Count II, the Court should deny this request and decline supplemental jurisdiction over the claim. For example, in *Kassenoff v. Harvey,* 2024 WL 562738 at * 10-11 (N.D. Fla. Feb. 9, 2024) ("*Kassenoff I*"), a diversity case, Judge Wetherell noted that while the plaintiff did state a plausible claim for Cyberstalking, he nevertheless,

---

[3] The civil provision under § 836.13(5) only provide for actual monetary damages or $ 10,000.00, whichever is greater. It does not provide for the recovery of compensatory or punitive damages. Accordingly, in the event that this Court were to dismiss the Plaintiff's common law tort claims, which do allow for full compensatory and punitive damages, in the absence of the Plaintiff establishing that she incurred over $ 75,000.00 in actual monetary damages, this Court would not have subject jurisdiction over this claim.

9

dismissed the count for the failure to follow the statute's mandatory prerequisites. Further, the court stated in *dicta* its "doubts that the Florida Legislature intended that claims under § 784.0845 would be litigated in federal court because the injunction contemplated by the statute is akin to a domestic violence injunction that state court judges who regularly preside over injunction dockets are better suited to handle on the expedited timeframes in the statute…." *Id.* at *11, n. 16. In a subsequent decision on the same case, Judge Wetherell noted that while a federal court could theoretically exercise supplemental jurisdiction over a § 784.0485 claim under 28 U.S.C. § 1367(a), however, upon further reflection, he found that there appeared to be "compelling reasons for declining jurisdiction" pursuant to 28 U.S.C.§ 1367(c)(4). *Kassenoff v. Harvey,* Case No. 23-cv-24085, DE 35 slip op. at pp. 3-4 (ND Fla. Apr. 4, 2024) ("*Kassenoff 2*"). In reviewing whether supplemental jurisdiction should be exercised, Judge Wetherell considered the "host of factors" of judicial economy, convenience, fairness, and comity." *Id.* at p. 5 *citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988) and *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). In doing do, the court held that the factors appeared to "weigh against exercising supplemental jurisdiction" over the §784.0485 claims. *Id.* The court noted that "judicial economy is 'served when issues of state law are resolved by state courts.' ... This is particularly true where, as here, the claim … is based on a state statute that requires expedited procedures that are better suited for state court judges who, unlike federal court judges, regularly preside over statutory injunction dockets." *Id.* (citation omitted). With respect to the third factor, the Court noted that a section 784.0485 claim would likely be heard and resolved sooner in state court given that they hear these cases on an expedited basis.[4] *Id.* Finally, with respect to the fourth factor, the court further noted:

---

[4] The court also noted that certain requirements in § 784.0485(2)(a), (c), 5(b), 6(b), (e), 7, 8, Fla. Stat. would not be adhered to if the claim proceeded in federal court because "the Florida Legislature cannot dictate what procedural and evidentiary rules that apply in a federal court hearing on the petition, … the contents of a federal judge's order resulting from the hearing, …

> [i]t is a bedrock principle that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Ameritox*, 803 F.3d at 540 (quoting *Gibbs*, 383 U.S. at 726) (alteration in original). Here, although this Court is certainly capable of interpreting and applying the statutory definitions that govern the §784.0485 petition, the principle of comity would be best served by a state court judge who regularly presides over a statutory injunction docket deciding the merits of [the § 784.0485 claim]. Thus, the fourth factor appears to weigh in favor of declining to exercise supplemental jurisdiction.

*Id.* at p. 7.[5]   As this case is also in its earliest stages, given the well-reasoned opinion by Judge Wetherell on this exact same issue in *Kassenoff* 2, Count Two of Plaintiff's Complaint should be dismissed without prejudice for failure to state a claim and this Court should likewise decline supplemental jurisdiction over the claim pursuant to 28 U.S.C. § 1367(c)(4). If Plaintiff wishes to obtain an injunction under section 786.0485, she can re-file in the Circuit Court in Miami Dade County.

### III.   Count Three Fails to State a Claim for Intentional Infliction of Emotional Distress

Count Three purports to state a claim for intentional infliction of emotional distress. Under Florida law, a plaintiff must plead the following elements in order to state a claim for intentional infliction of emotional distress: 1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff and 4) that the conduct complained of caused the plaintiff's severe emotional distress. *Blair v. NCL (Bahamas) Ltd.,* 212 F.Supp.3d 1264, 1269 (S.D. Fla. 2016)(Seitz, J.) *citing Metropolitan Life Insurance Co. v. McCarson*, 467 So.2d 277, 278 (Fla. 1985). Under the first prong, a defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond

---

who can be present with the parties in a federal court hearing, …, or how a federal court clerk must process petitions and orders…." *Id.* at p. 6, n. 5.

