## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MEGAN PETE, an individual

*Plaintiff,*                                              Civil Action No. 1:24-CV-24228-CMA

v.

MILAGRO ELIZABETH COOPER,
an individual,

*Defendant.*

_____

## PLAINTIFF MEGAN PETE'S OPPOSITION TO
## <u>DEFENDANT MILAGRO ELIZABETH COOPER'S MOTION TO DISMISS</u>

## I.    PRELIMINARY STATEMENT

Megan Pete brought this action to end the onslaught of malicious and defamatory lies Defendant Milagro Cooper has proliferated across the Internet through her social media accounts and to recover for the damage that Defendant has caused to Ms. Pete's personal and professional reputation. As alleged in the First Amended Complaint (ECF No. 28), Defendant has undertaken a smear campaign in apparent coordination with Daystar Peterson, a/k/a Tory Lanez, a convicted felon who violently shot Ms. Pete. With Mr. Peterson behind bars, and now recently subject to a court-ordered restraining order, Defendant is doing his bidding by telling the world that Ms. Pete lied about him shooting her and defaming Ms. Pete not only as a liar and perjurer, but as someone who is mentally incapacitated, in need of guardianship, and suffering from alcoholism. Worse still, Defendant has taken other despicable measures to intimidate, harass, and cause injury to Ms. Pete such as by promoting an artificial pornographic video falsely depicting Ms. Pete in sexual activity.

This case is not about the right to express opinions on a criminal trial or a plaintiff's attempt to silence opinions she disagrees with, despite what the Motion to Dismiss would have the Court believe (ECF No. 30).[1]  Instead, it is about a malicious smear campaign undertaken for the sole purpose of harming Ms. Pete in retaliation for her defiance of a violent criminal.

Plaintiff agrees that anyone in America is entitled to comment on public trials. Plaintiff does not agree, though, that this country permits repeatedly and falsely accusing a crime victim of giving perjurious testimony under oath about whether her assailant shot her. Indeed, it is hornbook law that it is a defamatory assertion of fact—not a non-actionable opinion or hyperbole—to make such assertions. Yet, Defendant's motion cynically pretends as if in trials, "rarely is there something that is absolutely true," so she must have carte blanche to call Ms. Pete a liar. Mot. at 6. The post-truth world Defendant thinks she lives in is not reality. Whether Mr. Peterson shot Ms. Pete is verifiable. Whether Ms. Pete told the truth about the shooting was verified by a unanimous jury verdict. Defendant has made false assertions of fact and the First Amendment does not protect her malicious speech. For the reasons discussed below, the First Amended Complaint states a claim for each cause of action on which Ms. Pete seeks to recover. Defendant's motion should be denied.

---

[1]  References to the Motion to Dismiss (ECF No. 30) are cited herein as "Mot." and then the page number.

## II.   STATEMENT OF FACTS

Plaintiff Megan Pete is a performing artist known as Megan Thee Stallion. First Amended Complaint ("FAC") ECF No. 28 ¶ 10. Defendant Milagro Elizabeth Cooper is a social media personality that owns and operates various social media accounts with over 100,000 followers. *Id.* ¶¶ 12, 26-27. Defendant has publicly admitted that she is not a journalist. *Id.* ¶ 28. Daystar Peterson ("Mr. Peterson") is a performing artist known as Tory Lanez. *Id.* ¶ 1.

On the evening of July 12, 2020, Mr. Peterson shot Ms. Pete with a gun, causing her to suffer injuries to her feet necessitating medical treatment. FAC ¶¶ 17-19. The Los Angeles County District Attorney's office later indicted Mr. Peterson on charges of felony assault with a semiautomatic firearm. *Id.* ¶ 20. His trial began on December 12, 2022 (the "Trial"). *Id.* ¶ 21. Ms. Pete testified that Mr. Peterson shot her. *Id.* ¶¶ 21-22. On December 23, 2022, the jury returned a unanimous guilty verdict finding Mr. Peterson guilty of all three felony charges brought against him. *Id.* ¶ 24. Mr. Peterson is currently serving a ten-year prison sentence in California. *Id.* ¶ 1.

Throughout the Trial and to the present, Defendant has engaged in a campaign of harassment against Ms. Pete based on Defendant's conspiratorial relationship with Mr. Peterson and his father (the "Petersons"). FAC ¶¶ 2, 29-38. Defendant's smear campaign includes spreading false and disproven theories that Mr. Peterson did not shoot Ms. Pete and that Ms. Pete did not suffer gunshot wounds as a result. *Id.* ¶¶ 34, 75-78.

Based on her conspiratorial relationship with the Petersons, Defendant made a series of repeated defamatory statements against Ms. Pete that (1) accuse Ms. Pete of lying under oath and perjuring herself at the Trial, FAC ¶¶ 56-61; (2) falsely claim Ms. Pete is "legally retarded" and requires a guardian, *id.* ¶¶ 64-66; and (3) condemn Ms. Pete as an alcoholic. *Id.* ¶¶ 69-71. Defendant's defamatory statements are false statements of fact reasonably understood to attribute to Ms. Pete the action or conduct described therein. *Id.* ¶¶ 56-72. Defendant knew, or should have known, that these statements were false. *Id.* ¶¶ 73-84, 102. For example, Defendant admitted that evidence from the Trial that she claimed had gone missing was in fact in the police's possession. *Id.* ¶ 81. Defendant spread her defamatory statements out of a disdain for Ms. Pete, as a means to gain notoriety, and due to a financial incentive from the Petersons. *Id.* ¶¶ 73-84, 102.

In addition to her defamatory statements, Defendant promoted an altered sexual depiction of Ms. Pete (the "Deepfake Video"). FAC ¶¶ 40-53. On June 8, 2024, Defendant "liked" an X post that featured the Deepfake Video. *Id.* ¶ 43. By "liking" the post, the video became displayed on

Defendant's X account's "Likes" page, which tracked and displayed "liked" posts for other users to see. *Id*. ¶¶ 42-43. That same day, Defendant made an X post that directed and encouraged her social media followers to "[g]o to my likes" so that they could see the Deepfake Video. *Id*. ¶ 45. Defendant confirmed that she "drew attention to" the Deepfake Video and told her followers to view it, *id*. ¶¶ 48, 52, which caused the Deepfake Video to gain popularity. *Id*. ¶ 46.

