**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 24-24228-CIV-ALTONAGA

MEGAN PETE, an individual

    *Plaintiff,*

v.

MILAGRO ELIZABETH COOPER, an individual,

    *Defendant.*
_____/

**DEFENDANT'S REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

    Defendant, MILAGRO ELIZABETH COOPER, through undersigned counsel, hereby files her Reply Memorandum in Response to [DE 33] Plaintiff's Response to Defendant's Motion to Dismiss First Amended Complaint ("FAC") and states the following:

**REBUTTAL OF MATTERS RAISED IN PLAINTIFF'S RESPONSE**

    A. **Defamation**

        1. **Application of Fla. Stat. § 770.01**

    Plaintiff's argument that Fla. Stat. § 770.01 does not apply to the Defendant is buttressed on the obsolete mindset that it applies only to legacy media such as radio, television, and newspapers. However, as noted recently by the recent presidential election results, bloggers and livestreamers are now part of the media where many members of the public get their information and entertainment. Defendant, as alleged in the FAC, is a blogger with over 100,000 followers who reports on various pop culture items; not just the Plaintiff. As such, as noted by the authorities cited by Defendant, she is entitled to pre-suit notice under section 770.01. *Comins v. Canvoorhis,* 135 So.2d 545, 559 (5th DCA 2014); *Grlpwr, LLC v. Rodriguez,* No. 3:23CV16480-TKW-HTC, 2023 WL 5666203, at *2 (N.D. Fla. Aug. 25, 2023); *See also Tobinick v. Novella*, 2015 WL 1191267, at *9 (S.D. Fla. Mar. 16, 2015). Plaintiff suggests that because she alleges that the Defendant is on the payroll of Mr. Peterson (which is not true), this somehow disqualifies her from having to receive presuit notice under the statute. This argument is without merit. All media companies, even legacy media receive monies through advertising especially trade publications. Taking the Plaintiff's argument to its ultimate conclusion, then by virtue of receiving such monies, they would no longer be

1

subject to the statute as well. Notably, this incongruous conclusion is not supported by the plain language of the statute. Plaintiff's noncompliance therefore requires dismissal. *Comins v. Canvoorhis,* 135 So.2d 545, 559 (5th DCA 2014).

### 2. Defendant's comments about Plaintiff's Credibility at Trial is Pure Opinion and Protected under the First Amendment

Plaintiff takes the position that if someone does not parrot her preferred narrative, this constitutes defamation. In fact, Plaintiff takes this even further by suggesting that even statements made by the Defendant criticizing the police regarding the gun, bullet fragments, and DNA somehow is defamatory to her. This is not defamation nor actionable under Florida law. Plaintiff also makes the specious argument that criticizing the credibility of a witness at trial, especially one that is a public figure, is tantamount to defamation. Plaintiff's argument is flawed because again it presumes that simply because the jury convicted Mr. Peterson, Plaintiff's trial testimony is therefore incontestable.[1] Further, Plaintiff again misstates the facts in that Defendant has repeatedly criticized the credibility of the trial witnesses (plural) in the criminal trial, which is sensible given that one of the key witnesses, Ms. Harris, plead the fifth amendment and was given immunity and given testimony that Plaintiff and Ms. Harris were both intoxicated and could not remember certain facts, and given that Plaintiff admitted after the incident that she didn't tell police she had been shot, saying instead that she stepped on broken glass. It was only four days later, in an interview with Detective Stogner, that Plaintiff claimed to have been shot. Further, Plaintiff admitting to lying on national television about her relationship with Mr. Lanez. These are some of the items in the Defendant's statements that form the basis of her opinion. Once again, the Plaintiff's trial testimony cannot be proven to be true or false. It was up to the jury to believe her or disbelieve her along with the testimony of other witnesses. Thus, suggesting Plaintiff was not a credible witness or that she was a liar does not *ipso facto* constitute an accusation of perjury or defamation per se.

