**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MEGAN PETE, an individual

*Plaintiff,*

v.

MILAGRO ELIZABETH COOPER,
an individual,

*Defendant.*

Civil Action No. 1:24-cv-24228

JURY TRIAL DEMANDED

**Plaintiff Megan Pete's Unopposed Motion for Order to Show Cause Why Daystar Peterson Should Not Be Held in Contempt for Violating This Court's Order**
<u>**Permitting His Deposition**</u>

Plaintiff Megan Pete, by and through undersigned counsel, files this Motion for Order to Show Cause Why Daystar Peterson Should Not Be Held in Contempt for Violating This Court's Order Permitting His Deposition.  In support thereof, Ms. Pete states as follows:

Mr. Peterson's conduct during the deposition was so disruptive, inflammatory, and inconsistent with the basic norms of civil litigation that even his own counsel, who also represents the Defendant, Milagro Cooper, disavowed it.[1]  As a result of Mr. Peterson's misconduct, the deposition had to be terminated shortly after it began.

---

[1] In an email requesting a meet and confer regarding Mr. Peterson's egregious conduct, Ms. Cooper's counsel, Mr. Pancier, stated that Mr. Hayden—co-counsel of record for Ms. Cooper—represents Mr. Peterson in a state criminal appeal and habeas petition. He also stated—and Mr. Hayden, who was copied on the email, raised no objection—that Mr. Peterson's conduct had "frankly" "wasted our time as well." *See* Pancier Email to Humphrey, Apr. 11, 2025, attached as Exhibit A. For that reason, Mr. Pancier explained, "any action you wish to take against [Mr. Peterson] individually, we will not oppose."

1

Although his conduct was shocking, it was not a complete surprise. From behind prison bars, Mr. Peterson telegraphed his intent to defy the Court's deposition process, boasting in a press release issued by Unite the People that he would refuse to testify. *See* Unite the People Inc. Press Release, Apr. 7, 2025, attached as Exhibit B. Just before the deposition, Unite the People's CEO, Ceasar McDowell, mocked the process on his social media account, writing, "good luck trying to get [Mr. Peterson] to 'testify' to anything, it's just not what he does." *See* Ex. B. That proved prescient. Mr. Peterson flouted this Court's Order authorizing his deposition and refused to "testify to anything."

The Court should issue an Order to Show Cause why Mr. Peterson should not be held in contempt for: (1) violating the Court's directive permitting the deposition to proceed; (2) squandering the time of his own counsel and counsel for Ms. Pete; (3) misusing the resources of California prison staff; and (4) otherwise abusing the judicial process. Once the Court issues the Order to Show Cause and affords Mr. Peterson an opportunity to respond, the Court should then Order him to (i) return to the deposition and conduct himself as if he were appearing in Court and (ii) bear the costs of the initial and follow-up depositions. Finally, the Court should warn him that if he fails to do so, he will be punished with further confinement when he completes his current sentence.

## BACKGROUND

This case is about the extensive and persistent defamation by Defendant Milagro Cooper of Plaintiff Megan Pete. Ms. Cooper is a social media personality. Starting in 2020 and continuing to the present, Defendant Cooper has used her social media accounts to spread defamatory statements, deepfake porn videos, and outright lies about Ms. Pete at the behest and command of Mr. Peterson. As the Court knows from its review of the legal sufficiency of the Amended

Complaint, in 2022 Mr. Peterson shot and wounded Ms. Pete. He was charged, tried, and convicted for his crime. He is now serving a 10-year sentence in a California prison. Since the shooting and through the present, Defendant Cooper has worked on a coordinated campaign with Mr. Peterson to defame and delegitimize Ms. Pete. Ms. Cooper has acted at Mr. Peterson's direction, helping him circumvent multiple protective and gag Orders that bar him from speaking publicly or posting about these matters.

Ms. Pete filed this case to set the record straight on Ms. Cooper's lies and hold Ms. Cooper accountable for her misconduct. To demonstrate the level of malice underlying Ms. Cooper's conduct—including her coordination with Ms. Pete's assaulter—Ms. Pete noticed Mr. Peterson's deposition. Because of Mr. Peterson's imprisonment, the Federal Rules of Civil Procedure required an Order from this Court to depose him. *See* Fed. R. Civ. P. 30(A)(2)(B). Ms. Pete moved for such an Order (ECF No. 41), which was unopposed by Mr. Peterson's lawyer, who also represents Defendant Cooper in this action. *See id*. (noting that the Motion was unopposed). The Court granted the Motion and entered an Order permitting Mr. Peterson's deposition to proceed. (ECF No. 42.)

