# EXHIBIT C

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | FOR THE SOUTHERN DISTRICT OF FLORIDA |
| 3 | |
| 4 | _____ |
| 5 | Case No. 1:24-cv-2422 |
| | 8-CMA |
| 6 | Megan Pete, |
| 7 | Plaintiff,     VOLUME I |
| 8 | v. |
| 9 | |
| 10 | Milagro Elizabeth Cooper, |
| 11 | Defendant. |
| 12 | _____ |
| 13 | |
| 14 | VIDEOTAPED DEPOSITION OF |
| 15 | DAYSTAR PETERSON |
| 16 | LOS ANGELES, CALIFORNIA |
| 17 | WEDNESDAY, APRIL 9, 2025 |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |

```
 1              The deposition of DAYSTAR PETERSON was taken

 2    on behalf of the Plaintiff via videoconference in

 3    Tehachapi, California, commencing at 10:06 AM on

 4    Wednesday, April 9th, 2025, before Ronny Zavosky,

 5    CSR No. 12359.

 6

 7                    A P P E A R A N C E S

 8

 9    FOR THE PLAINTIFF:

10

11    QUINN EMANUEL URQUHART & SULLIVAN, LLP

12             BY:  MARI F. HENDERSON, ESQ.

13                  JULIAN T. SCHOEN, ESQ.

14             865 South Figueroa Street, 10th Floor

15             Los Angeles, California  90017

16             (213) 443-3000

17             marihenderson@quinnemanuel.com

18             julianschoen@quinnemanuel.com

19             (Appearing via videoconference)

20

21

22

23

24

25
```

```
 1    A P P E A R A N C E S (Continued):

 2

 3    QUINN EMANUEL URQUHART & SULLIVAN, LLP

 4              BY:  BOMIE LEE, ESQ.

 5              865 South Figueroa Street, 10th Floor

 6              Los Angeles, California  90017

 7              (213) 443-2377

 8              bomielee@quinnemanuel.com

 9              (Appearing via teleconference)

10

11    FOR THE DEFENDANTS:

12

13    UNITE THE PEOPLE, INC. - For DEFENDANT MILAGRO ELIZABETH

14    COOPER -

15              BY:  MICHAEL HAYDEN , ESQ.

16              555 East Ocean Boulevard, Suite 205

17              Long Beach, California  90802

18              (323) 770-6681

19              michael@unitethepeople.org

20              (Appearing via videoconference)

21

22

23

24

25
```

```
 1    A P P E A R A N C E S (Continued):

 2

 3    PANCIER LAW - For DEFENDANT MILAGRO ELIZABETH COOPER -

 4              BY:  MICHAEL PANCIER, ESQ.

 5              9000 Sheridan Street, Suite 93.

 6              Pembroke Pines, Florida  33024

 7              (954) 862-2217

 8              mpancier@pancierlaw.com

 9              (Appearing via videoconference)

10

11

12    ALSO PRESENT:

13

14    GABBY TREVINO, QUINN EMANUEL URQUHART & SULLIVAN, LLP

15    AIDAN GINN, VIDEOGRAPHER

16

17

18

19

20

21

22

23

24

25
```

DAYSTAR PETERSON                                    JOB NO. 1481293
APRIL 09, 2025

```
 1                       I N D E X

 2
     WITNESS: DAYSTAR PETERSON
 3

 4   EXAMINATION                              PAGE

 5   BY MS. HENDERSON                            7

 6

 7                   E X H I B I T S

 8   EXHIBIT NUMBER     DESCRIPTION           PAGE

 9   EXHIBIT 39   - PAGE VAULT DOCUMENT         24

10

11

12          INSTRUCTED NOT TO ANSWER

13                 PAGE LINE

14                   36 6

15                   36 21

16                   38 19

17

18

19          INFORMATION REQUESTED

20                 PAGE LINE

21                  (None)

22

23

24

25
```

|  |  |  |
|---|---|---|
|  | 1 | WEDNESDAY, APRIL 9th, 2025; TEHACHAPI, CALIFORNIA |
|  | 2 | 10:06 AM |
|  | 3 | - - - |
| 10:06:36 | 4 | THE VIDEOGRAPHER:  Good morning.  We are on |
| 10:06:37 | 5 | the record at 10:06 AM Pacific time on |
| 10:06:42 | 6 | April 9th, 2025, to begin the deposition of |
| 10:06:46 | 7 | Daystar Peterson in the matter of Megan Pete versus |
| 10:06:51 | 8 | Milagro Elizabeth Cooper. |
| 10:06:53 | 9 | The venue for this case is the United States |
| 10:06:55 | 10 | District Court, Southern District of Florida.  The case |
| 10:06:59 | 11 | number is 1:24-cv-24228-CMA. |
| 10:07:11 | 12 | This deposition is taking place via Zoom video |
| 10:07:14 | 13 | conference.  The legal videographer is Aidan Ginn here |
| 10:07:18 | 14 | on behalf of Steno, and the court reporter is |
| 10:07:21 | 15 | Ronny Zavosky, License Number 12359, also here on behalf |
| 10:07:26 | 16 | of Steno. |
| 10:07:27 | 17 | Would counsel please identify yourselves and |
| 10:07:29 | 18 | state whom you represent. |
| 10:07:32 | 19 | MS. HENDERSON:  Mari Henderson on behalf of |
| 10:07:34 | 20 | plaintiff, Megan Pete, and joining me in the room is my |
| 10:07:38 | 21 | colleague Julian Schoen. |
| 10:07:43 | 22 | MR. PANCIER:  Michael Pancier for the |
| 10:07:45 | 23 | defendant. |
| 10:07:46 | 24 | MR. HAYDEN:  Michael Hayden, counsel for |
| 10:07:48 | 25 | defendant and appellant counsel for witness, |

| | | |
|---|---|---|
| 10:07:50 | 1 | Daystar Peterson. |
| 10:07:54 | 2 | THE VIDEOGRAPHER:  Thank you, counsel. |
| 10:07:55 | 3 | Would the reporter please swear in the |
| 10:07:56 | 4 | witness. |
| 10:07:56 | 5 | THE COURT REPORTER:  Hello.  My name is Ronny |
| 10:07:56 | 6 | Zavosky.  I am a certified shorthand reporter licensed |
| 10:07:56 | 7 | in the state of California.  My license number is 12359. |
| 10:07:56 | 8 | I will now swear in the witness. |
| 10:07:57 | 9 | - - - |
| 10:07:57 | 10 | DAYSTAR PETERSON, |
| 10:07:57 | 11 | having first declared under penalty of perjury to tell |
| 10:07:57 | 12 | the truth, was examined and testified as follows: |
| 10:08:22 | 13 | THE WITNESS:  Yes, ma'am. |
| 10:08:22 | 14 | - - - |
| 10:08:22 | 15 | EXAMINATION |
| 10:08:23 | 16 | BY MS. HENDERSON: |
| 10:08:23 | 17 | Q    All right.  Good morning, Mr. Peterson. |
| 10:08:27 | 18 | A    Good morning. |
| 10:08:29 | 19 | Q    As I stated already, my name is |
| 10:08:31 | 20 | Mari Henderson.  I'm an attorney who represents |
| 10:08:33 | 21 | Ms. Megan Pete in this action. |
| 10:08:36 | 22 | Could I please get you to state your full name |
| 10:08:38 | 23 | for the record. |
| 10:08:40 | 24 | A    Daystar Peterson. |
| 10:08:41 | 25 | Q    And do you also go by the name of Tory Lanez |

| | | |
|---|---|---|
| 10:08:45 | 1 | professionally? |
| 10:08:46 | 2 | A    Yes. |
| 10:08:48 | 3 | Q    Now, where are you doing this deposition |
| 10:08:50 | 4 | today? |
| 10:08:52 | 5 | A    In prison, Tehachapi CCI. |
| 10:08:55 | 6 | Q    Okay.  And before we got on the record, we |
| 10:08:57 | 7 | discussed that there's a background behind you, but |
| 10:09:00 | 8 | obviously that's a virtual background and that is not |
| 10:09:03 | 9 | actually the room within which you are taking this |
| 10:09:05 | 10 | deposition; is that right? |
| 10:09:06 | 11 | A    Well, I am taking this deposition in this |
| 10:09:08 | 12 | room.  The background doesn't change the room. |
| 10:09:11 | 13 | Q    Correct.  But the -- you would agree that |
| 10:09:13 | 14 | that's a virtual background behind you? |
| 10:09:16 | 15 | A    I guess I could agree to that.  I don't know |
| 10:09:18 | 16 | what it is.  It was placed here before I got here. |
| 10:09:20 | 17 | Q    Okay.  And how long have you been in Tehachapi |
| 10:09:26 | 18 | prison for? |
| 10:09:27 | 19 | A    I would believe about a year and some change. |
| 10:09:30 | 20 | Maybe a year and six months.  Something like that. |
| 10:09:33 | 21 | Q    Okay.  So before we get started with some |
| 10:09:35 | 22 | questions, I'm going to take you through some |
| 10:09:37 | 23 | admonitions. |
| 10:09:38 | 24 |     Do you understand that you are giving |
| 10:09:39 | 25 | testimony today under oath, under penalty of perjury? |

```
10:09:42   1        A    I do.
10:09:44   2        Q    Do you understand that you are under the same
10:09:46   3   oath today as if you were testifying in court?
10:09:49   4        A    I understand.
10:09:51   5        Q    I will be asking you questions, and sometimes
10:09:55   6   your counsel, who is Mr. Hayden, might object; but
10:09:59   7   unless your counsel advises you not to answer, you still
10:10:02   8   need to answer my questions.
10:10:03   9             Do you understand that?
10:10:06  10        A    No, I don't understand that.
10:10:07  11        Q    Okay.  So you have counsel with you here today
10:10:11  12   for this deposition; is that correct?
10:10:13  13        A    I believe so.
10:10:14  14        Q    Okay.  And who is your counsel for this
10:10:16  15   deposition today?
10:10:17  16        A    Out of all the four faces I'm looking at, I
10:10:21  17   would imagine it's Michael Hayden.
10:10:23  18        Q    Okay.  And if Mr. Hayden instructs you not
10:10:26  19   to answer a question, then you will not --
10:10:31  20        A    I will not be answering.
10:10:31  21        Q    -- then you will not be answering.  However,
10:10:33  22   there are other objections that he or other counsel may
10:10:36  23   make, and unless you are specifically advised not to
10:10:39  24   answer a question, you understand that you need to
10:10:41  25   answer my question.
```

