UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MEGAN PETE, an individual,

        Plaintiff,                            Civil Action No. 1:24-cv-24228-CMA

v.

MILAGRO ELIZABETH COOPER,
an individual,

        Defendant.

---

**PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY CEASAR MCDOWELL SHOULD NOT BE SANCTIONED FOR DEPOSITION MISCONDUCT AND FOR RE-DEPOSITION**

    Pursuant to Magistrate Judge Reid's direction by email to the Parties and Ceasar McDowell on August 25, 2025, Plaintiff Megan Pete moves for an order to show cause why Mr. McDowell should not be sanctioned for deposition misconduct and requests a re-deposition under the Court's inherent authority.[1]

**PRELIMINARY STATEMENT**

    From the very first minute of his deposition, Mr. McDowell made clear he intended to obstruct. As he warned: **"This ain't going to go good. You know that; right?"**[2] And he kept his word. **Mr. McDowell responded "I don't remember" over 350 times, "I don't know" about 170 times, and "I don't recall" about 43 times—totaling over 550 evasive non-answers** that made meaningful testimony impossible.[3]

    Mr. McDowell's misconduct went far beyond feigned forgetfulness. On camera and under oath, Mr. McDowell rolled a cigarette filled with a substance resembling marijuana during

---

[1] Ms. Pete reserves her right to seek sanctions pursuant to Fed. R. Civ. P. 30 and 37.
[2] McDowell Dep. Tr. at 10:10-11, attached as Exhibit A.
[3] *See generally id.*

questioning, then smoked it during a break.[4]  He demanded painkillers,[5] threatened to urinate in the deposition room,[6] called Plaintiff's counsel a "b***h",[7] made inappropriate comments about her appearance,[8] and walked out mid-questioning.[9]  His conduct shocked the conscience and made a mockery of this Court's authority.[10]  In fact, after his deposition concluded, his own attorney agreed that he should sit for another deposition that would be supervised by the Magistrate Judge in this case.[11]  Because of his egregious behavior, the Court should sanction Mr. McDowell.

This case centers on the Defendant allowing herself to be used to broadcast defamatory statements about Ms. Pete at the urging and behest of the man who shot her.  The lawsuit arises from Defendant's false claims that Ms. Pete lied when she testified that Daystar Peterson, the rapper known as Tory Lanez, shot her in July 2020.  Daystar Peterson is currently serving a 10-year prison sentence for shooting Ms. Pete.  In an attempt to exonerate himself from prison, Daystar Peterson enlisted the Defendant to spread these defamatory statements.  Because Daystar Peterson was subject to anti-harassment orders barring him from making such statements about Ms. Pete himself, he uses intermediaries to communicate this information to Defendant.

---

[4] *Id.* at 79:20-23 ("Q: You don't know, as the CEO of your own company, if being on the board is the same as being -- A: You don't mind if I roll one of these while we talk; right?").

[5] *See, e.g., id.* at 132:9-11 ("Q: So who helps you with the social media posts for UTP? A: I don't know. Hey, do you have any Tylenol? My tooth is starting to kill me. I don't know."); 198:9-20 ("MS. HAYRAPETIAN: So marking as Exhibit 100, Tab 18. MS. DIXON: I just had 92. THE WITNESS: We have to take a break in a minute. I'm going to have to get some more Tylenol. What time did I take that Tylenol at? What time was the lunch break? Was it lunch break when I took the Tylenol? It was before the lunch break? MR. HAYDEN: We're still on the record, guys.").

[6] *Id.* at 81:15-82:14 ("Q: Let me finish. I have one question left. A: No, no. You are just saying I finished the question. You just finished your question, and I answered. I gotta go pee. Now, I can pee here, or I can pee in the bathroom. MR. HAYDEN: Let's just get through her question. Let's move this along, guys -- everybody. Come on.").

[7] *Id.* at 242:17-25 ("MS. HAYRAPETIAN: And I will just reflect for the record, because I'm not sure if it picked it up, but while a question was pending, the witness walked off, left the room, while he was still speaking, and he called me a -- a "B***h" and asked what the f**k is wrong with me.").

