**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

MEGAN PETE, an individual

*Plaintiff,*                                                           Civil Action No. 1:24-cv-24228-CMA

v.

MILAGRO ELIZABETH COOPER,
an individual,

*Defendant.*

---

**PLAINTIFF'S REPLY IN SUPPORT OF MEMORANDUM OF LAW**
**REGARDING DEFENDANT'S NON-MEDIA STATUS [ECF No. 183]**

Defendant does not inform or initiate uninhibited, robust, and wide-open debate on public

issues nor is she disinterested in her communications. She therefore does not qualify as a media

defendant even if she makes money from her defamatory conduct. Defendant's brief misses the

mark on the legal standard to determine whether a defendant qualifies as a "media defendant" and

relies on conjecture untied to evidence in the record in an attempt to show Defendant as one.

"By definition, all news media disseminates information, but it is a syllogism to conclude

. . . that all those who disseminate information automatically qualify as news media. The function

of the media is to inform and initiate 'uninhibited, robust, and wide-open debate on public issues.'"

*Ortega Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1338 (S.D. Fla. 1998). While

some Florida courts have applied this exception to more modern forms of media like "blogs," *see*

*San Juan Prods., Inc. v. River Pools & Spas, Inc.*, 2023 WL 1994087, at *3 (M.D. Fla. Feb. 14,

2023)*, the crux of the analysis is not one of form but of function. Florida law only shields

"disinterested communications of matters of public concern" by "members of the media" from

defamation suits without pre-suit notice. *Rendon*, 2025 WL 1482420, at \*4 (quoting *Ortega Trujillo*, 17 F. Supp. 2d at 1338). Whether a blog is operated as a business venture is not determinative as to whether the blog owner is a media defendant. *See San Juan Prods., Inc.*, 2023 WL 1994087, at \*3 (M.D. Fla. Feb. 14, 2023) (holding business that operated blog for business purposes did not qualify for protections as a "media defendant" because it was not "operated to further the free dissemination of information or disinterested and neutral commentary or editorializing as to the matters of public interest.").

This case is like *Techtronic Industries Company Limited v. Bonilla*, 2025 WL 2687164, at \*6 (M.D. Fla. Sept. 19, 2025). In *Techtronic*, defendant Bonilla published two research reports on his website alleging that publicly traded plaintiff TTI engaged in accounting manipulation and fraud against Home Depot. The court held that Bonilla was not a "media defendant" entitled to pre-suit notice under § 770.01, Florida Statute, because his reports proclaimed bias and self-interest rather than serving as a vehicle for "free dissemination of information or disinterested and neutral commentary." *Id.* at \*6 (quoting *McQueen v. Baskin*, 377 So. 3d 170, 179-80 (Fla. 2d DCA 2023)). The court distinguished *Comins v. Vanvoorhis*, 135 So. 3d 545, 557 (Fla. 5th DCA 2014) (finding blogger was media defendant where blog provided "disinterested and neutral commentary"), emphasizing that Bonilla's own disclaimers stated "We are biased and self-interested" and "we may have non-aligned or even directly opposing incentives from yours." *Id.* The court concluded that Florida courts focus on "whether the defendant engages in the traditional function of the news media, which is to initiate uninhibited, robust, and wide-open debate on public issues," and Bonilla's self-described bias disqualified him from that category. *Id.* (quoting *McQueen*, 377 So. 3d at 180). Likewise, here, Ms. Cooper has stated definitively that her commentary is "not meant to be a news report" and that she "did not tell anybody that I was a

reporter." [ECF No. 183 at 3]. Likewise, Defendant Cooper has said that "I don't think I'm anything, but I know I'm the person that gets under y'all's skin. . . You don't need to be a journalist to see something and give an opinion about it. So my whole thing is, if I'm not trying to be a journalist, and you know I'm not, what the fuck you mad about? Because I shouldn't be regarded as a news source any damn way." [*Id.*].

After a week of trial testimony, Plaintiff has shown by more than a preponderance of the evidence that Defendant's publications at issue in this case are anything but "disinterested communications." In fact, Defendant admitted to supplying information she gathered to the Peterson Group in an attempt to prove Mr. Peterson's innocence. *See* Joint Exhibit 19, email between M. Cooper and S. Peterson dated Nov. 25, 2022, Trial Tr. Nov. 18, 2025 (53:7-9) (email from Defendant Cooper to Sonstar Peterson in which she sends information attacking Plaintiff's character and stating "Attached are things that MAY be of value. Hopefully they are."). Defendant Cooper admitted to sending this email to Sonstar Peterson in an effort to try and show that Daystar Peterson was innocent. Trial Tr. Nov. 18, 2025 (54:2-4 ("And hopefully – I thought that Tory was free – I mean innocent, sorry. So I did think it would help and it could be of value because why would they say that."). She also admitted to receiving payments from the Petersons on various occasions. Trial Tr. Nov. 18, 2025 (144:21-145:7) (admitting payments received from Sonstar Peterson).

Beyond supplying information to the Petersons and receiving payment, Defendant also published information that she received from Sonstar Peterson with no independent corroboration and pushed it out to the masses in order to sway public sentiment. *See* Trial Tr. Nov. 18, 2025 (35:9-24 (Q: Okay. Any reason to deny that you talked to Sonstar before you sent this tweet about the DNA evidence? A: No, we spoke all the time.)). No case has ever found that a blogger who is

supplying and receiving information in an effort to affect criminal proceedings is entitled to be

considered news media. Finding so now would render the "disinterested" piece of the test obsolete.

