UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 24-24228-CIV-ALTONAGA

MEGAN PETE, an individual

    *Plaintiff,*

v.

MILAGRO ELIZABETH COOPER,
an individual,

    *Defendant.*
_____/

### DEFENDANT'S MOTION FOR DIRECTED VERDICT ON PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Defendant Milagro Elizabeth Cooper respectfully moves for a directed verdict on Plaintiff Megan Pete's claim for Intentional Infliction of Emotional Distress ("IIED"). Plaintiff has failed to establish the essential elements of this tort as a matter of law. No reasonable jury could find in her favor on this claim based on the evidence presented at trial.

### INTRODUCTION

Defendant Milagro Cooper is an independent broadcaster and online commentator who hosts a trademarked radio show, *Mobz Radio*, on the Stationhead platform. As part of her daily programming, she discusses pop culture, legal controversies, and celebrity news. Her commentary often includes high-profile criminal trials, including the prosecution of Daystar Peterson (professionally known as Tory

Lanez), in which Plaintiff Megan Pete (professionally known as Megan Thee Stallion) was a key witness.

Plaintiff's claim for intentional infliction of emotional distress is based entirely on Defendant's public commentary and livestream discussions concerning the Tory Lanez trial and its aftermath. Plaintiff alleges that Defendant's statements—broadcast through YouTube and other digital platforms—caused her emotional harm. Plaintiff has not alleged any personal contact, threats, or direct targeting beyond public speech about a newsworthy criminal proceeding.

## LEGAL STANDARD

To prevail on a claim for IIED under Florida law, a plaintiff must prove:

1. The defendant's conduct was intentional or reckless;
2. The conduct was outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community;
3. The conduct caused emotional distress; and
4. The emotional distress was severe.

*See Metropolitan Life Insurance Co.* v. McCarson, 467 So. 2d 277, 278 (Fla. 1985); *Smith v. Volusia County*, No. 6:11-cv-35-Orl-28GJK, 2011 U.S. Dist. LEXIS 46479, at *17 (M.D. Fla. April 28, 2011).

Florida courts apply a high bar for IIED claims, requiring conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Liberti v. Walt Disney World Co.*, 912 F. Supp. 1494, 1504 (M.D. Fla. 1995) (applying Florida law). Mere insults, indignities, or annoyances, even if malicious, do not

suffice. *See Metropolitan*, 467 So. 2d at 278–79; *Foreman v. City of Port St. Lucie*, 294 F. App'x 554, 557-58 (11th Cir. 2008) (Violent, rude, abrasive, or even mean-spirited conduct is insufficient under Florida law).

Florida and federal courts applying Florida law routinely reject IIED claims based on verbal insults, harsh criticism, or professional mistreatment. *See, e.g.*, *Liberti*, 912 F. Supp. at 1504 (allegations of workplace harassment failed to state claim for IIED); *Williams v. Worldwide Flight Servs.*, 877 So. 2d at 869 (Fla. 3d DCA 2004) (no extreme and outrageous conduct where an employee claimed that employer called him the "n-word," forced the employee to work in dangerous outdoor conditions loading and unloading aircraft, eliminated his break time, and created a false disciplinary record for stealing to support the employee's wrongful termination); *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862 (Fla. 3d DCA 2017) (an employer's conduct falsely reporting that employee was committing insurance fraud which led to his arrest was found not to be extreme and outrageous for purposes IIED); *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993) (misrepresentations and threats not actionable).

## ARGUMENT

### I. The Conduct Alleged — Online Commentary — Does Not Rise to the Level of Outrageousness Required Under Florida Law

One basis for Plaintiff's IIED claim is Defendant's online commentary about Plaintiff's public role in the trial of Daystar Peterson. Defendant's speech, however pointed, critical, or unpopular, is speech on a matter of public concern and does not remotely approach the level of *outrageousness* Florida law requires. *See Rubin v. United*

*States News & World Report, Inc.*, 271 F.3d 1305, 1308-09 (11th Cir. 2001); *see also Synder v. Phelps*, 562 U.S. 443, 453 (2011) ("The arguably 'inappropriate or controversial' character of a statement is irrelevant to the questions whether it deals with a matter of public concern.") (citing *Rankin v. McPherson*, 483 U.S. 378, 387, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987).

