FILED BY_____D.C.

JAN 12 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.: 24-24228-CIV-ALTONAGA

MEGAN PETE,

      Plaintiff,

v.

MILAGRO ELIZABETH COOPER,

      Defendant.

_____/

## DEFENDANT MILAGRO ELIZABETH COOPER'S PRO SE RESPONSE AND REPLY

## IN OPPOSITION TO PLAINTIFF'S MOTION FOR PERMANENT INJUNCTION

Defendant, Milagro Elizabeth Cooper, appearing pro se, respectfully submits this consolidated Response and Reply in Opposition to Plaintiff's Motion for Permanent Injunction. Plaintiff seeks an extraordinary and unconstitutional restraint on protected speech that is unsupported by the record, contrary to the jury's findings, and inconsistent with controlling First Amendment law.

### I. INTRODUCTION AND PROCEDURAL POSTURE

Plaintiff's request for a permanent injunction arises after a jury trial in which the jury expressly determined that Defendant qualifies as a media defendant under Florida law. Plaintiff's defamation claim was dismissed as a matter of law for failure to comply with Florida's mandatory pre suit notice requirement. Despite that dismissal, Plaintiff now seeks to impose speech restrictions through alternative theories, effectively attempting to revive a defamation claim that no longer exists. The Court retained limited jurisdiction solely to consider Plaintiff's injunction request, which does not authorize unconstitutional restraints on protected speech or relitigation of issues already resolved by the jury.

## II. PLAINTIFF CANNOT SATISFY THE STANDARD FOR A PERMANENT INJUNCTION

A permanent injunction is an extraordinary remedy requiring proof of actual success on the merits, irreparable harm, that the balance of equities favors the movant, and that the injunction would serve the public interest. Plaintiff cannot satisfy any of these elements.

## III. PLAINTIFF CANNOT SHOW SUCCESS ON THE MERITS

The defamation claim has been dismissed, and the jury expressly found that Defendant functions as a media defendant. Plaintiff's attempt to relitigate media status by selectively citing pretrial remarks ignores the evidentiary record. Florida law applies as a matter of law once the jury made this factual determination.

## IV. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CANNOT SUPPORT INJUNCTIVE RELIEF AND NO MALICIOUS INTENT EXISTS

Plaintiff relies heavily on intentional infliction of emotional distress, but IIED cannot be used as an end run around a failed defamation claim. Trial evidence and testimony demonstrated that there was no malicious intent on Defendant's part regarding the alleged deepfake content. Defendant was live on air when the video was first brought to her attention. Her reaction reflected genuine surprise and uncertainty. She explained in real time how viewers could access content through a public platform feature. The content remained accessible for approximately fifteen minutes and was removed. Defendant openly opposed AI generated content and stated that if the video was fake, Plaintiff should pursue legal action against its creator. Defendant only learned the content was fabricated after Plaintiff publicly stated so. The content was already circulating publicly, and there was no intent to deceive, harm, or target Plaintiff. These facts do not satisfy the elements of IIED and cannot justify a prior restraint. Plaintiff's IIED claim also fails for lack of specificity and existing content.

Plaintiff's reliance on IIED is further deficient because Plaintiff has failed to identify any specific post, statement, or publication that allegedly supports her IIED claim. At no point in her

motion does Plaintiff pinpoint a particular post, date, caption, video, or piece of content authored by Defendant that allegedly constitutes extreme or outrageous conduct. This omission is fatal. A claim for IIED, particularly one invoked to justify injunctive relief, requires identification of the exact conduct alleged to be unlawful. Generalized references to online harassment or unspecified social media activity are legally insufficient and cannot support the extraordinary remedy of a permanent injunction.

This failure is especially significant here because the social media pages Plaintiff broadly references no longer exist. Defendant's prior pages have been deleted, are inaccessible, and cannot be reviewed or evaluated by this Court. Plaintiff does not identify any surviving content currently available to the public, nor does she explain how an injunction could be fashioned when the allegedly offending speech has not been identified and the referenced platforms are defunct. An injunction cannot issue in a factual vacuum, and the Court cannot restrain speech based on speculation or hypothetical future conduct untethered to an actual identifiable publication.

Plaintiff's attempt to proceed without identifying a specific post underscores that the IIED theory is being used as an improper substitute for her dismissed defamation claim. Without a specific post, there is no basis for assessing intent, context, severity, or outrageousness, each of which is required to sustain an IIED claim. The absence of an identified publication also precludes any finding of irreparable harm, as Plaintiff has not shown that any existing content continues to cause injury or poses an imminent threat.

## V. DEFENDANT'S POST TRIAL CONDUCT UNDERMINES ANY CLAIM OF IRREPARABLE HARM

Following trial, Defendant voluntarily limited her public commentary. She participated in post trial interviews solely to discuss her personal experience and reaction to the verdict. Defendant did not direct threats, harassment, or commentary toward Plaintiff, nor did she encourage others to do so. Even after any gag order was lifted, Defendant chose not to discuss

Plaintiff on her show. Plaintiff cannot establish irreparable harm where speech has been affirmatively limited and no imminent injury exists.