[5]  The court then directed the parties to provide supplemental briefing on this issue, where ultimately the court decided to dismiss the §784.0485 claim without prejudice pursuant to 28 U.S.C. § 1356(c)(4) on the court's own motion. *See Kassenoff v. Harvey*, Case No. 23-cv-24085, DE 37 slip op. (N.D. Fla. Apr. 9, 2024) ("*Kassenoff 3*").

11

all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Metropolitan Life,* 467 So.2d at 278–79 (quoting Restatement (Second) of Torts § 46 (1965)). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Garcia v. Carnival Corp.,* 838 F.Supp.2d 1334, 1339 (S.D. Fla. 2012)(Moore, J.) (quoting Merrick v. Radisson Hotels Int'l, No. 06-cv-01591-T-24TGW (SCB), 2007 WL 1576361, at *4 (M.D. Fla. May 30, 2007)). As such, "courts uphold claims of intentional infliction of emotional distress only in 'extremely rare circumstances.'" *Triana v. Diaz,* 12-21309-CIV, 2014 WL 5319800, at *7 (S.D. Fla. Oct. 16, 2014)(King, J.). Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law for the court to decide, not a question of fact. *Blair*, 212 F.Supp.3d at 1269–1270. Again, it is unclear from Plaintiff's shotgun pleading as to what particular allegations form the genesis of this claim, whether it consists of the allegation that the Defendant pressed the "like" button on an unknown third-party's social media post purporting to depict a deep fake video of the Plaintiff, (DE 1, ¶¶ 25-30), or Defendant's online comments on her blog about a California criminal trial involving Mr. Peterson (DE 1, ¶¶ 33-36 ), or Defendant's online post encouraging her followers to sign a petition to free Mr. Peterson (¶ 37), or Defendant's posting of a talk show video where the television host stated that Plaintiff "allegedly still" had a drinking problem (¶ 38), or her posting of a police report (¶ 44), or calling the Plaintiff an "angry black woman" (¶ 48), or if it consists of all of the above. Assuming arguendo, that all of the Complaint's allegations are being relied upon to support Count Three, the allegations still fail to reach the difficult but necessary threshold under Florida law sufficient to state a claim for intentional infliction of emotional distress.

Even if true, Plaintiff's allegations pale in comparison to the plethora of court decisions that found significantly more egregious facts to be insufficient as a matter of law to meet the requisite outrageousness needed to state a claim for intentional infliction of emotional distress. In the limited

number of cases where outrageous conduct was found, the facts were quite severe usually involving sexual assault. For example, in *Vernon v. Med. Management Associates of Margate, Inc.,* 912 F.Supp. 1549, 1561 (S.D.Fla. 1996), the trial court found that the employee's alleged action of repeatedly touching, squeezing, fondling, hugging, blowing, and tickling the plaintiff along with the repetition of lewd and vulgar sexual remarks precluded the dismissal of plaintiff's complaint at the motion to dismiss stage. Similarly, in *Stockett v. Tolin,* 791 F.Supp. 1536, 1556 (S.D.Fla.1992), the trial court found that the plaintiff was entitled to compensatory damages for intentional infliction of emotional distress where the plaintiff was pinned against the wall, refused to allow to escape, and physically attacked on a weekly basis. In *Johnson v. Thigpen,* 788 So.2d 410, 414 (Fla. 1st DCA 2001), Florida's First District Court of Appeal found that the defendant's use of sexually explicit, demeaning, and vulgar language coupled with evidence of inappropriate, unwelcomed physical contact was outrageous conduct under Florida law. *See also Urquiola v. Linen Supermarket, Inc*., No. 94–14–CIV–ORL–19, 1995 WL 266582, at *4 (M.D.Fla. Mar. 23, 1995) (plaintiff's allegations stated a claim for intentional infliction of emotional distress where plaintiff alleged numerous incidents of kissing, groping, attempted rape, and use of sexually explicit, demeaning, and vulgar language).