## III.   LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading withstands a motion to dismiss if it alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

## IV.   ARGUMENT

### A.   Ms. Pete States A Claim For Defamation.

#### 1.   Florida Statute § 770.01 Does Not Apply Because Milagro Is Not A Media Defendant.

Section 770.01, Florida Statutes, requires pre-suit notice in defamation actions against media defendants. Defendant has admitted to not being a media defendant, stating definitively she is not a journalist. FAC ¶ 28. As a result, that section does not apply to this case. Defendant has the burden to show that she is a media defendant, and her one-paragraph argument fails to do so. *See* Mot. at 2-3. The statute requires notice only where the case involves a "publication or broadcast [of libel or slander], in a newspaper, periodical, or other medium." § 770.01, Fla. Stat. "Florida courts have consistently interpreted section 770.01 to apply only to news media, i.e., the press." *Mazur v. Ospina Baraya*, 275 So. 3d 812, 815–19 (Fla. 2d DCA 2019). The statute's "other medium" language is "limited to news media defendants who publish statements via an 'other medium'" and does "not expand the reach of the statute beyond the news media." *Id.* at 817. Thus, "[e]very Florida court that has considered the question has concluded that the presuit notice requirement applies only to 'media defendants,' not private individuals." *Zelinka v. Americare Healthscan, Inc.*, 763 So. 2d 1173, 1175 (Fla. 4th DCA 2000) (citing cases); *see also, e.g.*, *Deligdish v. Bender*, 2023 WL 5016547, at *4 (M.D. Fla. Aug. 7, 2023) (quoting *Zelinka*). "In general, media defendants are those individuals engaged in the dissemination of news and

information through the news and broadcast media." *Sirer v. Aksoy*, 2021 WL 4952610, at \*5 (S.D. Fla. Oct. 25, 2021) (citation omitted). A court's "focus remains on the content of the digital publication and the central issue of whether it could be likened to the kind of content newspapers, broadcasters, and periodicals publish (whether in print or online), because that is all that sections 770.01 and .02 encompass." *McQueen v. Baskin*, 377 So. 3d 170, 181 (Fla. 2d DCA 2023).

Defendant has the burden to demonstrate she is a media defendant. *See, e.g.*, *Deligdish*, 2023 WL 5016547, at \*5 (denying motion to dismiss because defendant failed to show § 770.01 applied to him); *Sirer,* 2021 WL 4952610, at \*5 (similar). She fails to point to any allegations that support her conclusory assertion that she is a "social media blogger who regularly livestreams and posts about current topics including celebrities and the hip-hop community," which is insufficient to show she is a media defendant in any event. Mot. at 1-2.  While she cites to Paragraph 12 of the FAC, nothing in that allegation supports that claim. *See id.*; FAC ¶ 12.[2]  Because Defendant has failed to meet her burden, the Court should reject this argument.

Moreover, nothing in the FAC is sufficient to support a finding on a motion to dismiss that Defendant's social media channels are akin to news media, and the FAC's allegations show that Defendant is, in fact, not a media defendant. The FAC alleges that Defendant is a social media personality who has publicly admitted that she is **not** a journalist (FAC ¶¶ 26, 28), and she is therefore a "private individual" rather than a "media defendant." *Zelinka*, 763 So. 2d at 1175. The FAC also contains extensive allegations that Defendant is a "hired gun for Mr. Peterson," and has conspired with the Petersons to use her social media accounts "to execute a widespread campaign to maliciously injure Ms. Pete's reputation and inflict severe emotional distress upon her in retaliation for her testimony regarding Mr. Peterson's unlawful act of gun violence against her." *See, e.g., FAC ¶¶ 28-72*. Allegations that Defendant used her social media accounts to harm Ms. Pete are sufficient to defeat her unsubstantiated contention that she is a media defendant. *See, e.g.*, *Deligdish*, 2023 WL 5016547, at \*5 (statute does not apply to individual who published website "for the purpose of harming someone's reputation").

Plaintiff's authorities are inapposite and distinguishable in any event. Defendant mischaracterizes *Comins v. Vanvoorhis*, 135 So. 3d 545 (Fla. 5th DCA 2014) as involving a "blogger with [a] YouTube channel," but it actually was about a WordPress blog, not a YouTube

---

[2] The allegation that Defendant has "over 100,000" followers is insufficient. *See, e.g., Sirer,* 2021 WL 4952610, at \*5.

channel. *See id.* at 547-48; Mot. at 2. That case was an appeal from a decision on a summary judgment record, not a motion to dismiss. 135 So. 3d at 549. That record included testimony that the defendant "founded the blog [entitled 'Public Intellectual'] in order to 'publicly comment on issues of public concern in an intellectual manner,'" which is absent here. *Id.* at 547-48. And the court was careful to note that it was "not prepared to say that all blogs and all bloggers would qualify for protection of section 770.01." *Id.* at 559. Likewise, in *Grlpwr, LLC v. Rodriguez,* 2023 WL 5666203, at *2 (N.D. Fla. Aug. 25, 2023), the court found the defendant YouTube blogger to be a media defendant primarily because there was "no indication that she is editorializing on behalf of a client." *See also Tobinick v. Novella*, 2015 WL 1191267, at *8 (S.D. Fla. Mar. 16, 2015) (the term media defendant "applies to those who editorialize as to matters of public interest ***without being commissioned to do so by [their] clients***.") (emphasis added). Here, however, Ms. Pete alleges that Defendant conducted her campaign of harassment as a paid surrogate of Mr. Peterson who is "still on [Mr. Peterson's] payroll." FAC ¶¶ 6, 31-32, 116. In other words, to the extent Defendant argues she engages in editorializing, she does so on behalf of a commissioning client—Mr. Peterson—removing her from the realm of disinterested and neutral commentary or editorializing reserved for media defendants. Simply put, Defendant is a malicious actor—not a legitimate news media outlet entitled to the protections of section 770.01—and her motion under that section should be denied.

**2.      Defendant's Statements Are Not Opinions or Rhetorical Hyperbole.**

The FAC alleges that Defendant maliciously published numerous false assertions of a factual nature designed to destroy Ms. Pete's reputation. Defendant's attempts to cast her numerous false assertions of fact as mere opinions and rhetorical hyperbole do not square with the law of defamation. "Where a court first determines the statements are susceptible to a defamatory interpretation, factual questions arise that should be resolved by the trier of fact." *Trump v. Am. Broad. Companies, Inc*., 2024 WL 3519177, at *7 (S.D. Fla. July 24, 2024) (Altonaga, J.). "If the statement is revealed to be 'confusing or ambiguous, raising the question of whether readers might have read it in a defamatory way[,]' a jury question is presented." *Id.* Where a "reasonable jury *could* conclude Plaintiff was defamed . . . dismissal is inappropriate." *Id.* at *9.