### 3. Calling an individual "slow" or "retarded" does not rise to the level of actionable defamation against a public individual

Plaintiff's suggestion that Defendant asking an evaluating question about the Plaintiff's mental status somehow rises to the level of defamation is nonsensical. Again, looking at the full

---

[1] It is noteworthy that the Eleventh Circuit Pattern Jury Instruction 5 on Credibility begins with "When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate."

context of the quote and the livestreamed video rather than the edited portions, clearly the Defendant noted that these were questions that should be asked of the Plaintiff:

> it okay Megan said that he pointed a gun at her with intent to harm her and that she was afraid for her life how if Sean Kelly and if Jaquan Smith saw what they saw and that deserves another trial off that alone and I'm gonna tell you something else that motherfucking 9-1-1 call needs to be unsealed immediately because Sean Kelly called the police for an altercation that took place before shots were fired I guarantee that we will hear everything play out on that phone call he was right on the balcony right above their heads very fucking close furthermore babe what is Megan's mental status does she have a guardian or not it has she been listed as a capable person has she ever been deemed like legally retarded anything of the nature anything of the sort those are good questions Megan a stallion has a mugshot from a situation with an ex-boyfriend where she was arrested for domestic violence was she ever supposed to be in possession of a weapon could that be a reason why we don't want to claim this gun that's the same color as a lot of shit that you wear little miss olive green I've questions that need motherfucking answers…

[A-12, p. 61, ll. 2-19].[2] Contrary to Plaintiff's contention that this Court should disregard the entire posts and look only at the four corners of the FAC, it is axiomatic that when the video and posts are linked in the pleading and "the information at issue is part of what was shared in the videos and postings. As a result, the information is in the pleadings." *See Garin v. Menegazzo,* WL 1658831, at *6 (S.D. Fla. May 25, 2022) (holding that when a video is referenced in a complaint and subsequent motions reference the video, information gathered from the video is part of the complaint and will not be struck). Given the context of the statement, it is clearly not a statement of fact and further requires serious overreach to suggest that this statement is "reasonably understood" to suggest Plaintiff is "mentally incapacitated."[3]

### 4. **Plaintiff Intentionally Misstates Defendant's Statement in paragraphs 69-71**

Plaintiff's reluctance to refer to the full statements and context of Defendant's posts and suggestion that the full posts should be ignored in this matter is reminiscent of the Wizard of Oz telling everyone to ignore the man behind the curtain. Plaintiff suggests that the statements in Defendant's October 29, 2024 livestream[4] refers to her when in fact they refer to a California based reporter, "the cockeyed lady," who happens to have the same first name as Plaintiff (though

---

[2] The full livestream can be found at https://www.youtube.com/watch?v=nlS7rbYaqpY

[3] In her opposition papers, the Plaintiff suggests at page 8 that unsworn declarations are not to be given credence. Perhaps she fails to understand that an Unsworn Declaration under 28 U.S.C. §1746 is no different than a sworn affidavit.

[4] The full livestream can be found at
https://www.instagram.com/reel/DBuBDzfxtUqzNopPD1VQa2UyygB_TTfqJbVgN80/

3

different spelling) who has been and continues to cover Plaintiff's case in the media. This is clear from the full quote and the context of the October 29, 2024 statement. In context, the statement which is a response to Plaintiff's counsel's document preservation letter reads in part as follows:

> Let me explain something to you. Alex Spiro didn't have nothing to do with that trial. Why are you sitting up here telling us where a gun is supposed to be, you ain't even making no sense, sir. And guess what, since you said it is available either way you spin it, it's a problem. If it's missing, that's a problem. And if it's not missing, why has his side they saw side been under the impression that it cannot be retested and that it's not available for testing. So what? What's going on here? Those are the questions that you have to ask. So, um, I feel like they're trying to control the narrative. I feel like this is a scare tactic. I feel like they do. They don't want you discussing these things, and I firmly believe that they didn't think it would get this far. We wouldn't even be having this conversation had they rejected everything. *And then you get on social media and the cockeyed lady that says she's seen Megan, she's online telling you he has no chance. Everything's gonna get rejected. How the hell you know, it baffles me how people beat jail time and want to come up and act like they own a damn high horse you ought to be somewhere for your alleged crimes. Drunky. Why do you even speak --- like does your liver even function?* Well, you have so many different things going on with you. I don't get it, but whatever. So Cha, it's a whole bunch of he say, She say, I think that they're upset. They said that all of this is coming out because Megan's documentary is coming out, baby, the universe did this. [emphasis added].

[A6, pp. 2-3, ll. 38-40: 1-18]. As noted by the authorities cited by Defendant at pages 9 and 10 of her motion to dismiss, the above statement is not defamatory, it is pure opinion, hyperbole, or at worst name calling and moreover, does not even refer to the Plaintiff. This is not actionable defamation against a public figure.