That deposition proved to be a waste of time. Mr. Peterson refused to treat his deposition with any seriousness.[2] In the 44 minutes on the record, Mr. Peterson feigned ignorance regarding the definition of basic words, such as "discuss" and "approve;" harassed Ms. Pete's counsel about her appearance; interrupted questioning to discuss his answers with his and Ms. Cooper's counsel; and pretended that the video equipment was not working despite prison staff confirming it was

---

[2] Mr. Peterson's deposition transcript is attached as Exhibit C and cited herein as "Depo. Tr. [pg:ln]."

3

functioning properly.  As a result of Mr. Peterson's contemptuous behavior, Ms. Pete's counsel suspended the deposition so that she could bring his misconduct to the Court's attention for redress.

<strong><u>Mr. Peterson's Deposition Misconduct</u></strong>

1. *Mr. Peterson feigned ignorance of the meaning of everyday words, such as "discuss," "approve," and "meet."*

When asked if Mr. Peterson had ever met with any attorneys to prepare for the deposition, he pretended to not know what the word "meet" meant in context and offered a monologue about how "meet" had a variety of definitions, including a sexual context:

> Ms. Henderson: Okay. Did you meet with Mr. Hayden or any other attorneys to prepare for your deposition today?
>
> Mr. Peterson: When you say "meet," what do you mean?
>
> Ms. Henderson: What does the word "meet" mean to you?
>
> Mr. Peterson: Well, I would ask you for the "Webster" dictionary version of meet, if you could explain that to me, just for clarification.
>
> Depo. Tr. 42:22-43:3

. . .

> Mr. Peterson: It could mean a lot of things. I mean meat could be a hot dog; meat could be a steak; meat could be red meat. It could be a lot of things. You know what I'm saying? You could watch porno. Meat - meat is a whole different thing over there. Meet can be anything. I'm asking you what is your definition of "meet."
>
> Depo. Tr. 43:13-18.

Then, Mr. Peterson denied knowing if he "discuss[ed], approve[d], or authorize[d]" the statement made by Unite the People in which Mr. McDowell stated that Mr. Peterson would not "testify" because Mr. Peterson claimed to not understand the definition of "discuss," or "approve:"

> Ms. Henderson: Did you discuss, approve, or authorize any statement made by Unite the People regarding your deposition today?

4

> Mr. Peterson: I would like the definitions of "discuss, approve" and whatever you said. Can you give me those, please?
>
> Ms. Henderson: Okay. So my – you don't understand the word "discuss?"
>
> Mr. Peterson: No. But I would like the definitions. I want your definition because you are asking me the questions. So I would like your definitions, Ms. Henderson. Thank you.
>
> Ms. Henderson: Okay. So did you speak with or talk to anyone at Unite the People about your deposition?
>
> Mr. Peterson: No, I'm asking you for the definition of "discuss." Can you give me that, please, from Webster?
>
> Depo Tr. 20:18-21:9.
>
> . . .
>
> Ms. Henderson: Mr. Peterson, did you talk to anyone at Unite The People about a statement regarding your deposition.
>
> Mr. Peterson: You still have not given me the definitions of the words that you first asked. And I am asking for those so I can give you a clear and understandable answer.
>
> Depo. Tr. 22:9-15.

2. **Mr. Peterson Harassed Ms. Pete's Counsel Regarding Her Appearance.**

Mr. Peterson targeted Ms. Pete's counsel with petty, misogynistic jabs about her hair color and appearance—an act of pure harassment intended to belittle rather than respond to the questions:

> Ms. Henderson: Did you review any documents to prepare for your deposition today?
>
> **Mr. Peterson: Did you review the documents on the color of the dye you were going to use for your hair?**
>
> Depo. Tr. 46:22-25 (emphasis added).
>
> . . .

Ms. Henderson: Let me ask my question, for [the Court Reporter's] sake, before you answer. Did you review any documents for your deposition today?