| | | |
|---|---|---|
| 10:10:42 | 1 | Do you understand that? |
| 10:10:44 | 2 | A    No.  I don't understand. |
| 10:10:46 | 3 | Why you are saying that. |
| 10:10:49 | 4 | MR. HAYDEN:  If I -- if I could help.  She is |
| 10:10:51 | 5 | just making a record.  This is strictly for the record, |
| 10:10:53 | 6 | Mr. Peterson.  I will be objecting and instructing you |
| 10:10:56 | 7 | not to answer about anything Fifth Amendment or |
| 10:11:00 | 8 | privileged, if that makes sense. |
| 10:11:03 | 9 | THE WITNESS:  Absolutely. |
| 10:11:04 | 10 | BY MS. HENDERSON: |
| 10:11:05 | 11 | Q    However, there are other objections he may |
| 10:11:06 | 12 | make like speculation, or assumes facts not in evidence, |
| 10:11:12 | 13 | just as examples.  And if he makes that objection, you |
| 10:11:14 | 14 | still need to answer my question. |
| 10:11:16 | 15 | Do you understand? |
| 10:11:17 | 16 | A    I don't see why I would answer any question |
| 10:11:19 | 17 | after my lawyer objected to it.  I don't understand |
| 10:11:21 | 18 | that. |
| 10:11:23 | 19 | MR. HAYDEN:  Well, no, Mr. Peterson.  If |
| 10:11:25 | 20 | it's Fifth Amendment privilege, then I will instruct you |
| 10:11:28 | 21 | not to answer because that could self-incriminate you, |
| 10:11:30 | 22 | but if it's a general question like "Is the sky blue," |
| 10:11:33 | 23 | you can answer that.  Even if I object to it, you would |
| 10:11:36 | 24 | answer to it. |
| 10:11:37 | 25 | Does that make sense?  Nothing to incriminate |

| 10:11:39 | 1 | you. |
| 10:11:40 | 2 | THE WITNESS:  I understand what you are |
| 10:11:41 | 3 | saying.  I just don't understand why I would have to |
| 10:11:44 | 4 | answer to something you objected to.  Am I -- |
| 10:11:50 | 5 | MR. HAYDEN:  I got you.  I got you.  An |
| 10:11:51 | 6 | objection is stated just for the record.  That's -- |
| 10:11:55 | 7 | that's your counsel or opposing counsel putting their |
| 10:11:58 | 8 | two cents into why it should be objected for the record. |
| 10:12:01 | 9 | But it's -- |
| 10:12:03 | 10 | THE WITNESS:  I can -- I can just tell Mari is |
| 10:12:04 | 11 | going to hate me this whole interview.  I can just see |
| 10:12:08 | 12 | her face, like, oh, this guy is just going to be |
| 10:12:10 | 13 | difficult. |
| 10:12:10 | 14 | MR. HAYDEN:  You are good.  You are good. |
| 10:12:11 | 15 | We'll -- we'll get it done. |
| 10:12:13 | 16 | THE WITNESS:  Come on.  Let's go.  Let's go, |
| 10:12:15 | 17 | guys. |
| 10:12:15 | 18 | BY MS. HENDERSON: |
| 10:12:15 | 19 | Q    Okay.  So moving on from the questions piece |
| 10:12:20 | 20 | of it, we do have a court reporter taking all of this |
| 10:12:24 | 21 | down, and so the result of that will be a written |
| 10:12:27 | 22 | transcript of the deposition.  Because of that, it's |
| 10:12:28 | 23 | important that you give audible, verbal answers to my |
| 10:12:32 | 24 | questions to keep things -- |
| 10:12:35 | 25 | A    Can I ask you a question, Ms. Mari Henderson? |

| | | |
|---|---|---|
| 10:12:38 | 1 | Your name is -- Henderson is the last name? |
| 10:12:40 | 2 | Q    Yes. |
| 10:12:40 | 3 | A    Is it okay if I call you "Ms. Henderson"? |
| 10:12:44 | 4 | Q    Yes. |
| 10:12:45 | 5 | A    All right.  Ms. Henderson, are you planning on |
| 10:12:48 | 6 | publicizing any of this?  I just would like for you to |
| 10:12:51 | 7 | say on record. |
| 10:12:52 | 8 | Q    Okay.  So, first, I'm going to set some ground |
| 10:12:55 | 9 | rules before I answer your question so you understand |
| 10:12:56 | 10 | how this works.  One, I was in the middle of telling you |
| 10:12:58 | 11 | that a court reporter is taking all of this down and |
| 10:13:01 | 12 | there will be a written record.  So because of that, |
| 10:13:03 | 13 | first, you need to give verbal -- |
| 10:13:05 | 14 | A    I -- |
| 10:13:05 | 15 | Q    -- audible answers, such as "yes" or "no" |
| 10:13:07 | 16 | rather than nodding your head; and, second, and most |
| 10:13:09 | 17 | importantly as exhibited now, you cannot interrupt my |
| 10:13:12 | 18 | questions so that the reporter can get a clear record. |
| 10:13:15 | 19 | So I would ask for you to wait for me to |
| 10:13:17 | 20 | finish my question before you answer, and I will do the |
| 10:13:20 | 21 | same and give you the same courtesy.  Also, as your |
| 10:13:23 | 22 | attorney will advise you, I am the one asking questions |
| 10:13:26 | 23 | today.  However, I will provide you with the admonition |
| 10:13:29 | 24 | that this deposition is subject to a protective order -- |
| 10:13:33 | 25 | A    One more thing:  Do I have my First Amendment |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:13:35 | 1 | right -- freedom of speech? |
| 10:13:38 | 2 |        MR. HAYDEN:  You have -- you have your |
| 10:13:38 | 3 | First Amendment right, freedom of speech, but you |
| 10:13:40 | 4 | also -- |
| 10:13:41 | 5 |        THE WITNESS:  Then why am I not allowed to ask |
| 10:13:43 | 6 | her a question? |
| 10:13:44 | 7 |        MR. HAYDEN:  Well - well, this is just |
| 10:13:44 | 8 | proceedings.  She's just explaining the rules of how a |
| 10:13:47 | 9 | deposition operates. |
| 10:13:48 | 10 |        THE WITNESS:  She's explaining them as if I'm |
| 10:13:49 | 11 | not allowed to ask a question or say anything.  I just |
| 10:13:51 | 12 | would like to know. |
| 10:13:53 | 13 |        MR. HAYDEN:  Well, right now you are a witness |
| 10:13:55 | 14 | being questioned, and it's my job to object if there's |
| 10:13:57 | 15 | anything that is going to incriminate you and that's |
| 10:13:59 | 16 | what I'm going to do.  So she's entitled to ask |
| 10:14:01 | 17 | whatever -- |
| 10:14:02 | 18 |        THE WITNESS:  I understand that.  I understand |
| 10:14:04 | 19 | that, Michael Hayden. |
| 10:14:05 | 20 |        I guess what my question is -- is, like, does |
| 10:14:07 | 21 | that prohibit me from being able to ask a question? |
| 10:14:09 | 22 |        MR. HAYDEN:  We can take breaks, and you can |
| 10:14:10 | 23 | ask questions administratively, but in the -- in the |
| 10:14:13 | 24 | line of questioning, we have to let her -- we have to |
| 10:14:17 | 25 | let opposing counsel -- |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

```
10:14:18   1              THE WITNESS:  Oh, given that we let her ask
10:14:20   2   all the questions she wants to ask, she can ask
10:14:21   3   questions until her face turns blue.  I'm just asking,
10:14:22   4   am I allowed to ask her a question?
10:14:27   5              MR. HAYDEN:  You can't ask her questions --
10:14:28   6              THE WITNESS:  Does anything that she is saying
10:14:31   7   prohibit me from asking a question?
10:14:33   8              MR. HAYDEN:  You can't -- you can't respond to
10:14:34   9   a question with a question.  I can object and I can
10:14:37  10   instruct you not to answer; but anything she asks, even
10:14:40  11   if I object to it and don't instruct you not to answer,
10:14:42  12   you have to answer.  But later --
10:14:44  13              THE WITNESS:  I understand.
10:14:45  14              MR. HAYDEN:  Yeah.  It's just a procedure.
10:14:47  15              THE WITNESS:  Understandable.
10:14:47  16         So in a time like this, when I'm asking her a
10:14:49  17   simple question about whether or not this is going to be
10:14:53  18   publicized or not, it's not coming from me responding to
10:14:56  19   a question she asked me.  I'm asking her a simple
10:14:58  20   question:  Am I prohibited from asking her a simple
10:15:01  21   question?  Not answering back to her question, but am I
10:15:04  22   prohibited from asking Ms. Henderson a question?
10:15:07  23              MR. HAYDEN:  I'll let her answer -- I'll let
10:15:08  24   her answer that right now.  She can answer it.
10:15:09  25   BY MS. HENDERSON:
```

| | | |
|---|---|---|
| 10:15:10 | 1 | Q    So I am providing you admonitions and ground |
| 10:15:12 | 2 | rules as to how this deposition is working, and before |
| 10:15:15 | 3 | you cut me off, I was in the middle of answering the |
| 10:15:18 | 4 | question that you did ask. |
| 10:15:18 | 5 | If you want to proceed with this deposition by |
| 10:15:20 | 6 | asking me questions rather than answers, the record will |
| 10:15:22 | 7 | reflect that; but as a courtesy to the court reporter, I |
| 10:15:25 | 8 | ask that you not interrupt and wait for us to finish our |
| 10:15:28 | 9 | question and/or, in this instance, my answer before you |
| 10:15:31 | 10 | answer. |
| 10:15:31 | 11 | And so, as you were asking, there is a |
| 10:15:34 | 12 | protective order in this case.  As your counsel either |
| 10:15:37 | 13 | has or will explain to you, that designates this |
| 10:15:42 | 14 | deposition as highly confidential for the first 30 days, |
| 10:15:44 | 15 | and then counsel can seek to de-designate the |
| 10:15:47 | 16 | deposition. |
| 10:15:49 | 17 | Any other questions you have, I direct you to |
| 10:15:51 | 18 | ask your counsel those questions. |
| 10:15:53 | 19 | Do you understand? |
| 10:15:54 | 20 | A    Well, my counsel wouldn't be the one leaking |
| 10:15:56 | 21 | the video, so I think it's better said for you.  No? |
| 10:16:00 | 22 | Q    I'm not going to respond to that with any sort |
| 10:16:02 | 23 | of -- |
| 10:16:05 | 24 | A    Any sort of -- sipping of water? |
| 10:16:07 | 25 | Q    I see what you are doing.  I see what you are |

| | | |
|---|---|---|
| 10:16:07 | 1 | doing, Mr. Peterson. |
| 10:16:10 | 2 | A    I see what you are doing too. |
| 10:16:11 | 3 | Q    I know this is fun for you. |
| 10:16:13 | 4 | MR. HAYDEN:  We know the concern.  We |
| 10:16:14 | 5 | understand the concern.  It's -- it's, you know, but |
| 10:16:16 | 6 | we -- |
| 10:16:18 | 7 | THE WITNESS:  I just want her to tell the |
| 10:16:19 | 8 | truth.  Like, that is what this deposition is for.  It's |
| 10:16:21 | 9 | for you guys to get me on video to -- you know, to do |
| 10:16:24 | 10 | what you guys have been doing for the last couple of |
| 10:16:26 | 11 | years -- to -- to -- to fake some sort of narrative. |
| 10:16:28 | 12 | But go ahead. |
| 10:16:30 | 13 | BY MS. HENDERSON: |
| 10:16:30 | 14 | Q    Okay.  If you answer a question, |
| 10:16:35 | 15 | Mr. Peterson, myself and anyone who reads the |
| 10:16:37 | 16 | deposition transcript will assume that you understood |
| 10:16:40 | 17 | the question. |
| 10:16:40 | 18 | Do you understand that? |
| 10:16:43 | 19 | A    No. |
| 10:16:45 | 20 | Q    Okay.  So if you don't understand a question, |
| 10:16:50 | 21 | will you ask for clarification? |
| 10:16:52 | 22 | A    Depending on how I feel at that moment. |
| 10:16:55 | 23 | Q    Okay.  As your counsel already told you, we |
| 10:16:57 | 24 | can take a break at any time, except we can't break |
| 10:17:00 | 25 | while a question is pending.  So you need to answer my |

10:17:03  1   question before we take a break.