[8] *Id.* at 65:20 ("A: You have nice hair too.").

[9] *See, e.g., id.* at 82:15-17 ("MS. HAYRAPETIAN: Please, have the record reflect that the witness has walked off in the middle of my questioning."), 242:17-25.

[10] If the Court would find it helpful, Ms. Pete will furnish the Court with the videotaped record these parts of the deposition.

[11] *See* Email between D. Humphrey and M. Hayden, attached as Exhibit B.

One intermediary is the deponent, Ceasar McDowell, a close friend of Daystar Peterson. Mr. McDowell is the founder and CEO[12] of Unite the People (UTP)—the organization that represented Daystar Peterson during his appeal. UTP also represented Defendant for the first six months of this litigation[13] and continues to represent Daystar Peterson in his appellate proceedings. The conflicts of interest among them are undeniable, as acknowledged by Daystar Peterson himself.[14] Daystar Peterson sits on UTP's advisory board and has donated substantial funds to the organization, including $50,000 to pay legal fees for other clients.[15] Plaintiff's counsel deposed Mr. McDowell on July 25, 2025. His testimony is critical to proving how Daystar Peterson circumvents court orders. It is also necessary to demonstrate the scope of damages resulting from their campaign of harassment. And Ms. Pete sought the deposition to prove that UTP and Mr. McDowell use their relationship to funnel false information from the shooter, Daystar Peterson, through Defendant into the public domain. Mr. McDowell knows that. He has every reason to be combative and uncooperative to protect not only Daystar Peterson but himself. That's exactly what he did. And that's exactly why court supervision of his deposition is necessary.

Discovery also shows that Mr. McDowell provides misinformation to Defendant about Daystar Peterson's ongoing legal proceedings, which Defendant parrots to defame Ms. Pete. UTP has made public statements on Daystar Peterson's behalf regarding this case[16] and provides him updates about Ms. Cooper's representation.[17] Mr. McDowell is not a lawyer and is not licensed to practice law. As UTP's CEO, Mr. McDowell had a duty not to impede these proceedings and

---

[12] McDowell Dep. Tr. at 20:9-12.
[13] ECF Nos. 19, 80.
[14] McDowell Dep. Ex. 84-B; McDowell Dep. Tr. at 12:2-7 (In a recorded prison call on October 30, 2024, Daystar Peterson asked Mr. McDowell whether Unite the People might have a conflict of interest in representing Ms. Cooper, given Daystar Peterson's role on Unite the People's "Board of Advisory," among other factors.).
[15] See McDowell Dep. Ex. 78 ("Canadian rapper, singer-songwriter, and record producer Tory Lanez stopped by the Unite the People office in Downtown Long Beach and donated $50,000 to pay off the legal fees for 30 families on Friday."); McDowell Dep. Ex. 114 (profiling Tory Lanez as an advisory member of Unite the People).
[16] See ECF No. 65-2 (statement from Ceasar McDowell, CEO of Unite the People stating, "if you know Tory Lanez how i [sic] do, good luck trying to get him to 'testify' to anything, it's just not what he does… and he definitely did not 'agree' to testify now.").
[17] See, e.g., McDowell Dep. Tr. at 124:5-125:25 ("Q: [O]n this October 30th call, you read Tory a press release that UTP would issue the next day [about representing Ms. Cooper]; correct? A: Sound like it.").

3

participate in his deposition in good faith. Instead, Mr. McDowell refused to answer most questions. In the rare instances he did respond, his testimony was evasive, implausible, and often contemptuous:

> Q: As CEO, are you responsible for determining the overall vision and objectives of UTP?
> A: Maybe.
> Q: Maybe?
> A: Yeah.
> Q: What does that mean?
> A: Well, I'm not a dictator.[18]
>
> Q: [M]ost of UTP's work involves post-conviction matters; correct?
> A: I don't remember.
> Q: You are the CEO of Unite the People, you don't know whether most of UTP's work involves post-conviction matters?
> A: I don't remember.
> Q: Does a large amount of UTP's work involve post-conviction matters?
> A: Yes.
> Q: UTP focuses on helping prisoners with appeals and sentence reductions; correct?
> A: I don't remember.[19]
>
> Q: So if we go to the judge in this case - -
> A: Uh-huh. Let's go.
> Q: - - who are you going to tell her has the responses to these questions since you don't know or you don't remember?
> A: I don't know. Let's do it.[20]