Further testimony elicited at trial further illustrates the point that Defendant Cooper was not

disinterested and neutral:

- Defendant promoted a harassing video of Daystar Peterson butchering a horse's leg—a reference to Plaintiff. Trial Tr. Nov. 17, 2025, J-15 (139:10-15).

- Defendant admitted that she brought attention to a deepfake pornographic video of Plaintiff. Trial Tr. Nov. 17, 2025 (154:18-156:3).

- "[Sonstar] paid me to do promo a couple of times for him, for some of his own endeavors." Trial Tr. Nov. 17, 2025 (202:13-14).

- "Q. This is accurate as far as it shows the payments from Sonstar to you, yeah? A. I believe so." (Defendant confirming receipt of six payments from Sonstar between October 28, 2020 and March 3, 2022). Trial Tr. Nov. 18, 2025 (145:5-7).

- "[Sonstar] referenced me as daughter" (Defendant describing her close personal relationship with Sonstar). Trial Tr. Nov. 18, 2025 (22:8–9).

- "[I]n this instance, we were going to a separate studio. So because of the fact that it was interest on Sonstar's behalf, about what he wanted to discuss and it was in Miami, which is not in Houston where I'm based, this is something that's extra for me, those accommodations were made." Trial Tr. Nov. 17, 2025 (148:22–149:1) (Defendant confirming receipt of paid travel accommodations for a meeting with Sonstar in Miami).

- "I don't know how you're doing your live tonight, but if you gave me that or any exclusive, it would change my life" Trial Tr. Nov. 17, 2025 (198:3–8) (Defendant confirming receipt of an Instagram direct message from Daystar and acknowledging that securing an interview with Daystar would have dramatically altered her career for the better).

- "I said, Okay, I appreciate you so much and will without a doubt keep my lips sealed. You have my word." (Defendant stating that would keep conversations in confidence with Sonstar in November 2020). Trial Tr. Nov. 18, 2025 (11:10–11).

- "In this instance, from my perspective, anything he would have said in that conversation would have been off the record. It seems like to me he's saying I want to talk off the record. So to me that would have been whatever he wanted to discuss." (Defendant discussing the terms of her arrangement with Sonstar). Trial Tr. Nov. 17, 2025 (13: 2–5).

- "That was a three-way call that lasted maybe less than ten minutes." (Defendant admitting she had a call with Sonstar and Daystar on September 25, 2020). Trial Tr. Nov. 18, 2025 (22: 23–24).

On the other hand, Defendant's Memorandum is completely untied to admissible evidence that has been proffered or shown at trial. First, it relies on a purported "StationHead" contract that was never produced in discovery, has not been admitted as evidence, and is otherwise not determinative of whether Defendant Cooper qualifies as a "media defendant." Second, few—if any—of the "Material Facts" relied on in Defendant's Memorandum were ever introduced in evidence during trial. [ECF No. 207, 2-3]. Defendant's Memorandum also contains no exhibits advancing any of this evidence for the first time.

The statements that have been admitted into evidence demonstrate a complete absence of impartiality, journalistic integrity, or desire to tell anything but a one-sided, defamatory story. They do not show that Defendant Cooper "impartially disseminat[ed] information" or "issu[ed] unsolicited disinterested and neutral commentary." *Ortega Trujillo*, 17 F. Supp. 2d at 1338. Rather, the evidence at trial shows that Defendant was commissioned by Sonstar and Daystar Peterson to use Defendant's platform to disseminate misinformation and charged commentary (such as Ms. Pete's alleged mental status or family background)—exactly the kind of behavior that disqualifies any individual from enjoying the privileges of media defendant status.

The Court should conclusively hold—again—that Defendant Cooper is a non-media defendant.

Dated:  November 23, 2025

QUINN   EMANUEL   URQUHART   &amp;
SULLIVAN, LLP

*/s/ Daniel L. Humphrey*

Mari F. Henderson (pro hac vice)
Marie Hayrapetian (pro hac vice)
Julian Schoen (pro hac vice)
marihenderson@quinnemanuel.com
mariehayrapetian@quinnemanuel.com
julianschoen@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

John O'Sullivan (Fla. Bar No. 143154)
Daniel L. Humphrey (Fla. Bar No. 1024695)
johnosullivan@quinnemanuel.com
danielhumphrey@quinnemanuel.com
QUINN   EMANUEL   URQUHART   &amp;
SULLIVAN, LLP
2601 S. Bayshore Dr., Suite 1500
Miami, FL 33133
(305) 402-4880

Joanna E. Menillo (pro hac vice)
Stephanie Kelemen (pro hac vice)
joannamenillo@quinnemanuel.com
stephaniekelemen@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
295 Fifth Avenue
New York, New York 10010
(212) 849-7050

*Attorneys for Plaintiff Megan Pete*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of November 2025, I caused a true and correct copy of this Memorandum of Law to be filed using CM/ECF which caused a true and correct copy to be served on all counsel of record.

/s/ Daniel L. Humphrey

Daniel L. Humphrey

Florida Bar No. 1024695

6