## II. Commentary on Public Controversies is Protected Under the First Amendment

Much of the speech Plaintiff challenges is commentary related to a high-profile criminal trial, in which Plaintiff testified. As such, it is protected speech. The First Amendment bars recovery for IIED based solely on offensive speech regarding public controversies or figures. *See Snyder*, 562 U.S. at 444 ("[S]peech on public issues occupies the highest rung of the hierarchy of First Amendment values."); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 52 (1988) (holding that public figures cannot recover for IIED without showing a false statement made with actual malice).

Plaintiff is a Grammy-winning public figure who publicly testified in a nationally covered trial. Defendant's commentary regarding that trial and related matters is squarely within protected discourse. Allowing recovery under these circumstances would chill public discussion on matters of significant societal interest.

## III. Promotion of an Altered Sexual Depiction was not Extreme and Outrageous Conduct to support an IIED claim

F.S. § 836.13(1)(f) provides an avenue for plaintiffs to seek a remedy for any damages for promotion of an altered sexual depiction. For purposes of IIED, the

promotion of an altered sexual depiction is not extreme and outrageous consistent with Florida caselaw.

In *Cape Publ'ns v. Bridges*, the court reversed a jury's award for IIED, holding that the publication of a photograph of the plaintiff, who was forced to disrobe during a time her ex-husband was holding her hostage, did not meet the test of outrageousness. The court emphasized that the story and photograph were newsworthy and of public interest, and courts should be reluctant to interfere with a newspaper's privilege to publish such material. *Cape Publ'ns v. Bridges*, 423 So. 2d 426 (Fla. 5th DCA 1982).

Here, the Defendant was live broadcasting on her radio station when an audience member provided her with news that a sexual video of the Plaintiff had surfaced online. The audience member sent the video the Defendant on her Instagram account. The Defendant then took to her X (formerly known as Twitter) account and invited followers to go to her "likes". It was ultimately determined that the video was not truly real and was actually a "deepsake" artificially generated and altered. Even if this Court finds that conduct sufficient for promoting an altered sexual depiction the promotion is still not extreme and outrageous conduct.

### IV.   Plaintiff Failed to Show Severe Emotional Distress Caused by Defendant

Even if Plaintiff experienced emotional distress, she has not proven that Defendant's conduct—as opposed to the traumatic underlying events or widespread media scrutiny and promoting a deepfake video—was the proximate cause. Florida law requires more than evidence of stress or offense; it requires "severe emotional distress." *Liberti*, 912 F. Supp. at 1504.

**V.     At this Stage of the Proceeding the Court's Analysis is Different and the Court Should Find that no Reasonable Juror Could Find for the Plaintiff on this claim.**

The Court's previous order, denying Ms. Cooper's Motion to Dismiss Plaintiff's claim for IIED was based on the limited record before the Court at the Motion to Dismiss phase. The Court's previous order states "'The lack of any record evidence at this point concerning' Plaintiff's 'mental state' and Defendant's 'level of knowledge about it' precludes such an early determination." At the close of evidence, The Plaintiff's mental state and Ms. Cooper's lack of knowledge of her mental state have been on full display. Ms. Cooper has testified that she did not have knowledge of the Plaintiff's mental state. Ms. Pete herself testified that she was diagnosed with PTSD this year. Thus Ms. Cooper did not know that Ms. Pete had PTSD.  Ms. Cooper has never directly contacted Ms. Pete. not publicly nor directly. Ms. Pete also never informed Ms. Cooper of her mental state. Ms. Cooper did not know that Ms. Pete had a vulnerable mental state in order for any infliction to be intentional.

## CONCLUSION

The IIED claim falls far short of the stringent standard under Florida law. At most, Plaintiff has presented evidence of *criticism* and *unwelcome opinions* expressed in the public sphere. That is not outrageous conduct—it is protected speech.

Accordingly, Defendant respectfully requests that the Court grant a directed verdict on the IIED claim.

**Respectfully submitted,**

_/s/ Jeremy McLymont, Esq._
AsiliA Law Firm, P.A.
33 SW 2nd Ave. Ste. 1100
Miami, FL 33130
Tel. (786) 420.3014
Jeremy@asilialaw.com
Florida Bar No.1010776
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of November 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: _/s/ Jeremy McLymont_
Jeremy McLymont, Esq.
Florida Bar No. 1010776