## VI. RESPONSE TO AMICUS CURIAE ARGUMENTS

Amicus briefs filed in support of Plaintiff, including the recent filing by Roberta Kaplan, improperly attempt to reframe protected commentary as harassment and advocacy as non media conduct. These arguments ignore the jury's finding and misstate Florida law, which determines media status by function, not viewpoint neutrality. Speculation about motive or bias cannot justify an injunction or override First Amendment protections.

## VII. PRIOR RESTRAINT AND THE PUBLIC INTEREST

The injunction sought would constitute a prior restraint, which is presumptively unconstitutional particularly where the speaker is a media defendant commenting on public proceedings. The public interest strongly favors protecting free expression and press activity.

## VIII. CONCLUSION

Plaintiff has not met the heavy burden required for a permanent injunction. The request disregards the jury's findings, attempts to revive a barred claim, and seeks to restrict constitutionally protected speech.

Plaintiff's Motion for Permanent Injunction should be denied in its entirety.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on January 9, 2026, I served the foregoing Response and Reply in Opposition to Plaintiff's Motion for Permanent Injunction by depositing a true and correct copy in the United States Mail, postage prepaid, addressed to the Clerk of Court and all counsel of record.

Alejandro Brito (Fla. Bar. No 098442)

Jalaine Garcia (Fla. Bar. No. 058632)

abrito@britopllc.com

jgarcia@britopllc.com

BRITO, PLLC

2121 Ponce de Leon Boulevard, Suite 650

Miami, FL 33134

(305) 614-4071


Mari F. Henderson (pro hac vice)

Marie Hayrapetian (pro hac vice)

marihenderson@quinnemanuel.com

mariehayrapetian@quinnemanuel.com

QUINN EMANUEL URQUHART SULLIVAN, LLP

865 South Figueroa Street, 10th Floor

Los Angeles, CA 90017

(213) 443-3000

John O'Sullivan (Fla. Bar No. 143154)

Daniel L. Humphrey (Fla. Bar No. 1024695)

johnosullivan@quinnemanuel.com

danielhumphrey@quinnemanuel.com

QUINN EMANUEL URQUHART SULLIVAN, LLP

2601 S. Bayshore Drive, Suite 1500

Miami, FL 33133

(305) 402-4880


Joanna E. Menillo (pro hac vice)

Stephanie Kelemen (pro hac vice)

joannamenillo@quinnemanuel.com

stephaniekelemen@quinnemanuel.com

QUINN EMANUEL URQUHART SULLIVAN, LLP

295 Fifth Avenue

New York, NY 10010

(212) 849-7050

Respectfully submitted,

Milagro Elizabeth Cooper

Defendant, Pro Se

21175 Tomball Pkwy #529

Houston, TX 77070

Tel: (614) 662-2474

Email: Milagrogramz@gmail.com

tremely Urgent

Visit UPS.com

**Apply shipping documents on this side.**

Scan QR code to
schedule a pickup

MILAGRO COOPER
(281) 640-4536
APT 4001
15500 CUTTEN RD
HOUSTON   TX 77070

0.2 LBS LTR
SHP WT: LTR
DATE: 10 JAN 2026

SHIP CLERK OF COURT - MIAMI DIVISION
TO:  US DIST CRT SOUTH DIST OF FLORIDA
RE   MEGAN PETE V MILAGRO COOPER
WILKIE D   FERGUSON, JR US COURTHOUS
400 N MIAMI AVE, FL8

MIAMI   FL 33128-1801

FL 330 9-03

UPS EARLY
TRACKING #: 1Z 759 093 15 4670 3306      1+

BILLING: P/P

MM394PVS6RC97 1SH 13.00C ZZP 450 50.5U 12/2025

**The UPS Store RFID Label**

**Tracking #**

1Z759093154670 3306

This envelope is for use with the following services:

Do not use this envelope for:

UPS Next Day Air®
UPS Worldwide Express®
UPS 2nd Day Air®

UPS Ground
UPS Standard
UPS 3 Day Select®
UPS Worldwide Expedited®

For information about UPS's privacy practices or to opt out from the sale of
personal information, please see the UPS Privacy Notice at www.ups.com

or more than 110 years
United Parcel Service.®

010951033  04/21  PAC  United Parcel Service

al Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established
vention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Convention on
t for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software were exported
S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

dow Envelope
envelope with shipping docu
ser or inkjet printer on plain
g documents under window

c Shipments
y for the letter rate, UPS Express® envelopes may c
nder urgent documents, and/or electronic med
ess. UPS express envelopes containing items other
ing more than 8oz will be billed by weight

onal Shipments
Express envelope may be used only for documen
rtain quantities consider electronic media as docu
/imposts port to verify if your shipment is classif
y for the letter rate, the UPS Express envelope mu
ess velopes weighing more than 8 oz. will be l

Express envelopes are not recommended for s
media containing sensitive personal informatior
d cash or cash equivalent.