In contrast, the following cases, which are significantly more severe than the Plaintiff's allegations in the instant case, the courts found that the conduct was *not* so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society as required to state a claim for intentional infliction of emotional distress under Florida law. For example, the Eleventh Circuit in *Koutsouradis v. Delta Air Lines, Inc.,* 427 F.3d 1339, 1345 (11th Cir. 2005) found that insults and indignities do not support a claim for intentional infliction of emotional distress. Likewise in *Gonzalez–Jimenez de Ruiz v. United States,* 378 F.3d 1229, 1231 (11th Cir. 2004), the Eleventh Circuit also held that a party's deception regarding a father's terminal medical condition, failure to provide family with reasonable access to father during his

13

illness, failure to inform family of father's death, providing substandard medical care, and delay in transporting remains failed to state a claim of intentional infliction of emotional distress; *see also Rubio v. Lopez,* 445 F. App'x 170, 175 (11th Cir. 2011) (finding failure to allege sufficient outrageous conduct where a deputy sheriff hobble-tied arrestee on black asphalt pavement in sun, resulting in second-degree burns to face and chest)

In *Baskin v. McGregor Baptist Church, Inc.,* No. 2:07-CV-710-FTM-29-DN, 2008 WL 1930622, at *2 (M.D. Fla. Apr. 30, 2008), the complaint alleged that plaintiffs' African American minor children were suspended/expelled from private school based upon either false or exaggerated information, and white school children who participated in the same events were not disciplined. The court held that while other causes of action cover such discrimination, this conduct failed to allege conduct sufficiently outrageous under Florida law to satisfy the element of intentional infliction of emotional distress. *See also, Blair v. NCL (Bahamas) Ltd.,* 212 F. Supp. 3d 1264 (S.D. Fla. 2016) (Seitz, J.) (finding failure to allege sufficiently outrageous conduct where plaintiff's child drowned in a pool advertised as "kid friendly," though lacking life guards, lifesaving equipment, and personnel prepared to respond to a drowning event); *Vamper v. United Parcel Serv., Inc.,* 14 F.Supp.2d 1301, 1306-07 (S.D.Fla. 1998)(King, J.) (explaining that the tort of intentional infliction of emotional distress is sparingly recognized by Florida courts and may proceed where there is relentless physical as well as verbal harassment and thus finding no outrageous conduct where defendants fabricated reckless driving charge against plaintiff, called him the "n" word, threatened him with termination, and physically struck him on ankle); *Howry v. Nisus, Inc.,* 910 F.Supp. 576, 580–81 (M.D.Fla.1995) (employer's action of physically touching himself and employees in a suggestive manner, using obscene language, and commenting on sex organs was insufficient under Florida law to state a claim for intentional infliction of emotional distress); *Valdes v. Gab Robins N. Am., Inc.,* 924 So.2d 862, 866 (Fla. 3d DCA 2006) (investigating and then making false statements to state agency which lead

14

to plaintiff's arrest was "not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society."), *review denied*, 949 So.2d 200 (Fla. 2007); *Legrande v. Emmanuel*, 889 So.2d 991, 995 (Fla. 3d DCA 2004) (clergyman falsely branded a thief in front of parishioners failed to state claim of intentional infliction of emotional distress); *Williams v. Worldwide Flight Servs., Inc.,* 877 So.2d 869, 870–71 (Fla. 3d DCA 2004) (constant use of derogatory racial terms, threats, and false accusations failed to state cause of action for intentional infliction of emotional distress); *Lay v. Roux Laboratories, Inc.,* 379 So.2d 451, 452 (Fla. 1st DCA 1980) (same).

As Plaintiff's allegations are clearly not so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society when compared to the body of caselaw in Florida, Count Three of Plaintiff's Complaint for intentional infliction of emotional distress should be **DISMISSED** with prejudice.

### IV. Count Four of Plaintiff's Complaint for Invasion of Privacy, False Light Should be Dismissed with Prejudice as this Claim Has Been Rejected by the Florida Supreme Court

Count Four of the Complaint purports to state a common law claim for Invasion of Privacy, False Light. First of all, it is unclear which facts the Plaintiff suggests constitutes a false light invasion of privacy. In Count Four, Plaintiff merely states: "Defendant Cooper acted knowingly and/or in reckless regard as to the falsity of the Deepfake Video and the false light the Deepfake Video would place Ms. Pete." (DE 1, ¶ 78). If Plaintiff is basing this claim from the allegations set forth in an Uproxx news story which mentions that the Defendant clicked the like button on an anonymous post of a deep fake video of the Plaintiff posted on the social media site X and that the Defendant then "jokingly encouraged users to check it out," (DE 1, ¶¶ 27-32) by posting another screen shot stating "Go to my likes," this would not salvage the Plaintiff's claim because this claim is simply not actionable or recognized in Florida. In *Jews for Jesus, Inc. v. Rapp,* 997 So.2d 1098, 1115 (Fla. 2008),

15

the Florida Supreme Court declined "to recognize false light as a viable cause of action" in Florida. This has been settled law in Florida for over fifteen years which raises the question, why would the Plaintiff even attempt to bring such a claim except for maybe to attract media attention and publicity? As such, because this tort has been rejected by Florida's highest court, Count Four of Plaintiff's Complaint should be dismissed with prejudice. *See Rapp, supra.*