"An opinion, unlike a statement of fact, is incapable of the quality of truth or falsity." *Duffy v. Fox News Networks, LLC*, 2015 WL 2449576, at *3 (M.D. Fla. May 21, 2015). However, "a statement that although ostensibly in the form of an opinion implies the allegation of undisclosed

defamatory facts as the basis for the opinion *is* actionable." *Dershowitz v. Cable News Network*, Inc., 541 F. Supp. 3d 1354, 1367 (S.D. Fla. 2021). Thus, "[a] mixed expression of opinion is not constitutionally protected." *Id*. "Further, where the speaker or writer neglects to provide the audience with an adequate factual foundation prior to engaging in the offending discourse, liability may arise." *Id*. (citation omitted). "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18-19 (1990). "Where the court finds that the statement in question is of mixed opinion and fact and reasonably capable of defamatory interpretation, then a jury issue is presented." *Johnson v. Clark*, 484 F.Supp.2d 1242, 1247 (M.D. Fla. 2007), *aff'd,* 294 Fed. Appx. 502 (11th Cir. 2008).

A defendant contending that her statements are rhetorical hyperbole must "demonstrate that the alleged defamatory statements are the sort of loose, figurative language that no reasonable person would believe presented facts." *See Duffy*, 2015 WL 2449576, at *3 (denying motion).

### (a) Defamatory Statements Accusing Ms. Pete of Lying Under Oath Are False Assertions of Fact.

Defendant's defamatory statements asserting that Ms. Pete lied under oath when she testified that Mr. Peterson shot her are false assertions of fact. Mr. Peterson was tried and convicted for the crime of shooting Ms. Pete. FAC ¶¶ 17-25. Defendant's contention—that her statements are nonactionable opinions because "Plaintiff's testimony at trial cannot be proven true or false given the different narratives"—is fallacious. Mot. at 6-9. Whether Mr. Peterson shot Ms. Pete is verifiable—and has been verified by a court of law. FAC ¶ 24. Stating that Ms. Pete lied about him shooting her is, therefore, verifiable and can be proven false.

Tellingly, Defendant fails to cite a single authority supporting her argument that it is an opinion or hyperbole to say someone perjured herself at trial. That is because the law is definitively to the contrary. In fact, Defendant misleadingly cites *Turner v. Wells*, 198 F. Supp. 3d 1355 (S.D. Fl. 2016), Mot. at 7, a case that contradicts her own argument. The *Turner* court observed, "one can determine with resort to empirical proof whether a plaintiff perjured himself in a judicial proceeding." 198 F. Supp. 3d at 1370.[3] Indeed, in *Milkovich*, the Supreme Court held that "the

---

[3] Defendant misleadingly suggests that language in the opinion stating that "an individual's state of mind at a particular point in time 'is not subject to empirical proof'" supports her position. Mot. at 7. But she takes that quote wildly out of context. That observation was made in relation to an

connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false" based "on a core objective evidence" and "'is certainly verifiable . . . with evidence adduced from the transcripts and witnesses present at the hearing.'" 497 U.S. at 21. Numerous other cases have held similarly as it pertains to both perjury and telling lies more generally. *See, e.g., Blake v. Giustibelli*, 182 So. 3d 881, 884 (Fla. 4th DCA 2016) (affirming defamation judgment for plaintiff and holding that statements accusing plaintiff of lying about fees "are factual allegations, and the evidence showed they are false"); *Pierson v. Nat'l Inst. for Lab. Rels. Rsch.*, 319 F. Supp. 3d 1100, 1109 (N.D. Ind. 2018) (denying motion to dismiss where "defendants accused [plaintiff] of lying to a court" because "such accusations are neither constitutionally protected opinion nor rhetorical hyperbole because they are capable of being proven false"); *McNamee v. Clemens*, 762 F. Supp. 2d 584, 602 (E.D.N.Y. 2011) ("Clemens' statements that McNamee is a liar are facts capable of being proven true or false by a determination of whether or not McNamee in fact injected Clemens with steroids. The statements can be proven true or false by either truthful testimony or conclusive evidence."); *Carroll v. Trump*, 2024 WL 5241501, at *3 (2d Cir. Dec. 30, 2024) (affirming defamation judgment where defendant said plaintiff "is not telling the truth" and is a "liar").

Defendant's attempts to transform her statements into opinions by parsing the language she used similarly fail. To start, she attempts to lessen the defamatory impact of a statement that she conspicuously omits to even quote, wherein she stated: "At the end of the day, ***a bitch lying*** on somebody is low down […] Yes she got hurt. And that's cool. But how did you get hurt? How? And what are the circumstances? And what after that? So bitch, if you think I'm finna be sitting up here boo hooing for a bitch that played up in yall face. Not mine, because ***I always said her ass was lying***. Bitch, I don't. You think I feel sorry for the bitch? I don't. The fuck? A bitch fuck with my n***a I'ma slap that hoe and whatever comes after it comes after it." FAC ¶ 56 (emphasis added); Mot. at 7. Plainly, readers would understand Defendant to have accused Ms. Pete of lying about whether she was hurt as a result of Mr. Peterson shooting her.

---

allegedly defamatory claim that the plaintiff intended to "taunt" another basketball player, and the Court's holding that whether such action is a taunt or a gift "is not capable of being proven true or false." *Turner*, 198 F. Supp. at 1370. The Court contrasted that situation from an assertion that a plaintiff committed perjury, which it noted **can** be determined "with resort to empirical proof." *See id.*

Ironically, despite not quoting the post herself, Defendant claims Ms. Pete "did not quote the entire post," referring to a *23-page* transcript of a livestream she attaches as Exhibit A-1 to the Unsworn Declaration of Charquinta Griley. Mot. at 7 & *id.*, n. 4. But nothing about this transcript "undermines [Plaintiff's] claim," *id.*, and, in any event, it is not properly considered on a motion to dismiss. Generally, "courts do not consider anything beyond the face of the complaint and documents attached thereto when ruling on a motion to dismiss." *Kennedy v. Carnival Corp.*, 385 F. Supp. 3d 1302, 1336 (S.D. Fla. 2019). While documents referenced in the complaint may be considered as attachments to a motion to dismiss, this narrow exception applies only when "its contents are not in dispute." *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999). Here, Ms. Pete objects to the authenticity of the transcript exhibits because they were generated by artificial intelligence and supported by unsworn declarations. *See* Unsworn Decl. of Charquinta Griley ¶ 3. As such, the Court should not consider them on this Motion. *Kazak v. Truist Bank*, 692 F. Supp. 3d 1112, 1117 (M.D. Fla. 2023) (declining to consider documents attached to a motion to dismiss where plaintiffs disputed its authenticity); *Palm Devs., Inc. v. Ridgdill & Sons, Inc.*, 2009 WL 513027, at *3 (M.D. Fla. Feb. 27, 2009) (same); *Thompson v. City of St. Cloud*, 2023 WL 3931952, at *2 (M.D. Fla. June 9, 2023).