    **5. Plaintiff's FAC Fails to Plausibly Establish Malice**

In her papers, the Plaintiff suggests that for purposes of a motion to dismiss, malice needs only to be generally plead. Plaintiff is wrong. First, Plaintiff again misstates the test for malice by citing the negligence standard for a private individual rather than the higher clear and convincing standard for a public figure, and secondly, her suggestion that conclusory statements are sufficient will not carry the day. As noted by the Eleventh Circuit:

> This Court held previously that the *Twombly/Iqbal* "plausibility pleading standard applies to the actual malice standard in defamation proceedings." ... Thus, to plead actual malice, [the plaintiff] "must allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* … This is a subjective test, focusing on whether the defendant "actually entertained serious doubts as to

the veracity of the published account, or was highly aware that the account was probably false." [citations omitted].

*Turner v. Wells,* 879 F.3d 1254, 1273 (11th Cir. 2018)(holding that conclusory allegations of malice do not plausibly state a cause of action for defamation against a public figure and affirming granting of motion to dismiss); *See also Corsi v. Newsmax Media, Inc.,* 519 F. Supp. 3d 1110, 1123 (S.D. Fla. 2021)(dismissing complaint for failure to plausibly plead actual malice).

### B. **Plaintiff's Interpretation of FS 836.13 Violates the First and Fourteenth Amendment and Runs Afoul of the Plain Text of the Statute**

No matter how the Plaintiff wishes to spin the facts, the reality is such that Count II is buttressed on these mere facts: 1) the liking of a third party online post containing an alleged deep fake video; 2) speaking about the deep fake video in a livestream and intimating that the video is likely a deep fake; and 3) posting "Go to my likes" so that others can see what she is discussing in the livestream. This does not fall within the narrow definition of "promote" under Florida Statute § 836.13. Plaintiff also misstates the record where she states that the Defendant shared the video on her profile. She did not. She simply pressed the like button on a third party's post. <u>She did not repost it</u>. Notably, Plaintiff ignores the caselaw cited by Defendant which states that in Florida, statutes like these must be narrowly construed in favor of Defendant and against the Plaintiff. The silence is deafening. Clearly, to interpret the statute as broadly as Plaintiff suggests would violate the First Amendment as an overbroad content-based restriction. *See generally U.S. v. Alvarez*, 567 U.S. 709 (2012)(holding that the stolen valor act is unconstitutional under the First Amendment). As noted in the Florida Senate's Bill Analysis and Fiscal Impact Statement to Bill SB 1798 (March 2, 2022),[5] it states:

> Currently, no states completely ban the creation or distribution of all deep fakes. A complete ban of such images would likely run afoul of constitutional protections under the First Amendment. However, certain categories of speech, including defamation, fraud, true threats, and the imminent-and likely incitement of violence, do not receive protections under the First Amendment. Some deep fakes will likely fall into one of those categories and therefore may be regulated

*Id.* p. 3. In light of the above commentary coupled with the statute's narrow definition of "promote," it is clear that the conduct the statute was intended to cover does not cover the allegations in the FAC. Furthermore, the allegations in the FAC also fail to tell the whole story as demonstrated by her cherry-picking portions of the Defendant's online posts. Accordingly, to

---

[5] https://www.flsenate.gov/Session/Bill/2022/1798/Analyses/2022s01798.ap.PDF

5

assist the Court, the Defendant has filed as a supplement to the Appendix, transcripts of her livestreams which show the full context of what she said on June 8, 2024. App. A-7 – A-11. All the Defendant did was report on something that was sent to her while she was livestreaming. There are no allegations in the FAC that the Defendant's conduct in discussing the video, hitting the like button on someone's post, or posting "go to my likes" would fall into the categories of "defamation, fraud, true threats, and the imminent-and likely incitement of violence." In this day and age when celebrities and influencers themselves release sex videos for publicity, the Defendant reviewed it and concluded it was in all likelihood a fake and suggested Ms. Pete sue the perpetrator. She did not "promote" it within the meaning of the statute; the one who did was the individual who created it. Once again, the Plaintiff is looking to criminalize protected speech under the First Amendment to censor the Defendant. At worst the matter is moot as the posts were taken down. Thus, Count II of the FAC should be dismissed with prejudice as any amendment would be futile.