**Mr. Peterson: But you didn't answer my question and I feel like it's starting to be – like it's one sided. Like, you are not allowing me to – to understand what I need to understand so I can understand.**

Ms. Henderson: So Mr. Peterson –

**Mr. Peterson: Because your hair is distracting me. There's a reason for what I am asking. Your hair is distracting me.**

Ms. Henderson: Okay. I'm going to go off the record and stop this deposition at this point. Let's take a 5-minute break - a 10-minute break.

**Mr. Peterson: Enjoy yourself.**

The Videographer: It's 10:56 AM Pacific time and we are off the record.

(recess taken)

The Videographer: We are now on the record. The time is 11:01 AM -

**Mr. Peterson: I just want to say – I just want to say on record that Ms. Henderson's hair is distracting me.**

Depo Tr. 47:12-48:11 (emphasis added).

. . .

Ms. Henderson: Okay. So I'm going to put on the record that at this point, I am suspending the deposition because the witness is clearly evading my questions and is nonresponsive, and we will be moving to compel this deposition with the court. So, Mr. Peterson, this is not over, and we will see you another day, which I'm sure – I know you said that you have all the time in the world. So we will see you again for Volume II of this deposition. Thank you.

**Mr. Peterson: Change your hair next time.**

The Videographer: If we are going to suspend here, I just need to get transcript and video orders –

**Mr. Peterson: Just comb it at least. Will you comb it at least?**

The Court Reporter: We'll just do it after.

**Mr. Peterson: Thank you so much. Just comb it. That's all I ask.**

The Videographer: And, Ms. Henderson, would you like it synched as well?

Ms. Henderson: Yes.

**Mr. Peterson: A comb. A comb. Honeycomb.**

The Videographer: And Mr. – Mr. Hayden, copy for you?

Mr. Hayden: No, thanks.

**Mr. Peterson: A comb. A comb.**

The Videographer: Mr. Pancier?

Mr. Pancier: Negative.

**Mr. Peterson: A brush. Barbie Brush.**

The Videographer: If there's nothing else, I can go ahead and read us off here.

Ms. Henderson: Thank you.

**Mr. Peterson: A comb.**

The Videographer: Volume I of the deposition of Daystar Peterson in the matter of Megan Pete versus Milagro –

**Mr. Peterson: Bring a comb.**

The Videographer: -- Cooper. Now off the record. The time is 11:06 AM Pacific Time.
  (Multiple Simultaneous Speakers.)

**Mr. Peterson: Bring a comb.**

Ms. Henderson: Thank you.

**Mr. Peterson: Bring a comb.**

Depo. Tr. 52:11-54:10 (emphasis added).

3. *Mr. Peterson Interrupted the Deposition to Discuss His Answers With His Counsel And Objected Despite His Counsel Instructing Him To Answer.*

Mr. Peterson repeatedly stalled the deposition by turning his responses into back-and-forth exchanges with his counsel, posing questions of his own, objecting himself, and using these tactics to avoid having to answer the questions:

> Mr. Hayden: Well, right now you are a witness being questioned, and it's my job to object if there's anything that is going to incriminate you and that's what I'm going to do. So [Ms. Henderson's] entitled to ask whatever –
>
> **Mr. Peterson:** I understand that. I understand that, Michael Hayden. **I guess my question is – is, like, does that prohibit me from being able to ask a question?**
>
> Mr. Hayden: We can take breaks, and you ask questions administratively, but in the – in the line of questioning, we have to let her – we have to let opposing counsel -
>
> **Mr. Peterson:** Oh, given that we let her ask all the questions she wants to ask, **she can ask questions until her face turns blue. I'm just asking, am I allowed to ask her questions?**
>
> **Mr. Hayden: You can't ask her questions –**
>
> **Mr. Peterson: Does anything that she is saying prohibit me from asking a question?**
>
> **Mr. Hayden: You can't – you can't respond to a question with a question.** I can object and I can instruct you not to answer; but anything she asks, even if I object to it and don't instruct you not to answer, you have to answer. But later –
>
> Mr. Peterson: I understand.
>
> Depo. Tr. 13:13-14:13 (emphasis added).

. . .