10:17:05  2            Do you understand that?

10:17:06  3       A   I would like no breaks.  Kevin Gates, "I Don't

10:17:10  4   Get Tired."

10:17:10  5       Q   Well, unfortunately, for our court reporter,

10:17:12  6   who is diligently taking down the record, she will be

10:17:15  7   requesting breaks.

10:17:15  8            Do you understand that?

10:17:16  9       A   Hey, for Ronny's sake, she can get as many

10:17:19  10  breaks as she wants.  She's a very pleasant lady.

10:17:22  11      Q   Have you taken any drugs or medication that

10:17:24  12  could impair your ability to hear, understand, or answer

10:17:27  13  my questions truthfully today?

10:17:29  14      A   Absolutely not.

10:17:32  15      Q   If I refer to Ms. Pete as "Megan Thee

10:17:34  16  Stallion," do you understand that to be the same person?

10:17:38  17      A   I would like for you to refer to her as her

10:17:40  18  regular name that you are putting on the file.  I

10:17:42  19  wouldn't like you to refer to anybody as their aliases

10:17:45  20  or anything, as this is a deposition that requires that

10:17:47  21  professionality [sic].  So I would like for you to just

10:17:50  22  like say her name as it is on file.

10:17:52  23      Q   Okay.  That's not exactly my question.

10:17:53  24           My question is, if I refer to her as "Megan

10:17:56  25  Thee Stallion" --

| | | |
|---|---|---|
| 10:17:57 | 1 | A    I answered. |
| 10:17:58 | 2 | Q    -- do you understand her -- |
| 10:17:59 | 3 | A    I answered. |
| 10:17:59 | 4 | Q    -- as a person? |
| 10:18:00 | 5 | A    That's my answer, so... |
| 10:18:01 | 6 | Q    Okay.  We have a record of that. |
| 10:18:15 | 7 |           MR. HAYDEN:  Mr. Peterson, if I may, in a -- |
| 10:18:16 | 8 | in a document or a piece of evidence, it may refer to |
| 10:18:19 | 9 | her as "Megan Thee Stallion."  That's why -- that's why |
| 10:18:22 | 10 | counsel is suggesting that.  That's the only reason. |
| 10:18:24 | 11 |           THE WITNESS:  Well, I'm asking Counsel to |
| 10:18:26 | 12 | clarify and make sure that they say her regular name. |
| 10:18:29 | 13 |           MR. HAYDEN:  Noted. |
| 10:18:30 | 14 |           THE WITNESS:  Thank you. |
| 10:18:34 | 15 | BY MS. HENDERSON: |
| 10:18:34 | 16 | Q    And as Mr. Hayden explained, there may be |
| 10:18:37 | 17 | documents that refer to "Megan Thee Stallion." |
| 10:18:39 | 18 |           So my question to you, again, is do you |
| 10:18:40 | 19 | understand that Ms. Pete also goes professionally as |
| 10:18:43 | 20 | "Megan Thee Stallion"? |
| 10:18:45 | 21 | A    Are you telling me, or are you asking me? |
| 10:18:47 | 22 | Q    I'm asking you.  Do you know whether Ms. Pete |
| 10:18:49 | 23 | is also professionally known as "Megan Thee Stallion"? |
| 10:18:52 | 24 | A    There's a lot of Ms. Petes in this world. |
| 10:18:54 | 25 |           Which Ms. Pete are you talking about? |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:18:56 | 1 | Q   Okay.  Megan Pete.  Do you understand her to |
| 10:18:59 | 2 | also be known as "Megan Thee Stallion"? |
| 10:19:00 | 3 | THE WITNESS:  Hey, Michael Hayden, if it's |
| 10:19:02 | 4 | possible, could you Google how many Megan Petes there |
| 10:19:05 | 5 | are in the world? |
| 10:19:06 | 6 | MR. HAYDEN:  Well, no.  She's just asking for |
| 10:19:07 | 7 | a nexus between the Megan Pete in this case -- the |
| 10:19:11 | 8 | plaintiff in this case, in this specific case, and going |
| 10:19:14 | 9 | by the professional moniker of "Megan Thee Stallion." |
| 10:19:16 | 10 | It's not a trick or anything.  Believe me.  She's just |
| 10:19:17 | 11 | trying to -- |
| 10:19:19 | 12 | THE WITNESS:  I didn't think it was.  I was |
| 10:19:19 | 13 | just asking her to clarify her -- |
| 10:19:21 | 14 | MR. HAYDEN:  I'm just trying to speed -- speed |
| 10:19:22 | 15 | things up a little bit.  I mean, we can, you know, give |
| 10:19:24 | 16 | them -- |
| 10:19:24 | 17 | THE WITNESS:  No.  We have all day.  I have |
| 10:19:26 | 18 | 10 years in here.  I got -- |
| 10:19:28 | 19 | MR. HAYDEN:  I got you.  I'm on your side.  I |
| 10:19:30 | 20 | got you. |
| 10:19:31 | 21 | THE WITNESS:  We got all day. |
| 10:19:32 | 22 | BY MS. HENDERSON: |
| 10:19:33 | 23 | Q   Yep, we do.  We do have all seven hours on the |
| 10:19:35 | 24 | record, and if you'd like to use all of it, I am here to |
| 10:19:38 | 25 | use them. |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:19:38 | 1 | A    I would love to use them all -- use all seven. |
| 10:19:40 | 2 | Q    I am sure you do.  All right. |
| 10:19:41 | 3 | A    All seven. |
| 10:19:43 | 4 | Q    You know what?  Before I go to my questions |
| 10:19:47 | 5 | and the rest of the admonitions -- I'm done with the |
| 10:19:57 | 6 | admonitions.  But before I go to my questions, are you |
| 10:20:01 | 7 | aware that Unite The People released a statement to the |
| 10:20:04 | 8 | media regarding your deposition here today? |
| 10:20:07 | 9 | A    I'm unaware. |
| 10:20:08 | 10 | Q    You are unaware of that?  Okay. |
| 10:20:11 | 11 | Did you -- |
| 10:20:12 | 12 | A    I don't even know if that's -- I don't even |
| 10:20:14 | 13 | know if that's true. |
| 10:20:15 | 14 | Q    Okay.  Did you discuss or authorize or approve |
| 10:20:22 | 15 | any statement made by Unite The People regarding your |
| 10:20:25 | 16 | deposition today? |
| 10:20:28 | 17 | A    I'm sorry.  Reiterate that question. |
| 10:20:30 | 18 | Q    Did you discuss, approve, or authorize any |
| 10:20:34 | 19 | statement made by Unite The People regarding your |
| 10:20:37 | 20 | deposition here today? |
| 10:20:39 | 21 | A    I would like the definitions of "discuss, |
| 10:20:41 | 22 | approve," and whatever you said. |
| 10:20:43 | 23 | Can you give me those, please. |
| 10:20:45 | 24 | Q    Okay.  So my -- you don't understand the word |
| 10:20:47 | 25 | "discuss"? |

DAYSTAR PETERSON                                          JOB NO. 1481293
APRIL 09, 2025

| | | |
|---|---|---|
| 10:20:48 | 1 | A    No.  But I would like the definitions.  I want |
| 10:20:50 | 2 | your definition because you are asking me the questions. |
| 10:20:53 | 3 | So I would like your definitions, Ms. Henderson.  Thank |
| 10:20:56 | 4 | you. |
| 10:20:56 | 5 | Q    Okay.  So did you speak with or talk to anyone |
| 10:20:58 | 6 | at Unite The People about your deposition? |
| 10:21:00 | 7 | A    No.  I'm asking you for the definition of |
| 10:21:02 | 8 | "discuss." |
| 10:21:03 | 9 | Can you give me that, please, from "Webster"? |
| 10:21:05 | 10 | Q    I'm the one asking questions, so I'm going |
| 10:21:07 | 11 | to -- |
| 10:21:09 | 12 | A    I need to comprehend them. |
| 10:21:11 | 13 | Q    This is unresponsive. |
| 10:21:12 | 14 | A    Am I tripping, or do I not need to understand |
| 10:21:12 | 15 | everything she says? |
| 10:21:15 | 16 | Q    Okay. |
| 10:21:16 | 17 | A    I need to understand it; correct?  Am I -- am |
| 10:21:18 | 18 | I "mugging"?  Yeah.  I need to know what she's saying. |
| 10:21:22 | 19 | Q    So you do understand that this deposition may |
| 10:21:24 | 20 | be played in front of a jury and they will be watching |
| 10:21:26 | 21 | this, and so if you wanted to leave the record as you |
| 10:21:30 | 22 | don't understand my question -- |
| 10:21:31 | 23 | A    Absolutely. |
| 10:21:31 | 24 | Q    -- I -- |
| 10:21:32 | 25 | A    I'm not leaving the record as I don't |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:21:33 | 1 | understand you.  You are talking over me when you asked |
| 10:21:36 | 2 | me not the cut you off.  I'm not -- I'm not saying I |
| 10:21:39 | 3 | don't understand.  I'm asking you to clarify.  There are |
| 10:21:41 | 4 | two big differences in clarifying and not understanding. |
| 10:21:44 | 5 |     Q   Okay.  I will clarify -- |
| 10:21:45 | 6 |     A   In fact, I would believe that clarifying is so |
| 10:21:49 | 7 | that you can understand more. |
| 10:21:51 | 8 |     Am I wrong, guys? |
| 10:21:54 | 9 |     Q   Mr. Peterson, did you talk to anyone at |
| 10:21:56 | 10 | Unite The People about a statement regarding your |
| 10:21:58 | 11 | deposition? |
| 10:22:00 | 12 |     A   You still have not given me the definitions of |
| 10:22:04 | 13 | the words that you first asked.  And I'm asking for |
| 10:22:07 | 14 | those so I can give you a clear and understandable |
| 10:22:10 | 15 | answer. |
| 10:22:10 | 16 |     Q   Okay.  My question was:  Did you talk to |
| 10:22:12 | 17 | anyone at Unite The People about a statement regarding |
| 10:22:15 | 18 | your deposition? |
| 10:22:17 | 19 |     A   That wasn't your question.  I would like for |
| 10:22:18 | 20 | you to -- |
| 10:22:19 | 21 |     Q   That's my question now. |
| 10:22:19 | 22 |     A   I would like you to ask the question the way |
| 10:22:22 | 23 | that you first asked the question.  I'm supposed to |
| 10:22:22 | 24 | answer the question. |
| 10:22:22 | 25 |     Q   I am going to move -- I'm going to move to |

```
10:22:23   1   strike as non-responsive, and I'm going to move on.

10:22:27   2        A    I responded.  You didn't -- you just -- don't

10:22:30   3   strike it.

10:22:31   4             MS. HENDERSON:  I'm going to mark as next in

10:22:34   5   order --

10:22:36   6             THE WITNESS:  I want this to be known on

10:22:38   7   record that I don't trust this woman.  I know that the

10:22:41   8   fact that these people are the same people who have me

10:22:45   9   in prison wrongfully convicted of a crime that I did not

10:22:48  10   commit, that no physical evidence even says that I have.

10:22:52  11   I don't trust this woman.

10:22:54  12             So when I'm asking for a clarification on

10:22:56  13   things, it's not because I'm trying to be difficult or

10:23:02  14   extra of any sort.  I just have to fine-comb everything.

10:23:07  15   Because the people that this woman works for are

10:23:09  16   despicable, and they do things at the expense of someone

10:23:16  17   else's freedom for their own personal gain.  So I don't

10:23:20  18   trust this woman.

10:23:22  19             So if I seem like I'm coming off in any kind

10:23:24  20   of way, I'm trying to be as respectful as I can.  I just

10:23:28  21   want all the clarity.  And if that comes off to anybody

10:23:32  22   like -- I'm doing something that's undermining or some

10:23:36  23   sort of way like that, I apologize.  But I just want my

10:23:38  24   clarity.

10:23:39  25             So, Ms. Henderson, I'm just letting you know
```