At one point, when asked to verify an Instagram post, Mr. McDowell mocked opposing counsel:

> Q: Do you recall making that post?
> A: I don't remember.
> Q: Any reason to doubt these are your words?
> A: I would absolutely doubt that these are my words.
> …
> Q: Okay. Well, you are welcome to pull out your Instagram and go to this post and compare it. Do you want to do that, if you don't believe me? We have time. We can do it on a break.
> A: We can do it all day.
> Q: Yeah.
> A: Hey, I have nothing to do today.

---

[18] *Id.* at 27:15-21.
[19] *Id.* at 112:2-16.
[20] *Id.* at 129:16-21.

      Q:     Same. I'm so glad.
      A:     You feel me. That's what I'm talking about. Yeah. You want to do lunch after this?
      Q:     Actually, we ordered lunch so, yeah.
      A:     Did you?
      Q:     Yeah, yeah.
      A:     I would not eat nothing from you people.[21]

Mr. McDowell's obstruction is part of a coordinated effort by key third parties to prevent the court and jury from learning the truth about their defamation campaign against Ms. Pete. Just weeks before Mr. McDowell's deposition, this Court held Daystar Peterson in contempt for deploying identical tactics—feigning ignorance, making inappropriate comments about counsel's appearance, and refusing to cooperate.[22] And Livingston Allen, the social media personality known as DJ Akademiks, who worked with Defendant and received information from Messrs. Peterson and McDowell to spread false narratives about Ms. Pete, similarly obstructed his deposition with evasive testimony and selective memory loss.[23] All three men—Messrs. Peterson, McDowell, and Allen—used the same strategy of systematic evasion when discovery threatened to expose their coordination. Their synchronized obstruction reveals a coordinated effort to shield their defamation campaign from scrutiny and prevent Ms. Pete from obtaining evidence of the damages it caused.

## II. SANCTIONS AGAINST CEASAR MCDOWELL FOR HIS DISCOVERY MISCONDUCT ARE WARRANTED

"Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. The Court's inherent power to police itself and assert its judicial authority extends to non-parties. *See id*. at 44; *Universal Oil Prods. Co. v. Root Refining Co.*, 328 U.S. 575, 580 (1946) ("The power to unearth such a fraud is the power to unearth it effectively. Accordingly, a federal court may bring before it by appropriate means *all those who may be affected by the outcome of its investigation*.") (emphasis added). It

---

[21] *Id*. at 61:11-62:14.

also "extends to a full range of litigation abuses" and permits the Court to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45–46.

"Invocation of a court's inherent power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995); *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking a court's inherent power is a finding of bad faith."). To impose sanctions against a non-party, the party seeking sanctions must show that the non-party "(1) ha[s] a substantial interest in the outcome of the litigation and (2) substantially participate[s] in the proceedings in which he interfered." *Helmac Products Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993) (cited affirmatively by *Sciaretta v. Lincoln Nat'l Life Ins. Co.*, 2013 WL 11317858, at *5 n.18 (S.D. Fla. April 6, 2013) (sanctioning non-party $850,000)). Sanctions against Mr. McDowell are appropriate here for the following reasons.

### A. Mr. McDowell's Inappropriate Conduct Establishes Bad Faith.

A non-party demonstrates bad faith by "delaying or disrupting the litigation." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009). Bad faith also occurs when non-parties "engage[] in an unrelenting campaign to obfuscate the truth." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1544 (11th Cir. 1993). And bad faith occurs when deponents disrupt the basic administration of a deposition with outrageous behavior. In *Ludwin v. Proman*, 2021 WL 4775014 at *1–3 (S.D. Fla. Oct. 13, 2021), the court "easily f[ound] that Defendant['s] [] conduct at the deposition constituted intentional, bad faith misconduct" and issued sanctions under its inherent authority because the defendant "was combative and confrontational during his deposition," was "smirking, cursing and yelling at Plaintiffs' counsel," "flippantly" refused to cooperate with basic instructions, watched television, cooked pasta, and drank wine during his remote deposition, amongst other inappropriate behavior. *Id.* The court reached its conclusion because "it is essential that the parties, attorneys, and witnesses participating in depositions conduct themselves with civility and decency." *Id.* at *1 (citation and quotation omitted).