V. **The Complaint as a Whole Should be Dismissed as a Shotgun Pleading**

Notwithstanding the legal deficiencies in Plaintiff's Complaint discussed above, given that the Complaint is a prototypical shotgun pleading, which incorporates each and every factual allegation into each count, it is difficult to discern which specific facts are being used to support each particular claim with sufficient clarity. "Shotgun" pleadings have been "roundly, repeatedly, and consistently condemn[ed]" by the Eleventh Circuit. *Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 979 (11th Cir. 2008); *see Thompson v. RelationServe Media, Inc.,* 610 F.3d 628, 650 n.22 (11th Cir. 2010) (Tjoflat, J., concurring in part and dissenting in part). In this circuit, a typical shotgun pleading exists where it is "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996). A pleading drafted in this manner "is in no sense the 'short and plain statement of the claim' required by Rule 8[(a)(2), Fed. R. Civ. P.]," and "completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts." *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam). Plaintiff's Complaint fails to organize her factual allegations into separate counts that provide notice to Defendant of which factual allegations are being relied upon to support the statutory provisions Plaintiff alleges that Defendant violated, and under which legal theories these violations occurred making it all the more difficult in responding to the Plaintiff's Complaint. As such, in the event that the Court were to deny the motion to dismiss on the grounds

16

set forth above, then the Defendant respectfully requests that the Plaintiff be required to submit a more definite statement rather than another shotgun pleading.

## CONCLUSION

As noted by the Supreme Court in *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46 (1988), "in the world of debate about public affairs, many things done with motives that are less than admirable are protected by the First Amendment … when a speaker or writer "is motivated by hatred or ill will his expression was protected by the First Amendment….Thus while such a bad motive may be deemed controlling for purposes of tort liability in other areas of the law, we think the First Amendment prohibits such a result in the area of public debate about public figures." *Id.* at 53. In the instant case, you have a public figure who has decided to air her grievances in a federal lawsuit concerning the online postings of the Defendant in what is clearly a veiled attempt to silence Ms. Cooper through the intimidation of having to defend a federal lawsuit. Evidently, Plaintiff takes issue with Ms. Cooper's postings regarding the public trial of Mr. Peterson, her reposting of on online petition to free Mr. Peterson, her reposting of a video in which a third party talk show host suggested Plaintiff had a drinking problem, her posting of a podcast-style video questioning the Plaintiff's mental status, or her calling the Plaintiff a "lying ass hoe" or "angry black woman", or because the Defendant allegedly liked a post by a third party which purportedly showed a deep fake video of the Plaintiff and then told her followers to "go to my likes." As offensive as Plaintiff may find Defendant's posts, the posts are nonetheless protected by the same First Amendment protections that allows the Plaintiff to publish and sing her lewd, vulgar, and offensive lyrics which 34 years ago would have gotten her arrested for obscenity in this district. *See e.g., Skyywalker Records, Inc. v. Navarro*, 739 F. Supp. 578 (S.D. Fla. 1990) *reversed by Luke Records, Inv. v. Navarro,* 960 F.2d 134 (11th Cir. 1992) *cert denied* 506 U.S. 1022. Because the Plaintiff's claims do not plausibly state a

cause of action under all of the theories being advanced by Plaintiff in her shotgun Complaint, there is no need to reach the First Amendment legal implications raised by the Plaintiff's lawsuit.

Accordingly, for the reasons set forth herein, Defendant respectfully requests that her Motion to Dismiss should be **GRANTED**, and that the Court award Defendant, attorney's fees pursuant to pursuant to § 836.13(5)(c), Fla. Stat., and such other relief as the Court deems appropriate.

Dated: November 26, 2024

    Respectfully submitted,

**PANCIER LAW**

/s/ Michael Pancier
Michael Pancier (Fla Bar No. 958484)
mpancier@pancierlaw.com
Tel: (954) 862-2217
9000 Sheridan Street, Suite 93,
Pembroke Pines, Florida 33024
*Co-counsel for Defendant,*

**UNITE THE PEOPLE, INC.**

/s/ Michael R. Hayden
Michael R. Hayden, Esq. (pro hac vice)
(California Bar No. 343302)
(Not admitted in Florida)
michael@unitethepeople.org
(888) 245-9393
555 E. Ocean Blvd., Suite 205
Long Beach CA 90802
*Co-counsel for Defendant,*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive Notice of Electronic Filing.

By: */s/ Michael Pancier*
Michael Pancier
Fla Bar No. 958484