Even considering Defendant's argument, however, she fails to show that anything in the 23 pages of the transcript alters the clear defamatory meaning of her accusation that Ms. Pete lied. For instance, Defendant claims the transcript shows she was "discussing an article published by NBC," but fails to explain why that matters. *See* Mot. at 7. The NBC article is not in the record nor referenced in the FAC. And while the transcript references the article, Defendant does not discuss its contents in a way that would show she disclosed a factual basis for her defamatory assertions regarding Ms. Pete. *See* A-1 at 8:9-11, 8:17-18, 9:37, 15:4-5, 15:18-19. Instead, the transcript reflects Defendant disavowing the article, stating, "I hate that you lied. And that's just that. I don't give a fuck about that NBC article." *See, e.g.*, *id.* at 9:37.

Defendant then claims in a conclusory manner, without citing any specific passages, that the transcript reflects her "discussing her opinion and conclusions based on her observations of what happened at trial" and testimony that "suggest[ed] that some of the witnesses were drunk at the night of the shooting." Mot. at 7. But Defendant fails to show why any of these unspecified passages disclose a **truthful** factual basis for her statement that Ms. Pete lied. At the pleading stage, the record is not sufficiently developed for the Court to credit Defendant's assertion that by

observing certain witnesses "were drunk," she disclosed **facts** that could lend support to her statement that Ms. Pete lied. *E.g.*, *Dershowitz*, 541 F.Supp.3d at 1367 ("factors relating to the context of the broadcasts and its audience are not before the Court. This requires a more fully developed record. At this stage, the Court concludes that Dershowitz' Complaint meets the plausibility standard for alleging a false statement of fact."); *Zimmerman v. Buttigieg*, 576 F. Supp. 3d 1082, 1097 (M.D. Fla. 2021) (where "it is not clear that the facts underlying the conclusions … are available to the public … such a determination is best made on summary judgment"). If anything, the transcript only reenforces that Defendant led readers to believe she had an undisclosed basis for saying Ms. Pete lied. For instance, the transcript reflects her stating, "So then this n***a gonna sit up there and say, why would she lie? Bitch, am I in the twilight zone? Did you ask me why Megan would lie? Like she ain't lie 50, 11 times." Ex. A-1 at 16:1-4.

Even if Defendant's statements were considered opinion-sounding, the sweeping language with which she accuses Ms. Pete of lying implies to readers knowledge of undisclosed false facts and is thus actionable. *E.g.*, *Null v. State Farm & Cas. Co.*, 649 F. Supp. 3d 865, 872 (W.D. Mo. 2023) ("when a speaker (e.g. Shutt) accuses another (e.g. Plaintiff) of lying, that accusation implies a 'knowledge of facts' that the accused told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact."); *McNamee*, 762 F. Supp. 2d at 602 ("The statements that brand McNamee a liar and suggest that there are unknown facts that when disclosed will support Clemens' denials and that suggest that the statements meet the definition of defamation go beyond a general denial of accusations or rhetorical name calling. The statements were direct and often forcefully made, there was nothing loose or vague about them"); *Milkovich*, 497 U.S. at 18-19 ("If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth . . . Simply couching such statements in terms of opinion does not dispel these implications.").

The FAC likewise sufficiently alleges that Defendant made a false statement of fact in stating, "We know you a lying ass hoe, and you have absolutely ruined Tory's life" because readers would reasonably interpret the statement as implying Ms. Pete lied regarding her claims against Mr. Peterson (a/k/a Tory). FAC ¶ 59. Defendant claims, again relying on a transcript that cannot be considered for the same reasons above, *supra* at 8, that Plaintiff omits a later statement where Defendant says, "You understand? You ain't a solid b***h in that regard. Then you lied on set.

You just don't tell the truth." Mot. at 8 (citing Ex. A-2). But that statement does nothing to alter the meaning of the statement alleged in the FAC. Instead, Defendant asserts in conclusory fashion that she made a "stream of personal opinions and reactions expressed in confrontational tone," but fails to demonstrate that her direct and forceful statement—"we **know** you a lying ass hoe"— would be interpreted as opinion. *McNamee*, 762 F. Supp. 2d at 602 (accusation of lying was "direct and … forcefully made"). The same is true of her statement asserting that Ms. Pete is a "non credible witness," (FAC ¶ 57) which is an assertion of fact because readers would understand she was tying that assertion to Ms. Pete's testimony against Mr. Peterson and suggesting that Ms. Pete lied about the shooting. And Defendant's statement that it has "never been a fact" that Mr. Peterson "shot" Ms. Pete and Mr. Peterson "is behind bars presumed guilty" is likewise a false assertion of fact reasonably understood to her audience as suggesting that Ms. Pete manufactured false testimony against Mr. Peterson.

The FAC also sufficiently alleges that Defendant made a false statement of fact in stating, "Was Megan Thee Stallion caught trying to deceive the courts **again**?"  FAC ¶ 61 (emphasis added). Defendant claims the statement is hyperbole, but there is nothing loose or figurative about her statement. That the statement is in the form of a question does not make it hyperbole or not defamatory, particularly given that the question contains a factual predicate, namely that Ms. Pete had deceived the courts previously. *See infra* at 12-13 (citing cases). Defendant also claims her statement is opinion because she refers to another litigant's pleading claiming Plaintiff wrongly contested venue. But nothing about *that* litigation serves as a disclosure of a factual basis to say Ms. Pete deceived the Courts "**again**"—i.e., for a second time, which, given the context, readers would reasonably assume is a reference to Ms. Pete's testimony against Mr. Peterson. *See, e.g., Fla. Med. Ctr., Inc. v. New York Post Co.*, 568 So. 2d 454, 459 (Fla. 4th DCA 1990) (a reader must assume by the context of a defamatory newspaper article that reference to "another" implied at least two visits to appellant's hospital).