### C. Plaintiff Has Cited no Authority to Plausibly Support her Claim for IIED

Plaintiff's opposition papers suggest that claims for intentional infliction of emotional distress ("IIED"), cannot be determined at the motion to dismiss stage. This suggestion is without merit and ignores the panoply of cases cited in Defendant's motion to dismiss. Further, her reliance on *Albert v. Nat'l Cash Reg. Co.,* 874 F. Supp. 1328, 1331 (S.D. Fla. 1994) is of no help to her as it relies on the pre-*Twombly/Iqbal* standard of review and does not take into consideration binding caselaw in this district. *See e.g. Valdes v. Gab Robins N. Am., Inc.,* 924 So.2d 862, 866 (Fla. 3d DCA 2006)(affirming dismissal of IIED claim at the motion to dismiss stage).[6] Furthermore, Plaintiff completely ignores all of the decisions cited by Defendant which show that there can be no IIED claim in the absence of serious violent actions, sexual assault, or death and that claims for IIED are routinely dismissed in Florida at the motion to dismiss stage. *Id.*; *See also Rubio v. Lopez,* 445 F. App'x 170 (11th Cir. 2011); *Blair v. NCL (Bahamas) Ltd.,* 212 F. Supp. 3d 1264 (S.D. Fla. 2016); *Vernon v. Med. Management Associates of Margate, Inc.,* 912 F.Supp. 1549 (S.D.Fla. 1996); *Howry v. Nisus, Inc.,* 910 F.Supp. 576, 580–81 (M.D.Fla.1995). Further undermining her position is Plaintiff's reliance on *Est. of Duckett ex rel. Calvert v. Cable News Network LLLP*, 2008 WL

---

[6] As the Eleventh Circuit held in *Bravo v. U.S.,* 532 F.3d 1154 (11th Cir. 2008), … federal courts are "bound to decide the issue the way the Florida courts would have [and must] look to the decisions of the Florida appellate court that would have had jurisdiction over an appeal in this case had it been filed in state court." *Id.* at 1164. Hence, the decisions of Florida's Third District Court of Appeals take precedence in this matter.

2959753 (M.D. Fla. July 31, 2008) which involved a wrongful death case and relies on one aspect of Florida law that is not applicable here:

> As it stands, Florida courts have shown "a particular solicitude for the emotional vulnerability of survivors regarding improper behavior toward the dead body of a loved one, [as well as] special deference ... to family feelings where rights involving dead bodies are concerned...."

*Id. citing Williams v. City of Minneola*, 575 So.2d 683, 691 (Fla. 5th DCA 1991)(denying summary judgment where police officers displayed "grotesque" pictures of a family member's dead body). Likewise, the court's decision in *Gallogly v. Rodriguez*, 970 So. 2d 470, 472 (Fla. 2d DCA 2007) provides Ms. Pete no refuge as this case dealt with egregious police misconduct where there were allegations of a police officer engaging in heinous acts of extortion against the plaintiff by "conducted a continuing campaign of harassment by running a drug and prostitution ring out of [the plaintiff's] bottle club and refusing to investigate illegal activities inside or associated with the bottle club while harassing [plaintiff] and his employees to ensure their silence." In fact, the district court in *Gomez v. United States*, 2013 WL 11322607, at *1 (S.D. Fla. Dec. 3, 2013) in distinguishing *Gallogly* granted a motion to dismiss an IIED claim where the allegations were more egregious than the mere name calling alleged here. In *Gomez*, the plaintiff alleged that Customs and Border Protection officers "confronted Plaintiff's mother and yelled obscenities at her," then grabbed the plaintiff "by the neck, choked him, and slammed him against a vehicle," and then after inquiring as to the plaintiff's immigration status, "searched and handcuffed [plaintiff]" and told him that he "would be raped by black men while he was in the jail." Clearly, these allegations are more severe than what is alleged here and despite that there were actual physical touchings in *Gomez*, Judge Moore held that the use of force was "de minimis" and that the rape remark, "while distasteful, was not repeated on multiple occasions, was not a direct threat" and therefore failed to state a plausible claim for IIED thereby dismissing the count with prejudice. *Id.* at p. *6. Notably, Plaintiff has not and cannot point to any case supporting her claim for IIED. Accordingly, Count III of the FAC should be dismissed with prejudice as once again any amendment at this point would be futile.