> Ms. Henderson: Okay. Megan Pete. Do you understand her to also be known as "Megan Thee Stallion?"
>
> **Mr. Peterson: Hey, Michael Hayden, if it's possible, could you Google how many Megan Petes there are in the world?**
>
> Mr. Hayden: Well, no. She's just asking for a nexus between the Megan Pete in this case – the Plaintiff in this case, in this specific case, and going by the professional

8

moniker of "Megan Thee Stallion." **It's not a trick or anything. Believe me.** She's just trying to –

**Mr. Peterson: I didn't think it was. I just was asking her to clarify her –**

**Mr. Hayden: I'm just trying to speed – speed things up a little bit.** I mean, we can, you know, give them -

**Mr. Peterson: No. We have all day. I have 10 years in here.** I got –

Mr. Hayden: I got you. I'm on your side. I got you.

**Mr. Peterson: We got all day.**

Depo. Tr. 19:1-21 (emphasis added).

. . .

Ms. Henderson: Did you testify at your criminal trial in December 2022? That's a yes or no.

Mr. Peterson: Objection.

Ms. Henderson: Okay. I don't see –

Mr. Peterson: Don't ask me anything about – don't ask me any anything about any criminal proceedings that have to do with my case on a criminal level. How about that?

Ms. Henderson: I am simply asking, did you testify –

Mr. Peterson: Objection. Objection.

Ms. Henderson: Okay. Just, again, for the record, you are not answering my questions.

Mr. Peterson: Objection.

Ms. Henderson: Okay. Let me finish my – my question so I can have a clear record so –

Mr. Peterson: I object.

Ms. Henderson: -- we can then bring it to the court to decide.

Mr. Peterson: I object. I object.

9

> Ms. Henderson: Did you – did you testify at your criminal trial in December of –
>
> Mr. Peterson: I object.
>
> The Court Reporter: Okay. I can't – I can't get this when he keeps saying "I object" in between. Like, there's no way I can possibly get this.
>
> Mr. Peterson: She keeps asking stupid questions, [Court Reporter]. I am – I am trying to help her.
>
> Mr. Hayden: Mr. Peterson, I will object for you, but we have got to wait until she is done with the question, and then I can object like I did the first time. She's just rereading the same question.
>
> Mr. Peterson: She should have waited to wait for that hair dye. It is the wrong blonde. But anyways, go ahead.
>
> Depo. Tr. 37:5-38:13.

4. *Mr. Peterson Pretended As If The Technology Was Not Working.*

Mr. Peterson feigned technical difficulties—claiming he could not see or hear—despite confirmation from prison staff that the equipment was functioning properly and that he was, in fact, fully able to participate:

> Ms. Henderson: And now, I would like to move on by marking as next in order, which I believe, [Court Reporter], is Exhibit 39. I'm going to ask the tech to pull up Tab 2.
>
> (Exhibit 39 was marked for identification).
>
> Ms. Henderson: And I'd like you to scroll down to the next page. Okay. And if – for purposes of everyone, if you could zoom in. Okay. Mr. Peterson, do you see that this is a statement titled "Unite The People Inc. CEO Ceasar McDowell Sets the Record Straight on Deposition In Re Tory Lanez"? Do you see that?
>
> Mr. Peterson: I'm sorry. The – the way that this screen is, like it's just so small. I can't see anything.
>
> Ms. Henderson: Mr. Ginn, if you could zoom in.
>
> Mr. Peterson: I know you think that's solving the problem, but I swear on my side it's not. Can you just read me whatever document that you are talking about, please.

Ms. Henderson: Okay. I will read you the document, but if you'd like to take a break so that you can change the settings of your zoom –

Mr. Peterson: I can't change the settings. I'm in prison and this is their equipment. I'm not going to get a write-up for touching their equipment. I am not allowed to.

Ms. Henderson: I understand. My question is: Do you see any document in front of the screen, or do you see no document?

Mr. Peterson: I see a bunch of words, but I cannot make out what they are because they're too small, and I guess it's just the way this screen is set up; so I'm asking you if you can just read whatever it is that you are talking about.

Ms. Henderson: Okay. So this is a statement titled "Unite the People Inc. C.E.O. Cesar McDowell sets the record straight on deposition in re Tory Lanez." And this statement reads, in part, "Tory Lanez is not a party to the Megan Thee Stallion's lawsuit against UTP client Milagro Cooper and therefore UTP is not obligated to produce Tory Lanez for a deposition, nor did UTP agree or disagree to a deposition of Mr. Lanez or any other potential witness." Are - showing you the statement, are you aware that UTP released that statement?

Mr. Peterson: You are not showing me anything because I can't see what you are talking about. However, I mean, you are saying – you are "Am I aware?" Again, I'm not aware of anything, and I can't see what you are talking about.