| | | |
|---|---|---|
| 10:23:42 | 1 | that's where the basis of my questions come from when |
| 10:23:45 | 2 | I'm asking you to clarify things. |
| 10:23:48 | 3 | BY MS. HENDERSON: |
| 10:23:48 | 4 | Q    Okay.  Well, my question before you stated |
| 10:23:49 | 5 | that was:  Did you talk to anyone at Unite The People |
| 10:23:53 | 6 | about a statement regarding your deposition.  And so I |
| 10:23:56 | 7 | will be moving to strike the answer as nonresponsive. |
| 10:23:59 | 8 | MS. HENDERSON:  And now, I would like to move |
| 10:24:00 | 9 | on by marking as next in order, which I believe, Ronny, |
| 10:24:05 | 10 | is Exhibit 39.  I'm going to ask the tech to pull up |
| 10:24:16 | 11 | Tab 2. |
| 10:24:20 | 12 | (Exhibit 39 was marked for identification.) |
| 10:24:33 | 13 | BY MS. HENDERSON: |
| 10:24:33 | 14 | Q    And I'd like you to scroll down to the next |
| 10:24:35 | 15 | page. |
| 10:24:38 | 16 | Okay. |
| 10:24:39 | 17 | And if -- for purposes of everyone, if you |
| 10:24:41 | 18 | could zoom in.  Okay. |
| 10:24:46 | 19 | Mr. Peterson, do you see that this is a |
| 10:24:48 | 20 | statement titled "Unite The People Inc. CEO |
| 10:24:52 | 21 | Ceasar McDowell Sets The Record Straight On Deposition |
| 10:24:54 | 22 | In Re Tory Lanez"? |
| 10:24:57 | 23 | Do you see that? |
| 10:24:58 | 24 | A    I'm sorry.  The -- the way that this screen |
| 10:24:59 | 25 | is, like it's just so small.  I can't see anything. |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:25:05 | 1 | MS. HENDERSON:  Mr. Ginn, if you could zoom |
| 10:25:09 | 2 | in. |
| 10:25:10 | 3 | THE WITNESS:  I know you think that's solving |
| 10:25:11 | 4 | the problem, but I swear on my side it's not. |
| 10:25:14 | 5 | Can you just read me whatever document that |
| 10:25:17 | 6 | you are talking about, please. |
| 10:25:17 | 7 | BY MS. HENDERSON: |
| 10:25:18 | 8 | Q   Okay.  I will read you the document, but if |
| 10:25:20 | 9 | you'd like to take a break so that you can change the |
| 10:25:23 | 10 | settings of your zoom -- |
| 10:25:24 | 11 | A   I can't change the settings.  I'm in prison |
| 10:25:27 | 12 | and this is their equipment.  I'm not going to get a |
| 10:25:29 | 13 | write-up for touching their equipment.  I am not allowed |
| 10:25:32 | 14 | to. |
| 10:25:32 | 15 | Q   I understand. |
| 10:25:33 | 16 | My question is:  Do you see any document in |
| 10:25:35 | 17 | front of the screen, or do you see no document? |
| 10:25:37 | 18 | A   I see a bunch of words, but I cannot make out |
| 10:25:39 | 19 | what they are because they're too small, and I guess |
| 10:25:41 | 20 | it's just the way this screen is setup; so I'm asking |
| 10:25:44 | 21 | you if maybe you can just read whatever it is that you |
| 10:25:45 | 22 | are talking about. |
| 10:25:46 | 23 | Q   Okay.  So this is a statement titled "Unite |
| 10:25:51 | 24 | The People Inc. CEO Ceasar McDowell Sets The Record |
| 10:25:54 | 25 | Straight On Deposition In Re Tory Lanez."  And this |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

10:25:58  1    statement reads, in part, "Tory Lanez is not a party to

10:26:03  2    Megan Thee Stallion's lawsuit against UTP client

10:26:07  3    Milagro Cooper and therefore UTP is not obligated to

10:26:11  4    produce Tory Lanez for a deposition, nor did UTP agree

10:26:16  5    or disagree to a deposition of Mr. Lanez or any other

10:26:18  6    potential witness."

10:26:19  7             Are -- showing you that statement, are you

10:26:25  8    aware that UTP released that statement?

10:26:27  9        A    You are not showing me anything because I

10:26:29 10    can't see what you are talking about.  However, I mean,

10:26:32 11    you are saying -- you are saying "Am I aware?"  Again,

10:26:36 12    I'm not aware of anything, and I can't see what you are

10:26:38 13    talking about.

10:26:39 14        Q    Okay.  If you can't see what I'm talking

10:26:40 15    about, then why don't we take a break, go off the

10:26:43 16    record, and we will contact the prison to change the

10:26:46 17    settings so you can see these exhibits.

10:26:49 18        A    Okay.

10:26:51 19             THE VIDEOGRAPHER:  We're now off the record.

10:26:52 20    The time is 10:26 AM Pacific time.

10:26:55 21             (Recess taken.)

10:30:11 22             THE VIDEOGRAPHER:  We are now on the record.

10:32:00 23    Time is 10:32 AM Pacific time.

10:32:03 24             MS. HENDERSON:  Okay.  So over the break, we

10:32:05 25    had Counselor Hernandez, who works at the prison, come

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:32:10 | 1 | in and check the settings on the computer, and we pulled |
| 10:32:13 | 2 | up the same document, Exhibit 39, and asked if he could |
| 10:32:18 | 3 | read it.  He confirmed it was legible and that he could |
| 10:32:22 | 4 | see the document, and he read the first lines of the |
| 10:32:27 | 5 | document. |
| 10:32:28 | 6 | So I'm going to pull up Exhibit 39 back on the |
| 10:32:31 | 7 | screen, and if you could zoom in on the second page, |
| 10:32:37 | 8 | Mr. Ginn. |
| 10:32:40 | 9 | BY MS. HENDERSON: |
| 10:32:40 | 10 | Q   Mr. Peterson, the very last paragraph of |
| 10:32:44 | 11 | this statement says, "Lastly, if you know Tory Lanez how |
| 10:32:49 | 12 | I do, good luck trying to get him to, quote, 'testify' |
| 10:32:52 | 13 | to anything.  It's just not what he does... and he |
| 10:32:56 | 14 | definitely did not, quote, 'agree' to testify now." |
| 10:33:01 | 15 | A   I don't know that that says that.  Still you |
| 10:33:03 | 16 | pulled up the same thing, at the same size, and I still |
| 10:33:06 | 17 | can't read it.  You asked somebody else for their |
| 10:33:08 | 18 | opinion on whether they can read it.  That person has |
| 10:33:10 | 19 | glasses on their face, and that person is standing right |
| 10:33:13 | 20 | next to the screen.  You asked them not only to read |
| 10:33:16 | 21 | something here.  You asked him to read the most boldest |
| 10:33:19 | 22 | part of this and not anything else. |
| 10:33:22 | 23 | So, again, you lose.  I'm sorry. |
| 10:33:25 | 24 | Q   Okay.  So the -- I'm just asking, can -- can |
| 10:33:28 | 25 | you hear me all right, Mr. Peterson? |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

```
10:33:31   1        A    Sometimes.
10:33:32   2        Q    Okay.  Can you hear me when I say that there
10:33:36   3   was a statement released that said, "Lastly, if you know
10:33:39   4   Tory Lanez how I do, good luck trying to get him to
10:33:42   5   testify to" --
10:33:44   6        A    I cannot see that statement so I cannot attest
10:33:46   7   to whatever you are talking about.  I'm sorry.
10:33:48   8        Q    All right.  That's not my question.
10:33:49   9             My question was:  Can you hear me when I say,
10:33:51  10   "Lastly, if you know Tory Lanez how I do, good luck
10:33:56  11   trying to get him to testify to anything.  It's just not
10:33:58  12   what he does."
10:33:59  13             Can you hear that?
10:34:00  14        A    I can hear you.
10:34:01  15        Q    Okay.  And will you agree that's what you are
10:34:02  16   doing today, right now?
10:34:05  17        A    Would I agree that I'm doing what today right
10:34:07  18   now?
10:34:08  19        Q    Are you evading the testimony right now?
10:34:11  20        A    Evading the testimony?  I think I'm here for a
10:34:14  21   testimony.
10:34:15  22             THE WITNESS:  Michael, is this not a hearing?
10:34:17  23             MR. HAYDEN:  This is a hearing.
10:34:18  24             THE WITNESS:  Is this not a testimony I'm
10:34:20  25   doing?
```

10:34:20  1   BY MS. HENDERSON:

10:34:21  2       Q     Okay.   And Mr. --

10:34:24  3       A     Excuse me.   Excuse me.   Excuse me,

10:34:24  4   Ms. Henderson, I'm talking to my lawyer.

10:34:26  5           THE WITNESS:   Michael -- Michael Hayden is

10:34:27  6   this not a testimony that I'm doing right now?

10:34:29  7           MR. HAYDEN:   Well, it's a deposition.   You

10:34:31  8   have to answer the questions --

10:34:33  9           THE WITNESS:   But in some sort of way, my

10:34:35 10   words will make up what they call a testimony --

10:34:37 11   correct? -- because I'm under oath.

10:34:41 12           MR. HAYDEN:   Exactly.

10:34:42 13           THE WITNESS:   Or am I wrong?   Am I wrong?

10:34:45 14           MR. HAYDEN:   You are partially right.   But at

10:34:46 15   the same time we have --

10:34:47 16           THE WITNESS:   So when she asks me -- so when

10:34:48 17   she asks me am I evading the testimony, what does that

10:34:51 18   mean?

10:34:53 19           MR. HAYDEN:   You are not answering the

10:34:54 20   questions being asked is what she means.

10:34:57 21           THE WITNESS:   So -- okay.   So explain this

10:34:59 22   again, Ms. Henderson.