Mr. McDowell's conduct during his deposition was utterly disrespectful, uncivil, and antagonistic—deserving this Court's condemnation. It was a masterclass in bad faith. As detailed above, Ms. Pete sought Mr. McDowell's deposition because he serves as Peterson's key intermediary, funneling false information to Defendant who broadcasts it publicly. His testimony was critical to proving this coordination and how Peterson circumvents court orders through

6

intermediaries. Instead of cooperating during his deposition, Mr. McDowell was combative and confrontational, harassed Plaintiff's counsel with antagonistic comments, and engaged in immature and childlike conduct. Like the deponent in *Ludwin*, Mr. McDowell disrespected the judicial process when he rolled and smoked what appeared to be a marijuana cigarette during the deposition, threatened to urinate in the deposition room, and was disrespectful to Plaintiff's counsel and staff. Mr. McDowell also offered false and evasive testimony, claiming he could not recall basic yes or no questions, even when presented with his own communications on the very subject he claimed he could not remember. McDowell Dep. Ex. 77; McDowell Dep. Tr. at 58:24-62:14 (When confronted with an Instagram post bearing his name as author and his signature as CEO of UTP, McDowell claimed he did not recall making the post and "absolutely doubt[ed] that these [were his] words."). *See Githieya v. Glob. Tel*Link Corp.*, 608 F. Supp. 3d 1290, 1329 (N.D. Ga. 2020) ("[F]alse testimony intentionally led Plaintiffs astray during discovery and litigation of this case" and established "bad faith litigation conduct" that warranted sanctions.). Mr. McDowell's "improper, disruptive, and contemptuous behavior made any semblance of a deposition impossible. In effect, [he] commandeered his deposition and turned it into a train wreck." *Ludwin*, 2021 WL 4775014, at *2. His behavior offers the Court grounds to "easily find[]" bad faith. *Id*. at *3. The Court should issue sanctions under its inherent authority to remedy Mr. McDowell's "improper and obstructionist behavior, and to protect the dignity of the Court and the deposition process." *Id*. at *2.

    **B.**  **Mr. McDowell Has A Substantial Interest In The Outcome Of This Litigation.**

  Mr. McDowell is CEO of UTP, which represented Defendant for six months and continues to represent Daystar Peterson—Ms. Pete's assailant who is serving prison time for shooting her. Mr. McDowell's financial stake in this litigation runs deep. Despite promising pro bono representation, Defendant paid Mr. McDowell for services before he abruptly stopped returning her calls when the case became difficult. Cooper Dep. Tr. at 92:14-18, ECF 120-1 (Ms. Cooper: "It was supposed to be pro bono. Ceasar told me because of Unite the People's role, that I needed to pay him directly. I started a campaign on GiveSendGo, I withdrew the money, and I sent it to Ceasar via Zelle in increments. I had sent maybe about 9,000.").

  Mr. McDowell's action also demonstrates a vested interest in the outcome of this litigation. Mr. McDowell, through UTP, acts as the primary conduit between Daystar Peterson and outside supporters like Defendant. Prison call logs show that Mr. McDowell spoke with Daystar Peterson

7

dozens of times about Defendant and this case, including updates about Defendant's representation, coordinating public relations messaging about Defendant and this case, and crafting media strategies to respond to media inquiries. McDowell Dep. Ex. 84-B, McDowell Dep. Tr. at 7:15-13:14 (McDowell explaining to Peterson UTP representation of Defendant Cooper); *see also* McDowell Dep. Tr. at 149:2-156:20, Ex. 86 (call logs demonstrating calls between McDowell and Peterson).