Finally, although Defendant briefly argues her statements are "substantially true" and thus not actionable, Mot. at 3, this half-baked argument likewise fails, *see id.* at 7-8. She asserts that it was "widely reported that Plaintiff gave inconsistent statements to the police" and "admitted on national television that she lied about her sexual relationship with [Mr. Peterson]." *Id.* These assertions are beyond the four corners of the FAC and may not be considered on this motion. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a

motion to dismiss is limited to the four corners of the complaint.") And they have nothing to do with the statements that are at issue, which accuse Ms. Pete of lying about whether Mr. Peterson shot her, not about whether she made "inconsistent statements" elsewhere or "lied about her sexual relationship." *See* Restatement 2d of Torts, 581A(f) ("[i]t is … the truth or falsity of the particular charge that is to be determined"); Prosser and Keaton, The Law of Torts, 116 at 184 (5th Ed., 1984) (regarding substantial truth, "if the accusation is one of particular misconduct, such as stealing a watch from A, it is not enough to show a different offense, even though it be a more serious one, such a stealing a clock from A, or six watches from B"). In any event, whether an allegedly defamatory statement is substantially true is a question of fact not susceptible to resolution on a pleading motion where the evidence of truth is beyond the complaint's four corners. *See, e.g.*, *Klayman v. Jud. Watch, Inc*., 22 F. Supp. 3d 1240, 1254 (S.D. Fla. 2014) (denying summary judgment for defendant because "the trier of fact must consider the context of the publication in determining whether the gist or sting associated with it differs from the actual truth") (Altonaga, J.).

      (b)      **Defamatory Statements Accusing Ms. Pete of Being Incapacitated Are False Assertions of Fact.**

Defendant's defamatory statements asserting that Ms. Pete is mentally incapacitated such that she is in need of a legal guardian are also false assertions of fact. FAC ¶¶ 64-67. "A printed statement which derogates the plaintiff's mental condition has been held to be libelous per se." *E. Air Lines, Inc. v. Gellert*, 438 So. 2d 923, 928 (Fla. 3d Dist. App. 1983), *disapproved of on other grounds by Ter Keurst v. Miami Elevator Co*., 486 So. 2d 547 (Fla. 1986) (holding that defendant's statements which implied plaintiff "was in fact paranoid, that is, suffering from a mental affliction" were actionable statements of fact, not opinion).

Defendant's attempts to liken her comments to mere insults like "stupid," "moron," and "wacko," Mot. at 9-10, are belied by the actual words she used: "What is Megan's mental status? Does she have a guardian or not? Has she been listed as a capable person? Has she ever been deemed, like, **legally retarded**? Like anything of the nature? Anything of the sort?" FAC ¶ 66 (emphasis added). Defendant also stated that an individual named "T. Farris" is "her guardian" and that Defendant "realized MTS [i.e., Plaintiff] was slow and needed one and so it made all the sense then." *Id*. ¶ 65. When Defendant chose to publicize to her more than 100,000 followers the assertions that Ms. Pete's mental status was deemed "legally retarded" and that she *actually* had a guardian, and "was slow and needed one," she impugned Ms. Pete's mental condition in a way

that is concrete and not mere name-calling or the use of unverifiable insults. Whether Ms. Pete has a guardian is verifiable. FAC ¶ 67. And whether Ms. Pete suffers from a mental condition for which appointment of a guardian is legally required is also verifiable. *Id.* For example, Florida law establishes a procedure for determining whether individuals are legally incapacitated to the extent that appointment of a guardian is legally required—something that is verifiable with mental and physical examinations. *See* § 744.331(3), Fla. Stat. The determination of whether the individual's condition satisfies the requirements for a guardian are made only after a hearing and a court making "findings of fact on the basis of clear and convincing evidence." *Id.* § 744.331(5-6).

Defendant also seeks to shirk responsibility by referring to the first statement above as "speculative opinion," presumably because it is posed in a series of questions. But that does not absolve her of liability. "[T]he form of the language used is not controlling, and there may be defamation by means of a question, an indirect insinuation, an expression of belief or opinion, or sarcasm or irony." *Cantrell v. Am. Broad. Companies, Inc.*, 529 F. Supp. 746, 756 (N.D. Ill. 1981). The language Defendant used is accusatory in nature and reasonably suggest the answers to the "questions" she raised. *See, e.g., id.* ("Defendants also contend that statements phrased as questions cannot amount to an imputation because they are capable of alternative constructions and answers by their nature. This court does not agree. The questions with which Rivera and Lance 'confronted' the plaintiff were accusatory in nature"); *Backes v. Misko*, 486 S.W.3d 7, 14, 24-27 (Tex. App.– Dallas 2015) (affirming denial of motion to dismiss defamation claim based on statement that did not name the plaintiff questioning, "Munchausen Syndrome by Proxy … Has anyone ever known anyone with this disease/issue? If you have STRONG suspicions … to whom do you turn them over?"); *Mudrich v. Wal-Mart Stores, Inc.*, 955 F. Supp. 2d 1001, 1006 (D. Minn. 2013) (question "accused [plaintiff] of theft" and was actionable). Moreover, even if the use of questions make the meaning of her statement ambiguous—and they don't—the meaning of the statement would be an issue for a jury. *Trump*, 2024 WL 3519177, at *7.

Defendant likewise fails to show that any of her assertions would be understood as "loose" and "figurative" hyperbole for which "**no** reasonable person would believe presented facts." *Duffy*, 2015 WL 2449576, at *3 (emphasis added). She claims that the context of the "hip-hop universe" licenses her defamation as hyperbole, but that is a factual argument not appropriate for resolution here and which, in any event, does nothing to lessen the direct accusations of being "legally retarded" and actually having and needing a guardian. *Dershowitz*, 541 F.Supp.3d at 1367 ("factors

relating to the context of the broadcasts and its audience are not before the Court. This requires a more fully developed record").

         (c)     **Defamatory Statements Accusing Ms. Pete of Alcoholism Are False Assertions of Fact.**

Defendant's defamatory statements asserting that Ms. Pete is an alcoholic are likewise false assertions of fact. FAC ¶¶ 69-72; *See Glynn v. City of Kissimmee*, 383 So.2d 774, 775–76 (Fla. 5th DCA 1980) (statements that accused plaintiff of being drunk are defamatory); *Le Moine v. Spicer*, 1 So. 2d 730, 733 (1941) ("to falsely and maliciously charge one with being repeatedly, or continuously or often-times drunk, or with being an habitual drunkard, is actionable per se in this jurisdiction.").