    **D. <u>Count IV Fails to Plausibly State a Claim for Cyberstalking</u>**

Despite the Plaintiff's spin to suggest that she states a claim for cyberstalking, what she really is seeking is an injunction to censor the Defendant from uttering statements she disagrees with. Notably, her response fails to address the authorities cited by Defendant which unequivocally hold that, in Florida, injunctions are not available to stop someone from uttering insults or falsehoods

7

or for that matter, misinformation. *See, e.g., Scott v. Blum,* 191 So.3d 502, 504 (Fla. 2d DCA 2016); *Concerned Citizens for Judicial Fairness, Inc. v. Yacucci,* 162 So. 3d 68, 72 (Fla. 4th DCA 2014); *Vrasic v. Leibel*, 106 So. 3d 485, 486 (Fla. 4th DCA 2013) (holding that an injunction remedy is not available to prohibit defamatory or libelous statements). Further, Plaintiff's reliance on *Strober v. Harris*, 332 So. 3d 1079, 1087 (Fla. 2d DCA 2022) is unavailing. First, that decision does not involve a public figure. Secondly, the allegations in this matter once again pale in comparison to those in *Strober* where it was alleged that the defendant had directly issued threats against the plaintiff and incited threats from her viewers, falsely accused the plaintiff of child abuse, announced her home address online to his viewers, and published a photograph of her minor daughter. *Id.* Some of the threats included "outright death threats, … (1) pictures of mutilated and dismembered human bodies, (2) a picture of a young Black woman in a casket, (3) photographs edited to show [plaintiff] hanging from a tree, (4) the home addresses of [plaintiff] and other members of her family, and (5) a picture of a location near [plaintiff's] home with the message 'see you soon.'" *Id.* at 1081. Moreover, the court did not hold that the allegations stated a claim under the statute, rather, the case was reversed because the state court failed to apply the full statutory definition of cyberstalk in its decision and held that there was no personal jurisdiction over the claim. *Id.* The court thus reversed and remanded so that the trial court could reconsider the evidence under the correct statutory standard. *Id.* at 1987. Again, in the case *sub judice*, there are no allegations here of any death threats, or threats of violence or are there any allegations that the Defendant incited such threats from her viewers or listeners. Again, it is perverse that the Plaintiff would waste the resources of this federal court in seeking an injunction to censor Defendant because she allegedly called Plaintiff a "lying ass hoe," "like legally retarded," or a "drunkie." (DE 33, p. 20). The First Amendment prohibits such restraints through the use of injunctive relief. *Chevaldina v. R.K./FL Mgmt., Inc.,* 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014). Accordingly, should the Court invoke supplemental jurisdiction over Count IV, it should dismiss the claim with prejudice for its failure to plausibly state a claim under § 784.0485, Fla. Stat.

      Finally, in her opposition papers, Plaintiff suggests that this Court has no discretion under 28 U.S.C. § 1367(c)(4) to decline jurisdiction over the Cyberstalking claim. Again, Plaintiff is wrong. It is clear that Count IV, which seeks purely injunctive relief under a Florida statute, is brought pursuant to Section 1367 given that it is not a claim for monetary damages. Diversity jurisdiction exists in this matter solely on her allegations that her damages under her state tort claims exceed $75,000.00. (DE 28, ¶ 13). In fact, the FAC itself invokes this Court's supplemental

jurisdiction under section 1367. *Id.* Accordingly, this flies in the face of her argument that "Defendant's presumption that the claim is brought pursuant to the Court's supplemental jurisdiction and that it has discretion to dismiss is wrong." (DE 33, p. 19). Again, the reality is that Count IV can only be brought in this Court pursuant to 28 U.S.C. § 1367 and as such, this Court has the discretion to decline supplemental jurisdiction based on the well-reasoned opinions by Judge Wetherell in *Kassenoff v. Harvey,* Case No. 23-cv-24085, DE 35 slip op. at pp. 3-4 (ND Fla. Apr. 4, 2024).

### E. Plaintiff's improper Request for Attorney's Fees in Counts I, III, and IV.

Plaintiff's response does not dispute that she has no legal basis for attorney's fees in Counts I, III, and IV. She merely argues that it is premature to dismiss and/or strike these claims. However, the Court need not wait until Plaintiff files a motion for attorney's fees to rule on the instant motion seeking to strike the fee references asserted in Counts I, III, and IV because Plaintiff has already conceded there is no statutory or contractual basis for awarding fees under those counts. *See Euro RSCG Direct Response, LLC v. Green Bullion Fin. Servs.,* 872 F. Supp. 2d 1353, 1364 (S.D. Fla. 2012) ("The Court will grant the motion to strike because [the] [p]laintiff has conceded that it is without a contractual or statutory basis for attorneys' fees."); *Hodge v. Orlando Util. Com.*, 2009 WL 4042930 M.D. Fla. 2009), at *4 ("[A] prayer for relief not available under the applicable law is properly subject to a motion to strike.")(citing 2 Moore's Federal Practice ¶ 12.37[3] (3d ed. 2009)); *Atkinson v. Wal-Mart Stores, Inc.,* No. 808-CV-691-T-30TBM, 2008 WL 2261784, at *1 (M.D. Fla. May 30, 2008)(granting motion to strike attorney's fees as the plaintiffs failed to allege or cite any applicable statute or contract provision allowing for the recovery of attorney's fees under the claims alleged in the complaint).