Ms. Henderson: Okay. If you can't see what I'm talking about, then why don't we take a break, go off the record, and we will contact the prison to change the settings so you can see these exhibits.

Mr. Peterson: Okay.

The Videographer: We're now off the record. The time is 10:26 AM Pacific Time. (Recess taken)

The Videographer: We are now on the record. Time is 10:32 AM Pacific time.

Ms. Henderson: Okay. So over the break, we had Counselor Hernandez, who works at the prison, come in and check the settings on the computer, and we pulled up the same document, Exhibit 39, and asked if he could read it. He confirmed it was legible and that he could see the document, and he read the first lines of the document. So I'm going to pull up Exhibit 39 back on the screen, and if you could zoom in on the second page, Mr. Ginn.

Ms. Henderson: Mr. Peterson, the very last paragraph of this statement says, "Lastly, if you know Tory Lanez how I do, good luck trying to get him to, quote,

11

> 'testify' to anything. It's just not what he does … and he definitely did not, quote, 'agree' to testify now.
>
> Mr. Peterson: I don't know that that says that. Still you pulled up the same thing, at the same size, and I still can't read it. You asked somebody else for their opinion on whether they can read it. That person has glasses on their face, and that person is standing right next to the screen. You asked them not only to read something here. You asked him to read the most boldest part of this and not anything else. So again, you lose. I'm sorry.
>
> Depo. Tr. 24:8-27:23.
>
> …..
>
> Ms. Henderson: Mr. Peterson, did you testify at your criminal trial in December 2022? Okay. Can you hear my question, Mr. Peterson? So he is not responding to the question, for the record. He did confirm earlier he could hear me, and now he is not responding. So, Mr. Peterson, I will ask once more for the record, did you testify at your criminal trial?
>
> Mr. Peterson: Hey, guys, the audio keeps clipping in and out, so sometimes I can't hear what she's saying. It just clipped out. I didn't hear anything she said in the last, like, five seconds.
>
> Ms. Henderson: Okay. Let's go off the record and get Mr. Hernandez back in.
>
> Depo. Tr. 39:12-40:1.

5. ***The Meet and Confer Process.***

In meeting and conferring with opposing counsel regarding the relief sought, Mr. Pancier said:

> We have no control over [Mr. Peterson] or his conduct and frankly his conduct wasted our time as well. Thus, I do not know why you need to meet and confer with us as this is between you guys and Mr. Peterson. We have not been retained to represent him *in this matter* and thus you guys are free to seek court intervention against him. ***Any action you wish to take against him individually, we will not oppose****.*

Ex. A (emphasis added).

## **ARGUMENT**

Courts have long recognized that "pretrial depositions are an important part of the discovery process." *Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 315 (N.D. Fla. 2021). Because depositions typically occur extra-judicially, the participants in a deposition are "entrusted with the responsibility of conducting depositions efficiently, orderly, and courteously." *Id.* "For the process to succeed, it is essential that the parties, attorneys, and witnesses participating in depositions conduct themselves with civility and decency." *Id.* When a deponent misbehaves in a deposition, the Court has inherent authority to impose sanctions to serve as both a specific and general deterrent of the conduct described above. *See id.*; *see also Young v. U.S. ex. rel. Vuitton et Fils S.A.*, 481 U.S. 787, 785 (1987) ("That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law." (quoting *Michaelson v. United States ex rel. Chicago, St. P., M. & O.R. Co.*, 266 U.S. 42, 45 (1924)).

This Court granted Ms. Pete leave to depose Mr. Peterson's during his incarceration. *See* ECF No. 42. In so ordering, the Court expected Mr. Peterson—who appeared with counsel—to participate in a manner that was efficient, orderly, and respectful. *Mitnor Corp.*, 339 F.R.D. at 315. Instead, Mr. Peterson disregarded the Court's Order, treating the proceeding with contempt and squandering the time and resources of the parties, their counsel, and the California Prison System staff, who had to make arrangements for his deposition. This warrants a finding of contempt, or at least sanctions. *Taylor v. Taylor*, 133 Fed. Appx. 707, 708 (11th Cir. 2005) (per curiam) (affirming an award of sanctions over a party who objected to and during his deposition after a federal magistrate judge authorized the deposition).