10:35:01 23           MR. HAYDEN:   If you can't see it and you have

10:35:02 24   no personal knowledge -- or if you have no personal

10:35:03 25   knowledge of it, you just say "No," you know, if you've

| | | |
|---|---|---|
| 10:35:07 | 1 | never seen this. |
| 10:35:07 | 2 | BY MS. HENDERSON: |
| 10:35:08 | 3 |     Q   And that's not my question.  And, in fact, we |
| 10:35:09 | 4 | can put down Exhibit 39. |
| 10:35:16 | 5 |       Mr. Peterson, did you know that Unite The |
| 10:35:19 | 6 | People put out a statement that read:  "If you know Tory |
| 10:35:24 | 7 | Lanez how I do, good luck trying to get him to testify |
| 10:35:28 | 8 | to anything.  It's just not what he does." |
| 10:35:33 | 9 |     A   I do not recall. |
| 10:35:35 | 10 |     Q   Okay.  So you don't recall one way or the |
| 10:35:37 | 11 | other whether Unite The People released that? |
| 10:35:39 | 12 |     A   You are adding extra things to what I said.  I |
| 10:35:41 | 13 | said, "I don't recall." |
| 10:35:43 | 14 |     Q   Okay.  So my question is:  You do not recall |
| 10:35:46 | 15 | one way or the other whether Unite The People released a |
| 10:35:49 | 16 | statement regarding your testimony here today? |
| 10:35:53 | 17 |     A   I do not recall. |
| 10:35:55 | 18 |     Q   Okay.  Mr. Peterson, if I refer to the |
| 10:36:02 | 19 | defendant in this action -- |
| 10:36:04 | 20 |     A   How come I can't see myself?  I'd like to look |
| 10:36:09 | 21 | at myself. |
| 10:36:11 | 22 |     Q   Okay. |
| 10:36:11 | 23 |     A   I'd like to see the trees behind me. |
| 10:36:14 | 24 |     Q   Okay. |
| 10:36:15 | 25 |     A   Makes me feel good.  Makes me feel like -- |

| | | |
|---|---|---|
| 10:36:15 | 1 | Q   So then let's -- let's take a break and go off |
| 10:36:18 | 2 | the record and get Mr. Hernandez -- |
| 10:36:18 | 3 | A   We don't need to go off the record.  I would |
| 10:36:20 | 4 | like to see myself in the camera.  I don't know why I |
| 10:36:24 | 5 | can't see the actions that my body is doing, if I'm |
| 10:36:27 | 6 | being recorded. |
| 10:36:29 | 7 | THE WITNESS:  Mr. Hayden, am I wrong?  I |
| 10:36:30 | 8 | mean, shouldn't I be able to see myself? |
| 10:36:32 | 9 | MR. HAYDEN:  I'm not sure.  I'm not sure if |
| 10:36:34 | 10 | it's in the scope of the rules, but -- |
| 10:36:38 | 11 | THE WITNESS:  They had me seeing myself |
| 10:36:39 | 12 | before.  I was looking pretty good.  Pretty damn good, |
| 10:36:42 | 13 | if you ask me. |
| 10:36:43 | 14 | MS. HENDERSON:  Okay.  I'm going to go off the |
| 10:36:44 | 15 | record. |
| 10:36:47 | 16 | THE VIDEOGRAPHER:  All right.  We're now off |
| 10:36:48 | 17 | the record.  Time is 10:36 AM Pacific time. |
| 10:36:51 | 18 | (Recess taken.) |
| 10:39:27 | 19 | THE VIDEOGRAPHER:  We are now on the record. |
| 10:39:31 | 20 | Time is 10:39 AM Pacific time. |
| 10:39:34 | 21 | BY MS. HENDERSON: |
| 10:39:35 | 22 | Q   Okay.  So my last question, which I did not |
| 10:39:37 | 23 | get through before you interrupted was, if I refer to |
| 10:39:39 | 24 | the defendant in this action as "Milagro" or |
| 10:39:42 | 25 | "Ms. Cooper," do you understand that to be the same |

| | | |
|---|---|---|
| 10:39:44 | 1 | person? |
| 10:39:45 | 2 | A    Yes. |
| 10:39:46 | 3 | Q    Okay.  Have you ever been deposed before? |
| 10:39:51 | 4 | A    Have I ever been what? |
| 10:39:53 | 5 | Q    Deposed before? |
| 10:39:55 | 6 | A    I think so. |
| 10:39:56 | 7 | Q    Have you ever been in a deposition like we're |
| 10:40:01 | 8 | doing today?  Have you ever done a deposition like this |
| 10:40:04 | 9 | before? |
| 10:40:05 | 10 | A    I'm not sure.  I think so, though. |
| 10:40:06 | 11 | Q    Okay.  When you say you think so -- |
| 10:40:09 | 12 | A    I think so.  That's -- I don't know else how |
| 10:40:11 | 13 | to explain I think so, but I think so. |
| 10:40:13 | 14 | Q    Okay.  In what case? |
| 10:40:16 | 15 | A    You are a lawyer, Ms. Henderson.  Let's be |
| 10:40:18 | 16 | real.  Let's be smart.  Come on. |
| 10:40:21 | 17 | Q    In -- in what case?  In what case were you |
| 10:40:22 | 18 | deposed? |
| 10:40:24 | 19 | A    I don't know.  That's why I said I think so. |
| 10:40:26 | 20 | That's what -- like, don't you know the definition of "I |
| 10:40:28 | 21 | this so."  I get it.  You're not good with depositions. |
| 10:40:31 | 22 | You didn't want to give me the definition to the other |
| 10:40:34 | 23 | shit either. |
| 10:40:36 | 24 | Q    In what -- |
| 10:40:37 | 25 | A    Which is crazy 'cause aren't you a lawyer? |

10:40:40  1  Shouldn't you, like, know definitions?  Aren't you good

10:40:42  2  at that?

10:40:43  3      Q    So, Mr. Peterson, let me -- let me just tell

10:40:45  4  you that you do understand that you are under the same

10:40:48  5  oath as if you were testifying in trial in court?

10:40:52  6      A    Absolutely.  And my answers are very accurate,

10:40:54  7  Ms. Henderson.  My answers are very accurate.

10:40:57  8      Q    Okay.  And I'm just going to tell you if there

10:40:59  9  were a judge here today and you were testifying like

10:41:01 10  this on the stand, then the judge would -- would you

10:41:05 11  like to take a break to understand the -- what's going

10:41:09 12  on here and questions --

10:41:11 13      A    Ms. Henderson --

10:41:11 14      Q    -- or are we going to go back and forth and do

10:41:14 15  this all day?

10:41:14 16      A    Hey, Ms. Henderson, I don't need you to tell

10:41:18 17  me what hypotheticals would have happened in court and

10:41:20 18  what a judge would have, hypothetically, said to me.

10:41:21 19  Like, come on, be a lawyer.  Do your job.  Let's get

10:41:24 20  this over with.  Okay?  Do your job.  That's all.

10:41:26 21      Q    Okay.  Have you ever testified in court

10:41:28 22  before?

10:41:32 23      A    I don't know.

10:41:34 24      Q    Okay.

10:41:34 25      A    I don't know if a deposition is a court thing.

DAYSTAR PETERSON                                          JOB NO. 1481293
APRIL 09, 2025

| | | |
|---|---|---|
| 10:41:37 | 1 | I don't know.  You asked me if I've ever was deposed |
| 10:41:40 | 2 | before this so I just don't know.  I think so. |
| 10:41:42 | 3 | Q   Have you ever testified under oath in any |
| 10:41:44 | 4 | capacity before today? |
| 10:41:46 | 5 | A   I think so. |
| 10:41:47 | 6 | Q   Okay.  And when you say you think so -- |
| 10:41:50 | 7 | A   I think so. |
| 10:41:51 | 8 | Q   -- what do you -- |
| 10:41:51 | 9 | A   Why do you keep asking for a definition of "I |
| 10:41:54 | 10 | think so"? |
| 10:41:54 | 11 | Q   I am asking -- |
| 10:41:54 | 12 | A   You are a smart woman.  You know what I think |
| 10:41:56 | 13 | so means. |
| 10:41:57 | 14 | Q   Okay.  You need -- you need to let me finish |
| 10:41:59 | 15 | my question before you answer. |
| 10:42:02 | 16 | A   Okay. |
| 10:42:03 | 17 | Q   When you say that you think you may have |
| 10:42:05 | 18 | testified under oath in the past, what do you recall |
| 10:42:09 | 19 | about that past testimony? |
| 10:42:11 | 20 | A   That's why I said, "I think so."  I don't |
| 10:42:13 | 21 | remember. |
| 10:42:15 | 22 | Q   Okay.  So you don't remember about anything |
| 10:42:18 | 23 | about what you've testified in the past? |
| 10:42:21 | 24 | A   Hence, the three words -- "I think so." |
| 10:42:25 | 25 | Q   Okay.  Do you know what case you testified in? |

DAYSTAR PETERSON                                        JOB NO. 1481293
APRIL 09, 2025

```
10:42:29  1              THE WITNESS:  Michael Hayden, is she, like,
10:42:32  2    illiterate or something?
10:42:33  3              MR. HAYDEN:  No.  She's just asking the
10:42:34  4    question if you ever testified before.
10:42:37  5              THE WITNESS:  She might be hard of hearing or
10:42:38  6    something.  It just doesn't make any sense.
10:42:39  7              Are you hard of hearing, Ms. Henderson?
10:42:42  8    BY MS. HENDERSON:
10:42:44  9         Q    Do you know what the subject matter was you
10:42:46 10    testified about before?
10:42:48 11         A    So I got to answer your questions, but you
10:42:50 12    don't got to answer mine?
10:42:52 13         Q    So --
10:42:53 14         A    Are you hard of hearing?
10:42:53 15              MR. HAYDEN:  Right now, we have to answer
10:42:58 16    hers, technically.
10:42:59 17    BY MS. HENDERSON:
10:43:00 18         Q    I'm going to ask the question once more, and
10:43:01 19    then I'm going to move to strike as nonresponsive.
10:43:04 20              Do you know what the subject matter was that
10:43:05 21    you testified about before?
10:43:08 22         A    Not that I can recall.
10:43:10 23         Q    Okay.  And you chose not to testify at your
10:43:14 24    criminal trial in December of 2022?
10:43:19 25         A    You are asking me a legal question that I'm
```

10:43:20   1    not answering.

10:43:22   2         Q    Okay.

10:43:23   3         A    It has nothing to do with this case.

10:43:28   4              MR. HAYDEN:  Attorney-client privilege.

10:43:28   5              Instruct not to answer.

10:43:29   6              MS. HENDERSON:  Okay.  So -- so the record is

10:43:30   7    clear, you -- you objected first, Mr. Peterson, and

10:43:32   8    then your counsel objected.

10:43:34   9    BY MS. HENDERSON:

10:43:34  10         Q    I'm just asking --

10:43:36  11         A    Is that funny to you then?  Ha-ha, that's

10:43:38  12    funny.

10:43:39  13              Is that a lawyer joke or something?

10:43:40  14    BY MS. HENDERSON:

10:43:41  15         Q    Did you -- did you testify at your criminal

10:43:43  16    trial?

10:43:43  17              THE WITNESS:  Is that a lawyer joke, Mike?

10:43:45  18              MR. HAYDEN:  Objection.  Fifth Amendment

10:43:47  19    privilege.

10:43:47  20              Instruct the witness not to answer.

10:43:49  21              MS. HENDERSON:  Okay.  So let me finish my

10:43:50  22    question, and then you can launch your objection,

10:43:52  23    Mr. Hayden.