Mr. McDowell faces potential liability himself—both for his organization's role in the defamation campaign and for his personal misconduct in this litigation. His obstruction protects not just Daystar Peterson and Defendant Cooper, but his own interests. *See Helmac Prods. Corp.*, 150 F.R.D. at 565 (finding test met where nonparty was the owner of the corporate party and the director of the activities that led the Court to grant a default judgment as to liability).

### C. Mr. McDowell Substantially Participated In These Proceedings.

From the moment Ms. Pete filed suit, Mr. McDowell and UTP have inserted themselves into this litigation and participated in it. Mr. McDowell and UTP initially agreed to represent Defendant and issued a press release announcing the engagement. Instagram Post by Unite the People, October 31, 2024, attached as Exhibit C. They also offered to take on "any other social media influence, journalism platform, journalist, podcast, or reporter of any type that has *received this lawsuit against them* or any other form of bullying/harassment to silence them from their right to free speech." Ex. C (emphasis added). Mr. McDowell has engaged in text conversations with Defendant about other witnesses in this case, like Livingston Allen. McDowell Dep. Ex. 96. Further, Mr. McDowell authored and distributed a statement from the UTP's Instagram account regarding the deposition of Daystar Peterson. McDowell Dep. Ex. 100. In that statement, Mr. McDowell previewed the obstruction he would unleash during his own deposition when he wrote that "if you know Tory Lanez how i do, good luck trying to get him to 'testify' to anything, it's just not what he does… and he definitely did not 'agree' to testify now." ECF No. 65-2.

*Helmac* is instructive. There, the court issued sanctions against a non-party chief executive officer who "played an active role in the conduct of this litigation" when he obstructed discovery by "ordering the destruction of [company] documents." *Helmac Prods. Corp.*, 150 F.R.D. at 565–68. Here, Ms. Pete alleges that Mr. McDowell and UTP play an active role in the obstruction of discovery in this litigation. Mr. McDowell encouraged Daystar Peterson not to comply with a court-ordered deposition. Mr. McDowell acted in bad faith at his own deposition. And evidence

in this case has shown that Mr. McDowell conspires with third-party witnesses to withhold and evade Ms. Pete's discovery requests. Mr. McDowell's actions are not passive. He is an active participant in this action and obstructing Ms. Pete's access to the truth. Sanctions are appropriate.

## CONCLUSION

Mr. McDowell's conduct transformed a court-ordered deposition into a spectacle of contempt. To protect the integrity of this Court's processes and obtain necessary discovery, Ms. Pete respectfully requests that the Court order a second, court-supervised deposition of Mr. McDowell and require him to bear the costs and attorney's fees incurred from his misconduct.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion. Specifically, undersigned counsel conferred with counsel for Mr. McDowell by email on August 5-6, 2025, and Mr. McDowell did not object to a court-supervised deposition and did object to an award of attorney's fees. Further, counsel for Defendant stated in communications with the Court she would not appear at a hearing regarding sanctions pertaining to Mr. McDowell.

Dated:  August 28, 2025

QUINN EMANUEL URQUHART & SULLIVAN, LLP

/s/ Daniel L. Humphrey
John F. O'Sullivan (Fla. Bar 472913)
Daniel L. Humphrey (Fla. Bar 1024695)
johnosullivan@quinnemanuel.com
danielhumphrey@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
2601 South Bayshore Drive, Suite 1500
Miami, FL 33133
(305) 402-4880

Mari F. Henderson (pro hac vice)
Marie Hayrapetian (pro hac vice)
Julian T. Schoen (pro hac vice)
marihenderson@quinnemanuel.com
mariehayrapetian@quinnemanuel.com
julianschoen@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Joanna Menillo (pro hac vice)
joannamenillo@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 Fifth Avenue
New York, NY 10016
(212) 849-7050

*Attorneys for Plaintiff Megan Pete*

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 28, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel who are not authorized to receive Notice of Electronic Filing. I also certify that I am serving Mr. McDowell through email at the below ceasar_mcdowell@unitethepeople.org and will mail via certified mail a copy of this Motion to his last known address and Unite the People's Office.

Dated:  August 28, 2025

                /s/ Daniel L. Humphrey
                Daniel L. Humphrey
                Florida Bar No. 1024695