Defendant fails to substantiate her conclusory assertion that her statements are "pure opinion and rhetorical hyperbole by their very nature." Mot. at 10. In a three-day span, Defendant took to her social media channels to brand Ms. Pete an alcoholic, first by falsely informing readers that Ms. Pete comes from a family of alcoholics, and then culminating with the statement, "You ought to be somewhere for your alleged crimes, ***drunkie***. Why do you even speak? ***Like does your liver even function well***?" FAC ¶¶ 69-71. Nothing about these statements are "loose" or "figurative" or signal opinion. They instead mislead readers to believe Ms. Pete is an alcoholic.

Rather than show otherwise, Defendant then pivots to apparently arguing that her statements are substantially true by cherry-picking statements out of context from song lyrics and videos that cannot be considered on this motion. Mot. at 10-11. Once again, Defendant is improperly exceeding the Complaint's four corners to argue a factual issue that is inappropriate for resolution on a motion to dismiss. *Wilchombe*, 555 F.3d 959. The FAC sufficiently alleges that Defendant's statements were false and contain no allegation that would support a substantial truth defense. FAC ¶¶ 69-71. And nothing about the materials Defendant improperly cites are sufficient to show otherwise in any event. The Court should reject this argument as well.

        **3.**       **The FAC Sufficiently Alleges Actual Malice.**

The FAC adequately alleges that Defendant made her defamatory statements with actual malice.[4] To survive a motion to dismiss, a plaintiff need only "plausibly plead a factual basis from which 'actual malice' can be inferred." *Dershowitz*, 541 F. Supp. 3d at 1368. In her one-paragraph

---

[4] Defendant makes no effort to establish that Ms. Pete is an all-purpose public figure for all facets of her life. However, because the FAC contains abundant allegations of actual malice, Plaintiff assumes that standard applies for purposes of this motion only.

argument on malice, Defendant gives the FAC's extensive allegations short shrift and erroneously asserts that Ms. Pete must "establish malice by clear and convincing evidence." Mot. at 11-12. But that is not the standard on a motion to dismiss. *See, e.g.*, *Stern v. O'Quinn*, 2008 WL 11401794, at *7 (S.D. Fla. Aug. 8, 2008) (agreeing that "the determination of actual malice is a factual one that is inappropriate on a motion to dismiss" and finding that "Defendants arguments in this respect are more appropriate for disposition on a motion for summary judgment").

Allegations that "a story is fabricated by the defendant, is the product of [her] imagination," is "so inherently improbable that only a reckless [person] would have put them in circulation," and that "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports" sufficiently plead actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). Other federal courts have found that allegations demonstrating that a defendant (1) relied on unreliable evidence, (2) took statements out of context, and (3) entertained actual ill-will toward the plaintiff were sufficient to warrant denial of a motion to dismiss for lack of actual malice. *US Dominion v. Powell*, 554 F. Supp. 3d 42, 59-63 (D.D.C. 2021). And allegations that a defendant researched the subject matter and would have encountered evidence contradicting her assertions is also sufficient to create a factual issue as to actual malice. *See, e.g., Klayman*, 22 F. Supp. 3d at 1252; *100 Plus Animal Rescue, Inc. v. Butkus*, 2020 WL 5514404, at *7 (S.D. Fla. Aug. 15, 2020).

Here, the FAC includes more than sufficient allegations to infer Defendant acted with actual malice. *Dershowitz*, 541 F. Supp. 3d at 1368. For example, Plaintiff alleges that Defendant: (1) knew, or should have known, that her statements were false; (2) continued to accuse Ms. Pete of having lied under oath about whether Mr. Peterson shot her with full knowledge of his conviction; (3) published stories about Ms. Pete that included pre-conceived, false, and disproven theories as part of a campaign of misinformation and harassment; (4) published her Defamatory Statements as a "hired gun" for and as part of her conspiratorial relationship with the Petersons, to gain notoriety, and generate profit; (5) made statements so far removed from reality that they are inherently improbable, baseless, and devoid of facts; and (6) demonstrated an extreme ill-will and disdain for Ms. Pete. *See* FAC ¶¶ 73-84, 102.[5] Taken together, the FAC sufficiently alleges actual

---

[5] Defendant once again improperly argues the facts when the inferences must be construed in Plaintiff's favor, asserting (without citing any allegations) that Defendant "relied on courtroom pleadings and documents, police reports, and observations while attending trial." Mot. at 12. These unsubstantiated assertions are not properly credited on this motion.

malice. *See Dershowitz*, 541 F. Supp. 3d at 1367-68 (finding allegations of actual malice sufficient to withstand motion to dismiss); *Embrey v. First Franklin Fin. Corp.*, 2013 WL 1289401, at *5 (S.D. Fla. Mar. 12, 2013) (denying motion to dismiss defamation claim where allegation that defendants "exhibited a knowing disregard for the truth" was "enough"); *Klayman*, 22 F. Supp. 3d at 1252 (finding jury issue where defendant who allegedly said plaintiff was convicted conducted "her own independent research" about court proceedings, "the trier of fact may find [she] gained sufficient knowledge from her research either to know the terminology 'convicted' was false, or to harbor serious doubts as to its veracity"); *100 Plus*, 2020 WL 5514404, at *7 (defendant's constructive notice of agency's official findings that were in "direct contravention" of her assertions plaintiff was "charged with criminal misconduct" sufficient to create a jury issue").

## B.    Ms. Pete States A Claim for Promotion of An Altered Sexual Depiction.

The FAC also states a claim for promotion of an altered sexual depiction in violation of section 836.13, Florida Statutes. A cause of action under that section requires (1) a person willfully and maliciously promotes an altered sexual depiction of an identifiable person, (2) without the consent of the identifiable person(s) depicted, and (3) that at the time, the defendant knew or reasonably should have known the depiction was an altered sexual depiction. § 836.13(2), Fla. Stat. The definition of "promote" under the statute means "to issue, sell, give, provide, lend, mail, deliver, transfer, transmit, transmute, publish, distribute, circulate, disseminate, present, exhibit, send, post, share, or advertise or to offer or agree to do the same." § 836.13(1)(d), Fla. Stat.

Defendant's motion ignores key allegations of the Complaint, improperly argues the facts on a pleading motion, and misconstrues the statute. For instance, Defendant wrongly claims that she did not "repost or share the video on her social media," did not "post it on any of her platforms," that "[t]here are no factual allegations that Defendant shared or disseminated the video to anyone," and the FAC allegedly claims she only "'liked' the video which had been previously posted." Mot. at 14-15. Yet, the FAC contains allegations that Defendant did share the video on her social media and did post it to her X page. As the FAC alleges, when Defendant hit the "like" button on the video, she caused the video to be re-published and shared on her own X page under the "likes" tab, where the video could then be viewed and played by anyone who went to her X page. *See* FAC ¶¶ 42-43, 45, 53. Then, after causing the video to be shared on her profile, Defendant directed the public to "go to my likes," *i.e.*, the likes section of her X page. *Id.* ¶ 45. And that is exactly what they did, with her encouragement, causing the video to gain popularity. *Id.* ¶ 46. Indeed,

15

Defendant publicly confessed to doing so, brazenly stating, "be mad that I drew attention it." *Id.* ¶
47. Defendant attempts to downplay her role by characterizing her conduct as merely "refer[ring]
or speak[ing] about the existence of a deep fake video," Mot. at 14, but Defendant did more—she
published it to her profile and then told people to go watch it there and thus admittedly "drew
attention to it."