## CONCLUSION

This case is emblematic of how rich celebrities are using the courts and their financial means these days to silence their critics by bringing forward spurious claims against those who generally do not have the resources to defend these cases with the hope and intent that their critics will cave, be defaulted, or go bankrupt. Plaintiff takes this weaponization of the court system a step further by bringing a federal action for such nonsensical things such as schoolyard name-calling and for critical opinions and commentary by Defendant describing the Plaintiff's conduct which the Plaintiff has herself admitted to in her song lyrics, in trial testimony, and in her recently publicized documentary. This is why defamation cases like this should be decided at the motion to dismiss stage as "there is a powerful interest in ensuring that free speech is not unduly burdened

by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.,* 816 F.3d 686, 702-03 (11th Cir. 2016). Plaintiff further suggests that the Defendant should be censored and penalized because she is allegedly publishing rumors and misinformation. Even if this were correct, this does not obviate the protections the First Amendment provides the Defendant as even misinformation is protected under the First Amendment. *See Susan B. Anthony List v. Driehaus*, 814 F.3d 466 (6th Cir. 2016)(striking down Ohio law prohibiting reckless false statements about candidates in campaign materials, emphasizing that the law too broadly swept in non-material statements and intermediaries who merely transmitted others' statements); *See also Matal v. Tam,* 582 U.S. 218 (2017)(hate speech protected under the First Amendment); *Street* v. *New York*, 394 U. S. 576, 592 (1969)(holding that "the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers"). As noted by Justice Kennedy in *Alvarez*, "[t]he Nation well knows that one of the costs of the First Amendment is that it protects the speech we detest as well as the speech we embrace. Though few might find respondent's statements anything but contemptible, his right to make those statements is protected by the Constitution's guarantee of freedom of speech and expression." *Id.* at 729-30.

Finally, Plaintiff's suggestion that a guilty verdict in a criminal case precludes those like Defendant from criticizing witness credibility, prosecutorial conduct, trial evidence, and how the case was handled is chilling. There are no safe spaces in the real world especially for artists who are public figures as this is the business they have chosen. As Justice Brandeis noted nearly one hundred years ago, "[i]f there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 US 357, 377 (1927)(Brandeis, J. Concurring). Perhaps Plaintiff, who is a new resident to the State of Florida, should read about Florida's dark history where the Groveland Four were convicted based on patently false and coerced testimony and racial bias. Just because a jury convicts a defendant does not mean that the state's case was and should be deemed the gospel and that those speaking out against the conviction should be condemned as heretics. If this were the case, then why have appellate courts?

Accordingly, based on the foregoing and on the grounds set forth in the Motion to Dismiss, Defendant respectfully requests that Plaintiff's First Amended Complaint be **DISMISSED**. Alternatively, if this Court deems it appropriate, Defendant respectfully requests pursuant to Rule 12(d), Fed.R.Civ.P, that this Court convert this motion into a motion for summary judgment.

Respectfully submitted,

| **PANCIER LAW** | **UNITE THE PEOPLE, INC.** |
|---|---|
| /s/ Michael Pancier | /s/ Michael R. Hayden |
| Michael Pancier | Michael R. Hayden, Esq. (pro hac vice) |
| (Fla Bar No. 958484) | (California Bar No. 343302) |
| mpancier@pancierlaw.com | (Not admitted in Florida) |
| Tel: (954) 862-2217 | michael@unitethepeople.org |
| 9000 Sheridan Street, Suite 93 | Tel: (888) 245-9393 |
| Pembroke Pines, Florida 33024 | 555 E. Ocean Blvd., Suite 205 |
| | Long Beach CA 90802 |
| *Co-counsel for Defendant,* | *Co-counsel for Defendant,* |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive Notice of Electronic Filing.

By: */s/ Michael Pancier*
　　Michael Pancier
　　Fla Bar No. 958484