The Court has the inherent authority to hold Mr. Peterson responsible for his disobedience of its Order. "Embedded in the Anglo-American law is the inherent power of the judiciary to

coerce obedience to its orders by summarily holding a recalcitrant person … in civil contempt, . . . ." *S.E.C. v. Yun*, 208 F. Supp. 2d 1279, 1288 (M.D. Fla. 2002).  "Without the power to punish non-compliance with its orders, this Court's authority to issue judgments would be nothing more than 'a mere mockery'" *Id*. (quoting *U.S. v. United Mine Workers*, 330 U.S. 258, 290 n. 56 (1947)). This includes holding non-parties in contempt for failure to comply with third-party discovery obligations. *See Shulton v. Optel Corp.*, 126 F.R.D. 80, 80 (S.D. Fla. 1989) (holding third-party subpoena recipient in contempt for failing to appear at deposition despite being properly served with subpoena).

The transcript of Mr. Peterson's suspended deposition provides clear and convincing evidence that he violated the Order permitting his deposition. *See S.E.C. v. Solow*, 682 F. Supp. 2d 1312, 1325 (S.D. Fla. 2010).  Mr. Peterson made a mockery of the proceedings.  Only conduct that evinces substantial compliance in good faith may excuse a finding of civil contempt.  *Id*.  Here, there is no doubt that Mr. Peterson failed to comply with this Court's order and his actions do not evince a good faith intent to comply.  Instead, they establish the opposite—that Mr. Peterson intended to, and actually did, disobey this Court's Order permitting his deposition.

Remarkably, even before the deposition took place, Mr. Peterson's counsel's firm publicly broadcast his intent to defy this Court's Order.  In a statement issued on behalf of Mr. Peterson, the firm effectively previewed that he had no intention of complying with the Court's authorization of his deposition—signaling not just individual contempt, but a coordinated effort to undermine the judicial process.  Mr. Peterson followed through by harassing Ms. Pete's counsel, delaying the

deposition by feigning ignorance of common words, making gratuitous sexual comments about "porno[s];" and pretending as if the technology being used was not working.

Nothing short of a contempt finding and meaningful sanctions will deter Mr. Peterson from continuing to abuse the process. His own team declared, "Good luck trying to get [Mr. Peterson] to 'testify' to anything." At his deposition, he followed through on that defiance.

## CONCLUSION

WHEREFORE Ms. Pete respectfully requests, and opposing counsel does not oppose, that the Court issue an Order to Show Cause Why Mr. Peterson Should Not be Held in Contempt. In the alternative, the Court should enter a finding of sanctions against Mr. Peterson requiring his payment of counsel's time in taking Volume I of his deposition; appoint a special master to oversee a Volume II of Mr. Peterson's deposition at Mr. Peterson's expense; and authorize as much additional time as necessary to take an effective deposition of Mr. Peterson.

## RULE 7.1(A)(2) CERTIFICATE

Undersigned counsel certifies that he engaged in a good faith effort to resolve the issues addressed in this Motion by contacting both Ms. Cooper's counsel and counsel for Mr. Peterson who represented him at the subject deposition by emailing Mr. Pancier and Mr. Hayden to meet and confer regarding remedying the contemptuous behavior. Mr. Pancier responded on behalf of himself and Mr. Hayden stating that they would not oppose "any action" Ms. Pete's counsel wished to take against Mr. Peterson.

Dated: April 16, 2025

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
/s/ Daniel L. Humphrey
Olga Vieira (Fla. Bar No. 29783)
Daniel L. Humphrey (Fla. Bar No. 1024695)
olgavieira@quinnemanuel.com
danielhumphrey@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
2601 S. Bayshore Drive, Suite 1500
Miami, FL 33133
(305) 402-4880

Robert Schwartz (pro hac vice)
Mari F. Henderson (pro hac vice)
Marie Hayrapetian (pro hac vice)
Julian T. Schoen (pro hac vice)
robertschwartz@quinnemanuel.com
marihenderson@quinnemanuel.com
mariehayrapetian@quinnemanuel.com
julianschoen@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Attorneys for Plaintiff Megan Pete*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive Notice of Electronic Filing.

Mr. Daystar Peterson will be served via Officer Nicholas Hernandez of the California Correctional Institution, consistent with the prior subpoena service for this deposition, as well as through his counsel, Mr. Hayden.

By: */s/ Daniel L. Humphrey*
Daniel L. Humphrey
Fla. Bar No. 1024695