10:43:53  24              MR. HAYDEN:  You finished your objection.  I

10:43:55  25    objected right after you finished your question because

| | | |
|---|---|---|
| 10:43:58 | 1 | I missed the last one. |
| 10:43:59 | 2 | MS. HENDERSON:  Okay.  I did not finish my |
| 10:43:59 | 3 | question. |
| 10:43:59 | 4 | BY MS. HENDERSON: |
| 10:44:02 | 5 | Q    Did you testify at your criminal trial in |
| 10:44:05 | 6 | December of 2022?  That's a yes or no. |
| 10:44:09 | 7 | A    Objection. |
| 10:44:10 | 8 | Q    Okay.  I don't see -- |
| 10:44:11 | 9 | A    Don't ask me anything about -- don't ask me |
| 10:44:13 | 10 | any anything about any criminal proceedings that have to |
| 10:44:15 | 11 | do with my case on a criminal level. |
| 10:44:17 | 12 | How about that? |
| 10:44:19 | 13 | Q    I am simply asking, did you testify -- |
| 10:44:21 | 14 | A    Objection.  Objection. |
| 10:44:25 | 15 | Q    Okay.  Just, again, for the record, you are |
| 10:44:27 | 16 | not answering my questions. |
| 10:44:30 | 17 | A    Objection. |
| 10:44:30 | 18 | Q    Okay.  Let me finish my -- my question so I |
| 10:44:32 | 19 | can have a clear record so -- |
| 10:44:34 | 20 | A    I object. |
| 10:44:35 | 21 | Q    -- we can then bring it to the court to |
| 10:44:38 | 22 | decide. |
| 10:44:38 | 23 | A    I object.  I object. |
| 10:44:39 | 24 | Q    Did you -- did you testify at your criminal |
| 10:44:39 | 25 | trial in December of -- |

| | | |
|---|---|---|
| 10:44:39 | 1 | A    I object. |
| 10:44:47 | 2 | THE COURT REPORTER:  Okay.  I can't -- I can't |
| 10:44:48 | 3 | get this when he keeps saying "I object" in between. |
| 10:44:48 | 4 | Like, there's no way I can possibly get this. |
| 10:44:48 | 5 | THE WITNESS:  She keeps asking stupid |
| 10:44:48 | 6 | questions, Ronny.  I am -- I am trying to help her. |
| 10:44:49 | 7 | MR. HAYDEN:  Mr. Peterson, I will object for |
| 10:44:51 | 8 | you, but we have got to wait until she is done with the |
| 10:44:51 | 9 | question, and then I can object like I did the first |
| 10:44:54 | 10 | time.  She's just rereading the same question. |
| 10:44:58 | 11 | THE WITNESS:  She should have waited to wait |
| 10:44:59 | 12 | for that hair dye.  It is the wrong blonde. |
| 10:45:01 | 13 | But anyways, go ahead. |
| 10:45:04 | 14 | BY MS. HENDERSON: |
| 10:45:06 | 15 | Q    Did you testify at your criminal trial in |
| 10:45:09 | 16 | December of 2022? |
| 10:45:12 | 17 | MR. HAYDEN:  Objection.  Fifth Amendment. |
| 10:45:13 | 18 | Instruct the witness not to answer. |
| 10:45:15 | 19 | MS. HENDERSON:  Okay.  So I'm going to put |
| 10:45:16 | 20 | some cases on, for the record, Mr. Hayden, because my |
| 10:45:19 | 21 | simple question was whether or not he testified.  And |
| 10:45:22 | 22 | you do understand that the Fifth Amendment privilege |
| 10:45:24 | 23 | only applies when there's a reasonable cause to fear |
| 10:45:29 | 24 | criminal liability that's United States versus |
| 10:45:30 | 25 | Argomaniz -- and, Ronny, I'll give you the spelling |

DAYSTAR PETERSON                                                    JOB NO. 1481293
APRIL 09, 2025

| | | |
|---|---|---|
| 10:45:34 | 1 | after -- 925 F.2d 1349, and that must be contingent on |
| 10:45:41 | 2 | the -- it must be sufficiently real that there is a |
| 10:45:44 | 3 | likelihood of prosecution, and that is Englebrick versus |
| 10:45:48 | 4 | Worthington Industries Inc., 670 F.SUPP.2d 1048. |
| 10:45:53 | 5 | And so, Mr. Hayden, is it your position that |
| 10:45:55 | 6 | the question of "Did you testify at your criminal trial |
| 10:45:58 | 7 | in December of 2022" is subject to the Fifth Amendment |
| 10:46:01 | 8 | privilege? |
| 10:46:03 | 9 | MR. HAYDEN: I withdraw. He can answer yes or |
| 10:46:04 | 10 | no, if he has knowledge. |
| 10:46:13 | 11 | BY MS. HENDERSON: |
| 10:46:13 | 12 | Q    Mr. Peterson, did you testify at your |
| 10:46:15 | 13 | criminal trial in December of 2022? |
| 10:46:23 | 14 | Okay.  Can you hear my question, |
| 10:46:24 | 15 | Mr. Peterson? |
| 10:46:28 | 16 | So he is not responding to the question, for |
| 10:46:31 | 17 | the record.  He did confirm earlier he could hear me, |
| 10:46:36 | 18 | and now he is not responding. |
| 10:46:37 | 19 | So, Mr. Peterson, I will ask once more for |
| 10:46:40 | 20 | the record, did you testify at your criminal trial? |
| 10:46:43 | 21 | A    Hey, guys, the audio keeps clipping in and |
| 10:46:46 | 22 | out, so sometimes I can't hear what she's saying.  It |
| 10:46:48 | 23 | just clipped out.  I didn't hear anything she said in |
| 10:46:50 | 24 | the last, like, five seconds. |
| 10:46:53 | 25 | MS. HENDERSON:  Okay.  Let's go off the record |

DAYSTAR PETERSON                                      JOB NO. 1481293
APRIL 09, 2025

10:46:54   1   and get Mr. Hernandez back in.

10:46:58   2        THE WITNESS:  It's fine with me, big dog.

10:46:59   3        THE VIDEOGRAPHER:  We are off the record.

10:47:00   4   Tine is 10:47 AM Pacific time.

10:49:24   5        (Recess taken.)

10:49:29   6        THE VIDEOGRAPHER:  We are now on the record.

10:49:30   7   The time is 10:49 AM Pacific time.

10:49:33   8   BY MS. HENDERSON:

10:49:33   9        Q    Sorry.  Mr. Peterson, what is that you were

10:49:36   10  saying right before we went back on the record?

10:49:38   11       A    If it wasn't on the record, it's not

10:49:40   12  important.

10:49:40   13       Q    Oh, okay.  Were you telling Ronny, the

10:49:41   14  court reporter, that she is the right blonde and did a

10:49:44   15  good job?

10:49:46   16       A    I said no such thing.

10:49:47   17            What are you talking about?

10:49:48   18       Q    Okay.

10:49:48   19       A    Are you putting words in my mouth,

10:49:50   20  Ms. Henderson?  This kind of makes me feel scared about

10:49:53   21  the rest of this --

10:49:55   22       THE WITNESS:  She just put words in my mouth,

10:49:56   23  Michael Hayden.

10:49:58   24       MR. HAYDEN:  I understand.  Let's just go

10:49:59   25  forward with the record.

10:50:00  1          THE WITNESS:  How is she allowed to say that?

10:50:03  2   BY MS. HENDERSON:

10:50:03  3       Q    Okay.  So --

10:50:04  4          THE WITNESS:  No, no, no, no, no.  She just

10:50:06  5   did something she's not allowed to do.  She's not

10:50:08  6   allowed to say what I said or to fake and say that I

10:50:11  7   said something I didn't say.  You can't do that.

10:50:13  8          What are you doing?

10:50:15  9          MS. HENDERSON:  Okay.  I don't want have to

10:50:16 10   bring Ronny, the court reporter, in as a witness.

10:50:19 11          THE WITNESS:  Ms. Henderson, what are you --

10:50:19 12   is that what you are doing?

10:50:21 13          MR. HAYDEN:  We were off the record.  She was

10:50:22 14   making a comment, but we were off the record.

10:50:23 15          THE WITNESS:  No, no.  Is this what you do in

10:50:25 16   your cases?  Is this how you handle your cases?  Do you

10:50:28 17   put words in people's mouths?

10:50:29 18   BY MS. HENDERSON:

10:50:30 19       Q    So, Mr. Peterson, I'm going to go back to --

10:50:32 20       A    So you are skipping what I'm asking you now?

10:50:34 21   Because you just asked me something on record about

10:50:36 22   something that was off record and tried to say

10:50:38 23   something, but you put that in my mouth.

10:50:41 24          I'm asking you, is that how you conduct your

10:50:43 25   services?