In any event, Defendant cites no support for her contention that the statute "requires the
violating party actually create and put the offending video into circulation or that they provide a
copy … to someone, or that they post it online." Mot. at 15. This is a distortion of the statute's
plain text, and tellingly, Defendant does not even tie her conclusory assertions to the statute's text.
*See id.* The conduct alleged in the FAC and described above qualifies under the plain meaning of
the statute's definition of "promote" as including to "transmit," "publish," "distribute," "circulate,"
"disseminate," "present," "exhibit," "post," "share," or "advertise." Fla. Stat. § 836.13(1)(d).
Nowhere does the statute require, as Defendant asserts without substantiation, that she have
"procured, manufactured, issued or sold the video" or "provide[d] a copy of the video to anyone."

Defendant also improperly argues the facts, and does so in ways that are of no relevance to
whether Ms. Pete has stated a claim. For instance, Defendant suggests that an article published by
Uproxx may have "garnered more attention to the video than the Defendant," and tries to shift
blame to "the unknown individual who published and posted it online." Mot. at 14-15. But the
extent of Defendant's liability vis-à-vis others is not before the Court on this pleading motion.
Similarly irrelevant is Defendant's contention that "Defendant herself told the public that the video
appeared to be a deep fake, and that Plaintiff should sue the individuals who made it." Mot. at 13.
Nowhere does the statute provide such an excuse for Defendant's promotion of the video. And it
is Defendant's confession that she knew the video was fake that suffices to allege she "knew or
reasonably should have known the depiction was an altered sexual depiction." § 836.13(2), Fla.
Stat.; FAC ¶ 44.

**C.      Ms. Pete States A Claim for Intentional Infliction of Emotional Distress.**

To state a plausible claim for intentional infliction of emotional distress ("IIED"), Ms. Pete
is required to allege "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was
outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."
*Est. of Duckett ex rel. Calvert v. Cable News Network LLLP*, 2008 WL 2959753, at *4 (M.D. Fla.
July 31, 2008). Defendant only argues that Ms. Pete failed to allege that her conduct was

outrageous. Mot. at 15-18. Defendant is wrong: Ms. Pete's allegations are sufficient to withstand the motion.

The FAC alleges that Defendant's outrageous behavior consists of (1) conspiring with Mr. Peterson—a convicted felon and Ms. Pete's assaulter—and others to engage in a campaign of harassment against Ms. Pete in order to receive a financial benefit from the Petersons, (2) knowingly spreading debunked and disproven theories about the facts of the Trial, (3) employing "bot" accounts to attack Ms. Pete and her supporters with hateful, derogatory, and malicious statements, and (4) promoting violence against Ms. Pete. FAC ¶¶ 31-36, 115-117. The FAC further alleges that Defendant knew or should have known that Ms. Pete was susceptible to severe emotional distress and that Defendant knew Ms. Pete discussed her suicidal ideations at the trial. FAC ¶¶ 37, 119; *see Est. of Duckett ex rel. Calvert*, 2008 WL 2959753, at *5 ("[W]here the alleged conduct on the part of the Defendants may not be considered outrageous when the victim is of ordinary emotional and mental status, such conduct may become actionable (and liability may exist) when the alleged victim suffers from known emotional and/or psychological trauma.") Read in the light most favorable to Ms. Pete, her allegations state a plausible IIED claim. *See Albert v. Nat'l Cash Reg. Co.*, 874 F. Supp. 1328, 1331 (S.D. Fla. 1994) (IIED claim that alleged a "pervasive pattern of constant harassment on the part of Defendants" was sufficient to withstand motion to dismiss); *Est. of Duckett ex rel. Calvert*, 2008 WL 2959753, at *4-5 (denying motion to dismiss where allegations that defendants "verbally badgered" the deceased on a television broadcast, leading to her suicide, were sufficient to state an IIED claim); *Gallogly v. Rodriguez*, 970 So. 2d 470, 472 (Fla. 2d DCA 2007) (reversing order dismissing IIED claim where complaint alleged defendant police officers "conducted a continuing campaign of harassment").

Although determining whether the allegations related to the outrageousness of a party's conduct is a legal question for the Court to determine as a matter of law, *Vance v. Southern Bell Telephone Co.*, 983 F.2d 1573, 1575, n.7 (11th Cir. 1993), at the pleading stage, courts refuse to grant motions to dismiss due to a lack of a fully developed record. *See Albert*, 874 F. Supp. 1328 at 1331 (S.D. Fla. 1994) ("Without the benefit of Defendants' Answers and in the absence of any record evidence, determining as a matter of law whether Defendants' alleged conduct is actionable for intentional infliction of emotional distress would be premature."); *see also Est. of Duckett*, 2008 WL 2959753, at *5 (denying motion to dismiss because "the record is insufficiently developed to determine whether the Defendants' alleged conduct amounted to extremely

outrageous behavior such that the Plaintiffs could recover" and that the complaint "must be considered in light of the extremely lenient 'notice pleading' standard applied in federal courts.")

Contrary to Defendant's assertion, Mot. at 16, Florida courts have allowed IIED claims to proceed past the pleadings stage even where the allegations in the complaint do not allege sexual assault or physical contact. *See Albert,* 874 F. Supp. at 1331; *Est. of Duckett ex rel. Calvert*, 2008 WL 2959753, at *4-5; *Gallogly*, 970 So. 2d at 472. In any event, Ms. Pete alleges that "Defendant has used her social media platform to incite violence against Ms. Pete" and would "slap" Ms. Pete if given the chance. FAC ¶ 36. Accordingly, the Court should deny Defendant's motion.