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:50:44 | 1 | Q    Mr. Peterson, I am the one asking the |
| 10:50:46 | 2 | questions here today. |
| 10:50:47 | 3 | A    Well, I'm clearly asking you questions right |
| 10:50:48 | 4 | now.  I mean, you can answer or not.  I mean, it's very |
| 10:50:50 | 5 | simple. |
| 10:50:51 | 6 | Q    Okay.  The question I asked before we went off |
| 10:50:54 | 7 | the record was "Did you testify at your criminal trial |
| 10:50:59 | 8 | in December of 2022."  Yes or No? |
| 10:51:02 | 9 | A    No. |
| 10:51:03 | 10 | Q    Okay.  You are being represented here today by |
| 10:51:06 | 11 | Mr. Hayden from Unite The People; right? |
| 10:51:10 | 12 | A    Yes. |
| 10:51:11 | 13 | Q    You understand that your counsel representing |
| 10:51:13 | 14 | you here today is also Ms. Cooper's attorney in this |
| 10:51:17 | 15 | case? |
| 10:51:18 | 16 | A    I'm not really aware of how -- what they do |
| 10:51:22 | 17 | beyond me, but -- |
| 10:51:25 | 18 | Q    Do you know that Mr. Hayden is also |
| 10:51:27 | 19 | representing -- |
| 10:51:28 | 20 | A    I said, I'm not aware -- I'm not aware, what |
| 10:51:31 | 21 | they do beyond my scope of me. |
| 10:51:34 | 22 | Q    Okay.  Did you meet with Mr. Hayden or any |
| 10:51:37 | 23 | other attorneys to prepare for your deposition today? |
| 10:51:44 | 24 | A    When you say "meet," what do you mean? |
| 10:51:47 | 25 | Q    What does the word "meet" mean to you? |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| 10:51:49 | 1 | A    Well, I would ask you for the "Webster" |
| 10:51:53 | 2 | dictionary version of "meet," if you could explain that |
| 10:51:55 | 3 | to me, just for clarification. |
| 10:51:57 | 4 | Q    I'm asking -- I'm asking you the questions. |
| 10:51:57 | 5 | What does the word "meet" -- |
| 10:51:58 | 6 | A    Well, I don't have -- |
| 10:51:59 | 7 | Q    -- mean to you? |
| 10:51:59 | 8 | A    Well, I don't have -- I don't have access to |
| 10:52:00 | 9 | the same things that you have access to.  I'm sure that |
| 10:52:02 | 10 | you are the one asking the questions; so what does |
| 10:52:04 | 11 | "meet" mean? |
| 10:52:05 | 12 | Q    Okay.  So -- |
| 10:52:07 | 13 | A    It could mean a lot of things.  I mean meat |
| 10:52:09 | 14 | could be a hot dog; meat could be a steak; meat could be |
| 10:52:14 | 15 | red meat.  It could be a lot of things.  You know what |
| 10:52:16 | 16 | I'm saying?  You could watch porn.  Meat -- meat is a |
| 10:52:19 | 17 | whole thing different over there.  Meet can be anything. |
| 10:52:22 | 18 | I'm asking you what is your definition of "meet." |
| 10:52:25 | 19 | Q    Did you talk to Mr. Hayden before your |
| 10:52:27 | 20 | deposition today? |
| 10:52:29 | 21 | A    No, I did not. |
| 10:52:30 | 22 | Q    Okay.  Did you talk to any other attorneys |
| 10:52:32 | 23 | before your deposition today about your deposition? |
| 10:52:37 | 24 | A    No. |
| 10:52:38 | 25 | Q    Okay.  Did you talk to Ceasar McDowell, the |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:52:46 | 1 | CEO of Unite The People, before your deposition about |
| 10:52:48 | 2 | your deposition? |
| 10:52:52 | 3 | A    I don't understand the question you are |
| 10:52:54 | 4 | posing. |
| 10:52:55 | 5 | Q    Who is Ceasar McDowell? |
| 10:52:58 | 6 | A    Who are you?  Like, how do you -- how -- do -- |
| 10:53:01 | 7 | do I just put one man in a one definition?  Who is this |
| 10:53:05 | 8 | man?  I don't know.  He probably has many layers to him. |
| 10:53:09 | 9 | I don't know. |
| 10:53:09 | 10 | What exactly do you mean by who is this man? |
| 10:53:12 | 11 | Do you mean who is he spiritually?  Do you mean who is |
| 10:53:15 | 12 | he physically?  Do you mean who is he personally?  Do |
| 10:53:17 | 13 | you mean who is he, like, to me?  What do you mean, |
| 10:53:20 | 14 | Ms. Henderson?  Please, clarify. |
| 10:53:23 | 15 | Q    Ceasar McDowell -- Ceasar McDowell is the CEO |
| 10:53:25 | 16 | of Unite The People; is that right? |
| 10:53:26 | 17 | A    Well, if you knew who he was, then why are you |
| 10:53:29 | 18 | asking me?  What the fuck? |
| 10:53:31 | 19 | Q    I'm not -- |
| 10:53:32 | 20 | A    What the -- |
| 10:53:33 | 21 | Q    -- my question -- |
| 10:53:34 | 22 | A    Why are you asking me?  If you knew who this |
| 10:53:37 | 23 | guy was, why are you asking me who he is?  You know |
| 10:53:40 | 24 | already. |
| 10:53:40 | 25 | Q    I'm going to move to strike as nonresponsive. |

DAYSTAR PETERSON                                              JOB NO. 1481293
APRIL 09, 2025

| | | |
|---|---|---|
| 10:53:42 | 1 | My question is, Ceasar McDowell is the CEO of |
| 10:53:50 | 2 | Unite The People; is that right? |
| 10:53:50 | 3 | A    I mean, I'll let you tell it.  You clearly |
| 10:53:53 | 4 | know him. |
| 10:53:53 | 5 | Q    Okay.  Are you refusing to answer my question? |
| 10:53:56 | 6 | A    No.  That was my answer.  I'll let you tell |
| 10:53:57 | 7 | it.  You clearly know him.  That is my answer.  Put it |
| 10:53:58 | 8 | on file. |
| 10:53:59 | 9 | Thank you, Ronny. |
| 10:54:00 | 10 | Q    Okay.  Did you talk to Ceasar McDowell before |
| 10:54:03 | 11 | your deposition about your deposition? |
| 10:54:08 | 12 | A    Not that I can recall. |
| 10:54:09 | 13 | Q    Okay.  Did you speak with anyone to prepare |
| 10:54:12 | 14 | for your deposition today? |
| 10:54:15 | 15 | A    No.  I don't recall. |
| 10:54:16 | 16 | Q    Did you speak with your dad, Sonstar Peterson, |
| 10:54:20 | 17 | about your deposition? |
| 10:54:24 | 18 | A    I don't recall. |
| 10:54:25 | 19 | Q    Okay.  You don't recall one way or the other |
| 10:54:27 | 20 | whether you spoke to your dad about your deposition |
| 10:54:29 | 21 | today? |
| 10:54:31 | 22 | A    At this very moment, my brain slipped and I do |
| 10:54:33 | 23 | not recall. |
| 10:54:34 | 24 | Q    Okay.  Did you speak with your dad, |
| 10:54:35 | 25 | Sonstar Peterson, about his deposition? |

DAYSTAR PETERSON                                    JOB NO. 1481293
APRIL 09, 2025

| | | |
|---|---|---|
| 10:54:41 | 1 | A    I don't recall. |
| 10:54:42 | 2 | Q    Okay.  Did you know that your dad, |
| 10:54:45 | 3 | Sonstar Peterson, was also deposed in this case? |
| 10:54:49 | 4 | A    I don't know. |
| 10:54:51 | 5 | Q    Okay.  If your dad, Sonstar Peterson, said he |
| 10:54:54 | 6 | spoke to you about his deposition, do you have any |
| 10:54:56 | 7 | reason to dispute what your dad is saying? |
| 10:54:59 | 8 | A    If he said it to me, I just don't recall at |
| 10:55:02 | 9 | this moment that conversation.  It could have happened; |
| 10:55:04 | 10 | it could have not happened.  I just don't recall. |
| 10:55:06 | 11 | Q    Okay.  So you don't recall whether, since |
| 10:55:09 | 12 | Friday, you've had any conversations with your dad about |
| 10:55:12 | 13 | the fact that he was deposed in this case?  That's your |
| 10:55:14 | 14 | testimony? |
| 10:55:15 | 15 | A    Ms. Henderson, I'm in prison.  There's a lot |
| 10:55:17 | 16 | of things going on, and I do not recall that right now, |
| 10:55:19 | 17 | amongst the other things that I have to deal with on a |
| 10:55:22 | 18 | daily basis. |
| 10:55:23 | 19 | Q    Okay.  Did you review any documents to prepare |
| 10:55:25 | 20 | for your deposition today? |
| 10:55:28 | 21 | A    I'm sorry? |
| 10:55:28 | 22 | Q    Did you review any documents to prepare for |
| 10:55:31 | 23 | your deposition today? |
| 10:55:33 | 24 | A    Did you review the documents on the color of |
| 10:55:37 | 25 | the dye you were going to use for your hair? |

DAYSTAR PETERSON                                           JOB NO. 1481293
APRIL 09, 2025

| | | |
|---|---|---|
| 10:55:40 | 1 | Q    I move to strike as nonresponsive. |
| 10:55:42 | 2 | I'm going to ask again -- |
| 10:55:43 | 3 | A    That's a real answer.  I don't understand. |
| 10:55:46 | 4 | That's a true answer. |
| 10:55:47 | 5 | Q    -- did you review any -- |
| 10:55:48 | 6 | A    Why are you -- why are you striking what I'm |
| 10:55:50 | 7 | saying, if these are my answers? |
| 10:55:51 | 8 | Q    So my question to you is, did you -- |
| 10:55:54 | 9 | A    You are striking my answers.  Why?  Why are |
| 10:55:57 | 10 | you striking my answers, Ms. Henderson?  Can you explain |
| 10:56:00 | 11 | that to me? |
| 10:56:01 | 12 | Q    Let me ask my question, for Ronny's sake, |
| 10:56:03 | 13 | before you answer. |
| 10:56:05 | 14 | Did you review any documents to prepare for |
| 10:56:06 | 15 | your deposition today? |
| 10:56:08 | 16 | A    But you didn't answer my question, and I feel |
| 10:56:11 | 17 | like it's starting to be -- like it's one-sided.  Like, |
| 10:56:12 | 18 | you are not allowing me to -- to understand what I need |
| 10:56:15 | 19 | to understand so I can understand. |
| 10:56:17 | 20 | Q    So Mr. Peterson -- |
| 10:56:19 | 21 | A    Because your hair is distracting me.  There's |
| 10:56:21 | 22 | a reason for what I am asking.  Your hair is distracting |
| 10:56:24 | 23 | me. |
| 10:56:24 | 24 | MS. HENDERSON:  Okay.  I'm going to go off the |
| 10:56:26 | 25 | record and stop this deposition at this point.  Let's |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

| | | |
|---|---|---|
| 10:56:30 | 1 | take a 5-minute break -- a 10-minute break. |
| 10:56:36 | 2 | THE WITNESS:  Enjoy yourself. |
| 10:56:38 | 3 | THE VIDEOGRAPHER:  It's 10:56 AM Pacific time, |
| 10:56:40 | 4 | and we are off the record. |
| 10:56:41 | 5 | (Recess taken.) |
| 11:01:40 | 6 | THE VIDEOGRAPHER:  We are now on the record. |
| 11:01:48 | 7 | The time is 11:01 AM -- |
| 11:01:48 | 8 | (Multiple Simultaneous Speakers.) |
| 11:01:49 | 9 | THE WITNESS:  I just want to say -- I just |
| 11:01:50 | 10 | want to say on record that Ms. Henderson's hair is |
| 11:01:52 | 11 | distracting me. |
| 11:01:56 | 12 | BY MS. HENDERSON: |
| 11:01:56 | 13 | Q    Okay.  So before we went off the record, my |
| 11:01:59 | 14 | question to you was did you review any documents to |
| 11:02:02 | 15 | prepare for today's deposition? |
| 11:02:08 | 16 | A    I don't -- I understand. |
| 11:02:10 | 17 | Can you say that question again? |
| 11:02:12 | 18 | Q    Did you review any documents to prepare for |
| 11:02:14 | 19 | today's deposition? |
| 11:02:15 | 20 | A    Did I review?  What do you mean by "review"? |
| 11:02:20 | 21 | Q    What does the word "review" mean to you? |
| 11:02:23 | 22 | A    What does it mean to you?  So I can answer |
| 11:02:25 | 23 | your question clearly. |
| 11:02:26 | 24 | Q    Okay.  Did you look at any documents to |
| 11:02:31 | 25 | prepare for your deposition today? |

| | | |
|---|---|---|
| 11:02:33 | 1 | A    What does the word "look" mean to you? |
| 11:02:35 | 2 | Q    What does the word "look" mean to you? |
| 11:02:39 | 3 | A    It means, I guess, looking at something.  But |
| 11:02:42 | 4 | what does it mean to you, though, in the context you are |
| 11:02:44 | 5 | asking? |
| 11:02:45 | 6 | Q    Okay.  Did you look at any documents to |
| 11:02:47 | 7 | prepare for this deposition today? |
| 11:02:50 | 8 | A    You are asking the same question -- |
| 11:02:52 | 9 | MR. HAYDEN:  You are not getting out of this |
| 11:02:53 | 10 | one. |
| 11:02:54 | 11 | THE WITNESS:  Fine. |
| 11:02:56 | 12 | No. |
| 11:03:06 | 13 | How come we can't see the other person that's |
| 11:03:08 | 14 | in your room? |
| 11:03:09 | 15 | BY MS. HENDERSON: |
| 11:03:09 | 16 | Q    Did you do anything to prepare for your |
| 11:03:11 | 17 | deposition today? |
| 11:03:14 | 18 | A    Is there a second lawyer present? |
| 11:03:16 | 19 | Q    I'm asking you, did you do anything to prepare |
| 11:03:18 | 20 | for your deposition today? |
| 11:03:21 | 21 | A    One second.  I will answer your question |
| 11:03:22 | 22 | shortly. |
| 11:03:23 | 23 | THE WITNESS:  Michael Hayden, does she have a |
| 11:03:25 | 24 | second lawyer present? |
| 11:03:26 | 25 | MR. HAYDEN:  I wouldn't know.  I am remote -- |