### D.      Ms. Pete States A Claim for Cyberstalking.

This Court has jurisdiction over this claim because there is diversity jurisdiction over the entire matter—there is diversity of citizenship between the parties and the amount in controversy is over $75,000. 28 U.S.C. § 1332(a). Defendant's presumption that the claim is brought pursuant to the Court's supplemental jurisdiction and that it has discretion to dismiss is wrong. The Court has no discretion to decline to hear claims properly brought pursuant to diversity jurisdiction. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.").[6]

With jurisdiction firmly established, the Amended Complaint states a cause of action based on cyberstalking, because it alleges that Defendant (1) wilfully, maliciously, and repeatedly; (2) engaged in a course of conduct; (3) that involved—directly or indirectly—communicating or causing to be communicated words or images; (4) using electronic communications; (5) directed at or pertaining to a specific person that (6) caused substantial emotional distress to that person; (7) served no legitimate purpose; and (8) the *petition* must be sworn to. § 784.0485(3)(b), Fla. Stat.

First, the Amended Complaint alleges that Defendant engaged in a course of conduct involving indirectly communicating words or images using electronic communications directed at Ms. Pete. FAC ¶¶ 54-84. Second, Ms. Pete alleges that these words caused her serious emotional distress. *Id.* ¶¶ 29. 85-88, 104-05, 120. Although Defendant argues that the substantial emotional distress standard should be looked at through an objective, not subjective standard, the case she cites for that proposition was decided after a full evidentiary hearing, not on the basis of the

---

[6]  Defendant's reliance on an Order from Judge Wetherell is misplaced. Mot. 19. A full review of the docket in that case reveals that the plaintiff's federal action became moot and dismissed after she filed the petition in state court.

pleadings. *See Logue v. Book*, 297 SO. 3d 605, 609-610 (Fla. 4th DCA 2020). Here, the Court must accept the well-pleaded facts as true, including allegations that Defendant knew of Ms. Pete's vulnerabilities and purposefully exploited those vulnerabilities to cause her substantial emotional distress.

Third, the statements served no legitimate interest. Defendant argues the cyberstalking claim should be dismissed because the Court cannot enter an injunction to prevent libelous or defamatory statements, but in the same breath, claims her statements are not libelous or defamatory—she cannot have it both ways. Further, Defendant argues that there can be no claim of cyberstalking for conduct based on a legitimate purpose. But there can be no legitimate purpose in making harassing and defamatory statements.

Defendant does not even attempt to articulate a "legitimate" purpose for her harmful statements, making *Hammer v. Sorensen*, 824 Fed. Appx. 689, 694 (11th Cir. 2020) inapplicable. The Court should instead look to *Strober v. Harris*, 332 So. 3d 1079, 1086 (Fla. 2d DCA 2022).[7] In that case, the Second DCA found that the videos posted to YouTube that contained statements (1) directing viewers to approach and harass a female content creator, (2) daring the female creator to sue, and (3) soliciting monetary donations to anger the female creator were not done for a legitimate purpose and were actionable despite not being sent directly to the female creator. Likewise, here, even though the videos were not sent directly to Ms. Pete, they resemble the same types of attacks in *Strober*. Defendant's statements are clearly designed and intended to harass Ms. Pete by calling her a "lying ass hoe," "like legally retarded," a "drunkie," and more. FAC ¶¶ 59, 66, 69.

Fourth, the Statute requires the petition to be swore to under oath. Ms. Pete signed and swore to the petition attached to the Amended Complaint. *See ECF No. 28-1.* Therein, she pleads all of the requirements of the statute including the paragraphs of the Amended Complaint relied on to meet her burden.[8] Ms. Pete would be willing to swear to the Amended Complaint, if the Court deems that necessary but the Statute requires the *petition* to be verified, which it was.

---

[7]   This case also directly refutes Defendant's argument that Ms. Pete must have pleaded "direct threats of violence." Mot. 18.

[8]   Defendant's suggestion that Ms. Pete could simply dismiss and re-file in Circuit Court is insincere and presents its own hurdles. Under Florida law, the priority doctrine permits a court to abstain from hearing a case when a court under the same sovereign has already exercised jurisdiction in a matter. *Siegel v. Siegel*, 575 So. 2d 1267, 1272 (Fla. 1991). The purpose of

### E.   Defendant's Motion to Dismiss or Strike Claims for Attorneys' Fees is Improper and Premature

Defendant's request to dismiss or strike Plaintiff's claims for attorney fees contravenes the Federal Rules of Civil Procedure. Even where there appears no current basis to claim attorneys' fees, a plaintiff's request for attorneys' fees is not "redundant, immaterial, impertinent, or scandalous," *see* Fed. R. Civ. P. 12(f) (setting the standard for a motion to strike), and it is plausible that Ms. Pete may be entitled to fees if she prevails. *See Sawin v. Auotmoive Warranty Servs. of Fla., Inc.*, 2015 WL 12819707, at *1 (M.D. Fla. Aug. 19, 2015) (denying motion to dismiss claim of attorneys' fees even though no present entitlement to fees).

### F.   Alternatively, Leave To Amend Should Be Granted to the Extent Any Claim Requires Additional Factual Detail.

In the event the Court finds any cause of action lacking factual detail needed to state a claim, Ms. Pete should be permitted leave to amend. Fed. R. Civ. P. 15(a)(2); *Shipner v. E. Air Lines, Inc.*, 868 F.2d 401, 406–407 (11th Cir. 1989) ("Rule 15(a) severely restricts the district court's freedom, directing that leave to amend shall be freely given when justice so requires.") Rule 15(a)'s liberal policy of "permitting amendments to facilitate determination of claims on the merits circumscribes the exercise of the district court's discretion; thus, unless a substantial reason exists to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* at 407. None of the grounds for refusing leave to amend—undue delay, bad faith, undue prejudice, a repeated failure to cure deficiencies by amendments previously allowed, or futility—are present here, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and Defendant makes no argument to the contrary. Accordingly, Plaintiff should be afforded leave to amend to the extent any claim requires further factual detail.

### V.   CONCLUSION

For the foregoing reasons, the Court should deny the motion to dismiss in its entirety.

---

applying priority is to prevent "unnecessary and duplicitous lawsuits" that "would be oppressive to both parties." *Id.* at 1272.

Dated:  January 13, 2025

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


/s/ Daniel L. Humphrey
Olga Vieria (Fla. Bar No. 29783)
Daniel L. Humphrey (Fla. Bar No. 1024695)
olgavieira@quinnemanuel.com
danielhumphrey@quinnemanuel.com
(305) 402-4880
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
2601 S. Bayshore Dr., Suite 1500
Miami, FL 33133

Mari F. Henderson (pro hac vice)
Julian T. Schoen (pro hac vice)
marihenderson@quinnemanuel.com
julianschoen@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

*Attorneys for Plaintiff Megan Pete*