| | | |
|---|---|---|
| 11:03:28 | 1 | I'm remote as well, just like you.  If she does, they're |
| 11:03:31 | 2 | from the same law firm, the same -- the same legal |
| 11:03:35 | 3 | counsel. |
| 11:03:37 | 4 | THE WITNESS:  Can I see that person? |
| 11:03:38 | 5 | MR. HAYDEN:  I can't. |
| 11:03:39 | 6 | BY MS. HENDERSON: |
| 11:03:39 | 7 | Q    I'm going to ask once more, did you do |
| 11:03:41 | 8 | anything to prepare for your deposition? |
| 11:03:43 | 9 | A    Hold on.  You are not giving me -- hey, hey, |
| 11:03:45 | 10 | Ms. Henderson, you need to give me the amount of time |
| 11:03:47 | 11 | and the proper considerations to talk to my counsel.  I |
| 11:03:49 | 12 | am asking him a question, and you are interrupting. |
| 11:03:52 | 13 | Please stop.  Thank you. |
| 11:03:54 | 14 | THE WITNESS:  Michael Hayden, so can I see the |
| 11:03:56 | 15 | person that she is in the room with? |
| 11:04:01 | 16 | MR. HAYDEN:  You cannot.  There's |
| 11:04:02 | 17 | court reporters and all kinds of people in the room, but |
| 11:04:04 | 18 | I would -- |
| 11:04:05 | 19 | THE WITNESS:  No, no, no.  I am talking about |
| 11:04:05 | 20 | in Ms. Henderson's room.  Isn't -- |
| 11:04:06 | 21 | (Multiple Simultaneous Speakers.) |
| 11:04:07 | 22 | MS. HENDERSON:  So -- I am going to interrupt |
| 11:04:08 | 23 | because this is my deposition, and you can ask your |
| 11:04:09 | 24 | counsel about these types of while you are -- |
| 11:04:13 | 25 | (Multiple Simultaneous Speakers.) |

| | | |
|---|---|---|
| 11:04:14 | 1 | THE WITNESS:  Interrupt -- why are you |
| 11:04:15 | 2 | screaming?  Please, lower your voice. |
| 11:04:17 | 3 | MS. HENDERSON:  You can ask -- |
| 11:04:17 | 4 | (Multiple Simultaneous Speakers.) |
| 11:04:20 | 5 | THE WITNESS:  You are making me feel |
| 11:04:20 | 6 | threatened. |
| 11:04:20 | 7 | MS. HENDERSON:  You can ask -- okay. |
| 11:04:20 | 8 | THE WITNESS:  You are making me feel |
| 11:04:20 | 9 | threatened. |
| 11:04:20 | 10 | MS. HENDERSON:  Okay.  So at this point, I am |
| 11:04:21 | 11 | going to suspend the deposition, because the witness is |
| 11:04:25 | 12 | clearly noncooperative -- |
| 11:04:26 | 13 | (Multiple Simultaneous Speakers.) |
| 11:04:27 | 14 | THE WITNESS:  I am cooperative. |
| 11:04:27 | 15 | (Multiple Simultaneous Speakers.) |
| 11:04:27 | 16 | MS. HENDERSON:  -- let the record speak for |
| 11:04:28 | 17 | itself.  We can let the record speak for itself.  I will |
| 11:04:33 | 18 | be moving to compel -- |
| 11:04:33 | 19 | (Multiple Simultaneous Speakers.) |
| 11:04:36 | 20 | THE WITNESS:  Michael Hayden, you see this. |
| 11:04:36 | 21 | She's not giving me a chance to speak. |
| 11:04:37 | 22 | (Multiple Simultaneous Speakers.) |
| 11:04:37 | 23 | MS. HENDERSON:  -- and this is not over. |
| 11:04:39 | 24 | THE WITNESS:  She's not giving me any chance |
| 11:04:40 | 25 | to speak.  This is crazy.  This is ridiculous. |

DAYSTAR PETERSON                                         JOB NO. 1481293
APRIL 09, 2025

| | | |
|---|---|---|
| 11:04:41 | 1 | MS. HENDERSON:  Okay.  So, Ronny -- |
| 11:04:43 | 2 | (Multiple Simultaneous Speakers.) |
| 11:04:44 | 3 | THE WITNESS:  She's not even -- |
| 11:04:46 | 4 | MR. HAYDEN:  Let her make the record, though. |
| 11:04:47 | 5 | Let her make the record.  Let her make the record. |
| 11:04:47 | 6 | (Multiple Simultaneous Speakers.) |
| 11:04:48 | 7 | THE WITNESS:  She's not giving me a chance to |
| 11:04:49 | 8 | legally clarify, with my counsel, questions, and she's |
| 11:04:53 | 9 | getting frustrated, and now she's intimidating me by |
| 11:04:56 | 10 | screaming and raising her voice. |
| 11:04:58 | 11 | MS. HENDERSON:  Okay.  So I'm going to put on |
| 11:04:59 | 12 | the record that at this point, I am suspending the |
| 11:05:02 | 13 | deposition because the witness is clearly evading my |
| 11:05:06 | 14 | questions and is nonresponsive, and we will be moving to |
| 11:05:09 | 15 | compel this deposition with the court. |
| 11:05:12 | 16 | So, Mr. Peterson, this is not over, and we |
| 11:05:14 | 17 | will see you another day, which I'm sure -- I know you |
| 11:05:16 | 18 | said that you have all the time in the world.  So we |
| 11:05:19 | 19 | will see you again for Volume II of this deposition. |
| 11:05:22 | 20 | Thank you. |
| 11:05:22 | 21 | THE WITNESS:  Change your hair next time. |
| 11:05:26 | 22 | THE VIDEOGRAPHER:  If we are going to suspend |
| 11:05:27 | 23 | here, I just need to get transcript and video orders |
| 11:05:29 | 24 | for -- |
| 11:05:29 | 25 | (Multiple Simultaneous Speakers.) |

| | | |
|---|---|---|
| 11:05:34 | 1 | THE WITNESS:  Just comb it at least.  Will you |
| 11:05:34 | 2 | comb it at least? |
| 11:05:36 | 3 | THE COURT REPORTER:  We'll just do it after. |
| 11:05:36 | 4 | MS. HENDERSON:  Yes.  I will be ordering this |
| 11:05:37 | 5 | transcript and this video. |
| 11:05:37 | 6 | THE WITNESS:  Thank you so much.  Just comb |
| 11:05:37 | 7 | it.  That's all I ask. |
| 11:05:39 | 8 | THE VIDEOGRAPHER:  And, Ms. Henderson, would |
| 11:05:40 | 9 | you like it synced as well? |
| 11:05:42 | 10 | MS. HENDERSON:  Yes. |
| 11:05:43 | 11 | THE WITNESS:  A comb.  A comb.  Honeycomb. |
| 11:05:47 | 12 | THE VIDEOGRAPHER:  And, Mr. -- Mr. Hayden, |
| 11:05:48 | 13 | copy for you? |
| 11:05:49 | 14 | MR. HAYDEN:  No, thanks. |
| 11:05:50 | 15 | THE WITNESS:  A comb.  A comb. |
| 11:05:54 | 16 | THE VIDEOGRAPHER:  Mr. Pancier? |
| 11:05:57 | 17 | MR. PANCIER:  Negative. |
| 11:05:57 | 18 | (Multiple Simultaneous Speakers.) |
| 11:05:57 | 19 | THE WITNESS:  A brush.  Barbie brush. |
| 11:05:59 | 20 | (Multiple Simultaneous Speakers.) |
| 11:05:59 | 21 | THE VIDEOGRAPHER:  If there's nothing else, I |
| 11:05:59 | 22 | can go ahead and read us off here. |
| 11:05:59 | 23 | MS. HENDERSON:  Thank you. |
| 11:06:00 | 24 | THE WITNESS:  A comb. |
| 11:06:00 | 25 | THE VIDEOGRAPHER:  -- Volume I of the |

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

```
11:06:00   1    deposition of Daystar Peterson in the matter of
11:06:03   2    Megan Pete versus Milagro --
11:06:05   3                  THE WITNESS:  Bring a comb.
11:06:05   4              (Multiple Simultaneous Speakers.)
11:06:05   5              THE VIDEOGRAPHER:  -- Cooper.  Now off the
11:06:06   6    record.  The time is 11:06 AM Pacific time.
11:06:09   7              (Multiple Simultaneous Speakers.)
11:06:09   8              THE WITNESS:  Bring a comb.
11:06:09   9              MS. HENDERSON:  Thank you.
11:06:09  10              THE WITNESS:  Bring a comb.
11:06:09  11              (Proceedings concluded at 11:06 AM.)
11:06:09  12                        - - -
          13
          14
          15
          16
          17
          18
          19
          20
          21
          22
          23
          24
          25
```

```
 1              DECLARATION UNDER PENALTY OF PERJURY

 2

 3         I, the undersigned, declare under penalty of

 4    perjury that I have read the entire foregoing transcript

 5    of my deposition or the same has been read to me, and

 6    the same is true and accurate, save and except for

 7    changes, corrections, additions or deletions indicated

 8    by me on the DEPOSITION ERRATA SHEET hereof, with the

 9    understanding that I offer these changes as if still

10    under oath.

11

12         Signed on the _____ day of _____, 20___,

13    at _____, _____.

14            (City)                  (State)

15

16

17

18

19                       _____

20                          DAYSTAR PETERSON

21

22

23

24

25
```

DAYSTAR PETERSON
APRIL 09, 2025

JOB NO. 1481293

```
 1            I, RONNY ZAVOSKY, CSR No. 12359, certify that
 2   the foregoing proceedings were taken before me at the
 3   time and place therein set forth, at which time the
 4   witness was duly sworn and that the transcript is the
 5   true record of the testimony so given;
 6
 7            Witness review, correction and signature;
 8       ( ) shall be per venue code   ( ) was requested
 9       ( ) was not requested         ( ) was waived
10       ( ) not handled by the deposition officer due to
11           party stipulation
12
13            The dismantling, unsealing, or unbinding of
14   the original transcript will render the reporter's
15   certificate null and void.
16            I further certify that I am not financially
17   interested in the action, and I am not a relative or
18   employee of any attorney of the parties, nor of any of
19   the parties.
20            Dated this 14th day of April, 2025.
21
22
23            _____
24            RONNY ZAVOSKY, CSR NO. 12359
              CERTIFIED SHORTHAND REPORTER
25
```