**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.: 24-24228-CIV-ALTONAGA

MEGAN PETE,

Plaintiff,

v.

MILAGRO ELIZABETH COOPER,

Defendant.

_____/

FILED BY _MCO_ D.C.

JAN 15 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## <u>DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO</u>
## <u>REINSTATE DEFAMATION CLAIM AND TO AMEND FINAL JUDGMENT</u>

Defendant Milagro Cooper, appearing *pro se*, respectfully opposes Plaintiff's Motion to Reinstate the Defamation Claim and to Amend the Final Judgment. Plaintiff's motion is procedurally barred, legally unsupported, and inconsistent with the manner in which this case was tried and decided.

## <u>INTRODUCTION</u>

Plaintiff's motion is an improper attempt to overturn the jury's express factual findings and to relitigate issues already resolved through a full and fair trial. The Court properly entered Final Judgment consistent with the jury's verdict, including its determination that Defendant qualifies as a media defendant under Florida law. Plaintiff now seeks to nullify an unfavorable verdict by recharacterizing a properly submitted jury question as a purely legal issue and by invoking doctrines that do not apply.

Rules 50(b), 59(e), and 60(b) do not authorize such relief. Plaintiff has identified no manifest error of law or fact, no newly discovered evidence, and no extraordinary circumstance warranting amendment of the judgment. The Court correctly entered Final Judgment consistent with the jury's verdict, and Plaintiff's motion should be denied.

## I. THE JURY WAS PROPERLY AUTHORIZED TO DECIDE MEDIA STATUS

Plaintiff repeatedly asserts that Defendant's media status was conclusively resolved at the pleading stage. That contention misstates both the record and the law.

At the motion-to-dismiss stage, the Court addressed the issue based solely on allegations, not evidence. Once the case proceeded through discovery and trial, the inquiry necessarily became fact-driven. Prior to submission to the jury, the issue was raised outside the jury's presence.

Critically, Plaintiff expressly agreed that media status should be decided by the jury, jointly participated in drafting the relevant jury instructions, and litigated the issue through verdict. The jury was presented with evidence, asked clarifying questions during deliberations, and ultimately found that Defendant qualified as a media defendant. Based on that finding—and Plaintiff's undisputed failure to comply with Florida's mandatory pre-suit notice requirement— the Court entered Final Judgment dismissing the defamation claim.

Plaintiff cannot now ask the Court to substitute its judgment for that of the jury simply because the outcome was unfavorable. Plaintiff seeks an extraordinary remedy: to erase an adverse jury finding while preserving favorable ones. Equity does not permit such selective acceptance of a verdict. Plaintiff had a full opportunity to present evidence, argue the law, and persuade the jury. She did so—and lost on this issue. At no point prior to submission of the verdict form did Plaintiff object to the jury's consideration of media defendant status or seek a ruling as a matter of law on that issue.

Allowing post-verdict reclassification of Defendant's status would chill speech, penalize nontraditional media actors, and erode confidence in the jury system.

## II. PLAINTIFF'S MOTION IS BARRED BY INVITED ERROR, JUDICIAL ESTOPPEL, AND WAIVER

Plaintiff's motion fails as a matter of settled doctrine. Under the invited-error doctrine, a party may not challenge a ruling or procedure it affirmatively requested. The Eleventh Circuit is clear: *"A party may not challenge as error a ruling or other trial proceeding invited by that party.* **United States v. Love**, 449 F.3d 1154, 1157 (11th Cir. 2006).

Here, Plaintiff requested that the jury decide media status, collaborated on jury instructions submitting the issue, litigated the issue through verdict, and accepted the risk of an adverse finding.

Plaintiff is also judicially estopped from taking a position inconsistent with the one she advanced at trial and has waived any objection by failing to preserve it in a manner consistent with her current theory. Post-verdict regret is not a basis for relief under Rules 50, 59, or 60.

## III. MEDIA STATUS IS A FUNCTIONAL, FACT-DRIVEN INQUIRY PROPERLY SUBMITTED TO AND RESOLVED BY THE JURY

Florida law determines media status by function, not by labels, tone, neutrality, or whether a speaker self-identifies as a journalist. The inquiry focuses on whether the defendant gathers information and disseminates commentary to the public on matters of public concern. The Eleventh Circuit has recognized that investigative commentary, opinion, and even advocacy-based speech may qualify as protected media activity. **Turner v. Wells**, 879 F.3d 1254, 1268–69 (11th Cir. 2018).

At trial, evidence showed that Defendant hosted a recurring broadcast program, gathered and analyzed information, disseminated commentary to a broad audience, and addressed matters of undeniable public concern. That Defendant's speech was critical or controversial does not strip it of media protection. The jury weighed the evidence and resolved this factual question. Plaintiff's disagreement with the outcome does not transform it into legal error.

## IV. PLAINTIFF FAILS TO MEET THE STANDARDS OF RULES 50(b), 59(e), OR 60(b)

Plaintiff's motion fails under every rule invoked:

A. Under Rule 50(b), the jury's verdict was supported by legally sufficient evidence, and reasonable jurors could—and did—find Defendant to be a media defendant. Judgment as a matter of law is therefore unavailable.

B. Under Rule 59(e), Plaintiff identifies no manifest error of law or fact. Disagreement with a jury's conclusion is not grounds to amend a judgment.

C. Under Rule 60(b), Plaintiff points to no mistake, fraud, or extraordinary circumstance. Rule 60(b)(6) is not a vehicle for re-arguing issues already decided by a jury.

Granting Plaintiff's motion would undermine the finality of jury verdicts and improperly elevate Plaintiff's preferred legal theory over the jury's factual determinations.

## V. PLAINTIFF CANNOT USE IIED TO REVIVE A DISMISSED DEFAMATION CLAIM

Plaintiff improperly attempts to use the jury's IIED finding to resurrect a defamation claim that was dismissed based on the jury's media-status determination. The Supreme Court has squarely rejected this approach.

In **Hustler Magazine, Inc. v. Falwell**, 485 U.S. 46, 56 (1988), the Court held that a plaintiff may not use IIED to circumvent First Amendment protections governing speech on matters of public concern. A defamation claim that fails cannot be revived under a different label.

Moreover, the trial evidence showed that Defendant did not engage in extreme or outrageous conduct in relation to the alleged deepfake. Defendant learned of the content live, expressed skepticism, discouraged AI-generated material, urged Plaintiff to pursue the original creator if fabricated, and removed the content promptly. These actions do not meet the legal standard for IIED.

## VI. AMICUS BRIEFS CANNOT OVERRIDE THE JURY VERDICT OR THE TRIAL RECORD

Plaintiff relies on amicus briefs that advance policy arguments disconnected from the evidence presented at trial. Amicus briefs cannot rewrite facts, override jury findings, or substitute academic disagreement for a verdict reached after a full and fair trial.
This case must be decided on the trial record and the jury's findings—not post-trial advocacy.

## VII. ISSUES PRESERVED FOR APPEAL

Defendant expressly preserves for appellate review all issues relating to:
(1) the denial or granting of Plaintiff's Motion to Reinstate the Defamation Claim;

(2) the jury's determination of media status and the legal consequences flowing therefrom;

(3) any attempt to impose liability inconsistent with First Amendment protections; and

(4) any post-trial rulings that conflict with the jury's findings or Final Judgment.

## **CONCLUSION**

Plaintiff invited the procedure she now challenges, litigated the issue fully, and lost. The Court properly entered Final Judgment consistent with the jury's findings and Florida law. Allowing Plaintiff to unwind that judgment would undermine the finality of verdicts, reward strategic inconsistency, and erode confidence in the judicial process.

**WHEREFORE**, Defendant respectfully requests that Plaintiff's Motion to Reinstate the Defamation Claim and to Amend the Final Judgment be **DENIED** in its entirety.

Dated: January 14, 2026

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 14, 2026, I served the foregoing Response and Reply in Opposition to Plaintiff's Motion to Reinstate Defamation Claim and Amend Final Judgement by depositing a true and correct copy in the United States Mail, postage prepaid, addressed to the Clerk of Court and all counsel of record.

Alejandro Brito (Fla. Bar. No 098442)

Jalaine Garcia (Fla. Bar. No. 058632)

abrito@britopllc.com

jgarcia@britopllc.com

BRITO, PLLC

2121 Ponce de Leon Boulevard, Suite 650

Miami, FL 33134

(305) 614-4071

Mari F. Henderson (pro hac vice)

Marie Hayrapetian (pro hac vice)

marihenderson@quinnemanuel.com

mariehayrapetian@quinnemanuel.com

QUINN EMANUEL URQUHART SULLIVAN, LLP

865 South Figueroa Street, 10th Floor

Los Angeles, CA 90017

(213) 443-3000

John O'Sullivan (Fla. Bar No. 143154)

Daniel L. Humphrey (Fla. Bar No. 1024695)johnosullivan@quinnemanuel.com

danielhumphrey@quinnemanuel.com

QUINN EMANUEL URQUHART SULLIVAN, LLP

2601 S. Bayshore Drive, Suite 1500

Miami, FL 33133

(305) 402-4880

Joanna E. Menillo (pro hac vice)

Stephanie Kelemen (pro hac vice)

joannamenillo@quinnemanuel.com

stephaniekelemen@quinnemanuel.com

QUINN EMANUEL URQUHART SULLIVAN, LLP

295 Fifth Avenue

New York, NY 10010

(212) 849-7050

Respectfully submitted,

Milagro Elizabeth Cooper

Defendant, Pro Se

21175 Tomball Pkwy #529

Houston, TX 77070

Tel: (614) 662-2474

Email: Milagrogramz@gmail.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-24228-CIV-ALTONAGA/Reid

MEGAN PETE,

      Plaintiff,

v.

MILAGRO ELIZABETH COOPER,

      Defendant.

_____/

### <u>COURT'S INSTRUCTIONS TO THE JURY</u>

Members of the jury:

It is my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished you will go to the jury room and begin your discussions, sometimes called deliberations.

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

You must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

CASE NO. 24-24228-CIV-ALTONAGA

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers.

The deposition of Ceasar McDowell, taken on July 25, 2025 and November 13, 2025; Sonstar Peterson, taken on April 4, 2025 and April 7, 2025; Daystar Peterson (also known as Tory Lanez) taken on April 9, 2025 and November 14, 2025; Livingston Allen taken on August 22, 2025 and October 22, 2025; and Antonio Tolefree taken on July 22, 2025, have been presented to you by video. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

Where a deposition was not presented to you by video, do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

You have heard recorded conversations. This is proper evidence for you to consider. I am going to allow you to have a transcript of the recording to help you identify speakers and guide you through the recording. But remember it is the recording that is evidence—not the transcript. If you believe at any point that the transcript says something different from what you hear on the recording, disregard that portion of the transcript and rely instead on what you hear.

You have also heard answers that Defendant Ms. Cooper gave in response to written questions the other side submitted. The questions are called "interrogatories" and "Requests for Admissions." Before the trial, Defendant Ms. Cooper gave the answers in writing while under oath.

You must consider Defendant Ms. Cooper's answers to as though Ms. Cooper gave the answers on the witness stand.

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point does not necessarily matter.

To decide whether you believe any witness, I suggest that you ask yourself a few questions:

1.  Did the witness impress you as one who was telling the truth?

2.  Did the witness have any particular reason not to tell the truth?

CASE NO. 24-24228-CIV-ALTONAGA

3.  Did the witness have a personal interest in the outcome of the case?

4.  Did the witness seem to have a good memory?

5.  Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

6.  Did the witness appear to understand the questions clearly and answer them directly?

7.  Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

To decide whether you believe a witness, you may consider the fact that the witness has been convicted of a felony or a crime involving dishonesty or a false statement.

But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that does not mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

A party to a lawsuit, such as the Defendant, has a legal duty to retain and preserve paper and electronic communications and other documents that concern the case. This includes, among other things, all electronically stored information in one's possession, custody, or control such as emails, text messages, and other communications stored on applications on one's phone, computer, or in the cloud.

The day before Plaintiff filed this lawsuit, her attorneys formally notified Defendant that Plaintiff was going to file the case and that she had these retention and preservation duties.

Despite this written notice, and these underlying legal duties, Defendant deleted thousands of text messages and removed the WhatsApp app from her phone that potentially contained messages and chats.

CASE NO.  24-24228-CIV-ALTONAGA

In reaching your verdict, you should assume and infer that Defendant intended to deprive Plaintiff of the evidence in the deleted messages and chats, that at least some of the deleted messages related to the claims in this case and were about Plaintiff, and that these deleted messages were unfavorable to Defendant.

In certain instances, it is the responsibility of Plaintiff, Megan Pete, to prove every essential part of her claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that Ms. Pete's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Ms. Pete.

In other instances, which I will inform you of, it will be Ms. Pete's responsibility to prove certain elements or claims by "clear and convincing evidence". Clear and convincing evidence is a higher standard of proof than proof by a preponderance of the evidence. It means the evidence must persuade you that the claim is highly probable or reasonably certain. I will tell you when to apply this standard.

Because more than one claim is involved, you should consider each claim separately. Plaintiff raises three claims in this action: First, for defamation *per se*. Second, for intentional infliction of emotional distress. Third, for promotion of an altered sexual depiction. Plaitniff can prevail in this case if she proves any of her claims by a preponderance of the evidence.

In deciding whether any fact has been proved by the burden of proof, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of Ms. Pete's claims by the applicable burden of proof, you should find for Defendant, Milagro Cooper, on that claim.

In this case, Ms. Cooper asserts the following affirmative defense: the Substantial Truth Doctrine. Even if Ms. Pete proves her claims by a preponderance of the evidence or clear and convincing evidence, Ms. Cooper can prevail in this case if she proves an affirmative defense by a preponderance of the evidence.

I caution you that Ms. Cooper does not have to disprove Ms. Pete's claims, but if Ms. Cooper raises an affirmative defense, the only way she can prevail on that specific defense is if she proves that defense by a preponderance of the evidence.

4

Case 1:24-cv-24228-CMA    Document 224    Entered on FLSD Docket 11/26/2025    Page 5 of 11

CASE NO. 24-24228-CIV-ALTONAGA

On Plaintiff's claim for defamation *per se* there is a preliminary issue for you to decide. That issue is whether Defendant Milagro Cooper is a media defendant. To qualify as a "media defendant" under Florida law, a party must be engaged in the dissemination of news and information to the public in order to initiate the uninhibited, robust, and wide-open debate on public issues. Not every person or entity that publishes information is a media defendant.

In deciding if Defendant Cooper is a media defendant, you should consider whether the defendant:

1. During the time period in which the statements were made, provided disinterested and neutral commentary or editorialized on matters of public interest, rather than advocated for a particular client or personal interest;

2. During the time period in which the statements were made, regularly disseminated news or information to the public, rather than making an isolated or one-time publication;

3. During the time period in which the statements were made, impartially disseminated information, rather than acting primarily to promote her own business, products, or services;

4. During the time period in which the statements were made, operated for the purpose of informing the public about matters of public concern through news reporting, analysis, or commentary; and

5. During the time period in which the statements were made, functioned in a similar manner to traditional news media, such as newspapers, magazines, television, radio, or their online equivalents, even if using newer platforms such as blogs or websites.

The fact that a defendant used the internet, maintained a website, or reached a large audience does not alone make that defendant a media defendant. Similarly, the fact that a defendant is not affiliated with a traditional newspaper or broadcast station does not automatically disqualify them from being a media defendant.

Plaintiff, Ms. Pete, claims that Defendant, Ms. Cooper, defamed her by publishing false statements about her on social media which caused Ms. Pete harm. Ms. Pete claims Ms. Cooper defamed her by accusing Ms. Pete of perjury—a felony—by lying under oath in a criminal trial when she asserted that: (1) Ms. Pete was a "non-credible witness"; (2) "I could go down the list of all the different shit tht was not true"; and (3) asked "Was Megan Thee Stallion caught trying to deceive the courts again?"

The issues you must decide for Ms. Pete's claim of defamation against Ms. Cooper are:

First, whether Ms. Cooper published a statement about Ms. Pete.

Second, whether the statement was in some significant respect false;

CASE NO. 24-24228-CIV-ALTONAGA

Third, whether Ms. Cooper made the statement with actual malice; and

Fourth, whether Ms. Cooper's defamatory statement was a legal cause of loss, injury, or damage to Ms. Pete.

The first issue you must decide is whether Ms. Cooper published the statements. A statement is published when it is communicated to someone other than Ms. Pete or Ms. Cooper. In order to be communicated, a statement must be read, seen, or heard by a person other than Ms. Pete or Ms. Cooper and that person must understand the statement's significance.

The next issue for you to decide is whether Ms. Cooper's statement concerning Ms. Pete was in some significant respect a false statement of fact and, if so, whether, at the time the statement was made, Ms. Cooper made the statement with actual malice. A statement is in some significant respect false if its substance or gist conveys a materially different meaning than the truth would have conveyed. In making this determination, you should disregard any minor inaccuracies that do not affect the substance of the statement.

A statement that is literally true is in some significant respect a false statement of fact if it is conveyed in such a way as to create a false impression. Actual malice is defined as knowledge that a statement is false, or reckless disregard for whether the statement is false.

Ms. Pete must prove actual malice by clear and convincing evidence. Clear and convincing evidence is a higher standard of proof than proof by a greater weight of the evidence (or preponderance of the evidence). It means the evidence must persuade you that the claim or defense is highly probably or reasonably certain. If Ms. Pete has not proven "actual malice" by clear convincing evidence, then your verdict should be for Ms. Cooper.

Ms. Pete's defamation claim is what is known under Florida law as "Defamation *per se*." Florida law holds that certain statements are so harmful in nature that they are presume defamatory as a matter of law. In a claim for defamation *per se*, the harmful nature of the statement is apparent from the words in the statement itself.

Next, you must decide whether the statement was a legal cause of loss, injury, or damages to Ms. Pete. A statement is a legal cause of loss, injury, or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury, or damage, so that it can reasonably be said that, but for the statement, the loss, injury, or damage would not have occurred.

In order to be regarded as a legal cause of loss, injury, or damage, a statement need not be the only cause. A statement may be a legal cause of loss, injury, or damage even though it operates in combination with the act of another or some other cause if the statement contributes substantially to producing such loss, injury, or damage.

If the appropriate burden of proof does not support the elements of Ms. Pete's defamation claim, then your verdict should be for Ms. Cooper. Actual malice must be proved by clear and convincing evidence, the remaining elements must be proven by a preponderance of the evidence.

CASE NO.  24-24228-CIV-ALTONAGA

However, if Ms. Pete has proved her claim, then you will consider the defense(s) raised by Ms. Cooper.

You must now consider Ms. Cooper's defense.

Ms. Cooper contends that the alleged defamatory statements were true. Truth is an absolute defense to defamation. True statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment.

To succeed on this defense, Ms. Cooper must prove, by the preponderance of the evidence, that the alleged defamatory statements were substantially true.  A statement does not have to be perfectly accurate to avoid being defamatory if the 'gist' or the 'sting' of the statement is true.

If the preponderance of the evidence supports this defense, your verdict must be for Ms. Cooper. If the preponderance of the evidence does not support this defense, your verdict must be for Ms. Pete.

Ms. Pete claims that Ms. Cooper acted extremely and outrageously by coordinating with Mr. Daystar Peterson and others, to distribute false statements about Ms. Pete and to promote and distribute an altered sexual depiction of Ms. Pete, which caused her severe emotional distress. This is known as a claim of intentional infliction of emotional distress.  Defendant denies Plaintiff's claim.

The issues for you to decide on Ms. Pete's claim of intentional infliction of emotional distress are:

First, whether Ms. Cooper engaged in extreme and outrageous conduct.

Second, whether Ms. Cooper acted with the intent to cause severe emotional distress or with reckless disregard of the high probability of causing severe emotional distress.

Third, whether that extreme and outrageous conduct was a legal cause of severe emotional distress to Ms. Pete.

Extreme and outrageous conduct is behavior, which, under the circumstances, goes beyond all possible bounds of decency and is regarded as shocking, atrocious, and utterly intolerable in a civilized community.

Emotional distress is severe when it is of such intensity or duration that no ordinary person should be expected to endure it.

Extreme and outrageous conduct is a legal cause of severe emotional distress if it directly and in natural and continuous sequence produces or contributes substantially to producing such severe emotional distress, so that it can reasonably be said that, but for the extreme and outrageous conduct, the severe emotional distress would not have occurred.

CASE NO. 24-24228-CIV-ALTONAGA

In order to be regarded as a legal cause of severe emotional distress, extreme and outrageous conduct need not be its only cause. Extreme and outrageous conduct may also be a legal cause of severe emotional distress even though it operates in combination with the act of another, some natural cause, or some other cause occurring after the extreme and outrageous conduct occurs if such other cause was itself reasonable foreseeable and the extreme and outrageous conduct contributes substantially to producing such severe emotional distress or the resulting severe emotional distress was a reasonably foreseeable consequence of the extreme and outrageous conduct and the extreme and outrageous conduct contributes substantially to producing it.

If the preponderance of the evidence does not support Ms. Pete's claim, your verdict should be for Ms. Cooper. However, if the greater weight of the evidence supports Ms. Pete's claim, then your verdict should be for Ms. Pete and against Ms. Cooper.

Ms. Pete claims that Defendant wilfully and maliciously promoted a deepfake pornographic video of Ms. Pete on social media without Ms. Pete's consent. Ms. Pete alleges that Ms. Cooper knew or reasonably should have known that the visual depiction of Plaintiff was, in fact, an altered sexual depiction (more commonly known as a "deepfake").

The issues for you to decide on Ms. Pete's claim of promotion of an altered sexual depiction are:

First, whether Ms. Cooper willfully and maliciously promoted an altered sexual depiction of an identifiable person—namely, Ms. Pete.

Second, Ms. Cooper promoted the altered sexual depiction without the consent of Ms. Pete.

Third, at the time of promotion, Ms. Cooper knew or reasonably should have known that the visual depiction was an altered sexual depiction.

I will now define some of the terms you must consider in deciding this claim.

"Altered Sexual Depiction" means any visual depiction that, as a result of any type of digital, electronic, mechanical, or other modification, alteration, or adaptation, depicts a realistic version of an identifiable person: (1) with the nude body parts of another person as the nude body parts of the identifiable person; (2) with computer generated nude body parts as the nude body parts of the identifiable person; or (3) engaging in sexual conduct in which the identifiable person did not engage.

An "identifiable person" means the person in the image is recognizable as a real individual—for instance, by their face, likeness, or other distinctive features (such as a unique birthmark).

"Wilfully" means that Ms. Cooper acted knowingly, intentionally, and purposely.

"Maliciously" means Ms. Cooper acted with wrongful intent—for example, intentionally doing a harmful act without any lawful justification or excuse.

8

CASE NO.  24-24228-CIV-ALTONAGA

To "promote" means to distribute or disseminate material—including issuing, selling, giving, lending, delivering, transmitting, publishing, posting, circulating, exhibiting, or sharing it, or agreeing to do any of these actions.

"Without consent" means Ms. Pete did not agree to or authorize the altered depiction being shared in any manner.  The presence of a disclaimer within an altered sexual depiction which notifies a viewer that the person or persons depicted did not consent to or participate in the creation or promotion of the material, or that the person or persons depicted did not actually perform the actions portrayed, is not a defense and does not relieve a person of liability under the law.

If you find that all of the above elements are proven by a preponderance of the evidence, then you should find for the Plaintiff on this claim.  However, if the Plaintiff fails to prove any one of these elements, you must return a verdict for the Defendant on this claim.

If your verdict is for Ms. Cooper on defamation, intentional infliction of emotional distress, and promotion of an altered sexual depiction, you will not consider the matter of damages.

But if the preponderance of the evidence supports any of Ms. Pete's claims for defamation, intentional infliction of emotional distress, or promotion of an altered sexual depiction, you should determine and write on the verdict form, in dollars, the total amount of loss, injury, or damage which the greater weight of the evidence shows will fairly and adequately compensate Ms. Pete for her loss or damage, including any damages that she is reasonably certain to incur or experience in the future.  You shall consider the following elements of damage:

a.      Nominal damages:

If you find for Ms. Pete but find that no damage has been proved for her intentional infliction of emotional distress claim, you may award nominal damages.  Nominal damages are damages of an inconsequential amount which are awarded to vindicate a right where a wrong is established but no damage is proved.  By "nominal" I mean a dollar amount of damages such as $1 that you, in your discretion, determine.

b.      Compensatory Damages

If you find for Ms. Pete and against Ms. Cooper on any of Ms. Pete's claims—defamation, intentional infliction of emotional distress, or promotion of an altered sexual depiction—you may award compensatory damages.  Compensatory damages are damages amounts awarded for:

1.      Medical expenses for Ms. Pete

These compensatory damages are for the reasonable value or expense of medical care and treatment necessarily or reasonably obtained by Ms. Pete in the past or to be so obtained in the future.

2.      Lost earnings, lost working time, lost earning capacity:

CASE NO.  24-24228-CIV-ALTONAGA

These compensatory damages are for any earnings, working time lost in the past and any loss of ability to earn money in the future.  Any loss of ability to earn money sustained in the past and any such loss in the future.

      3.     Injury to reputation or health or shame, humiliation, mental anguish, hurt feelings.

These compensatory damages are for any injury to reputation or health and any shame, humiliation, mental anguish, and hurt feelings experienced in the past or to be experienced in the future.  There is no exact standard for fixing the compensation to be awarded on account of such elements of damage.  Any award should be fair and just in the light of the evidence.

      c.     Punitive Damages

There is an additional claim in this case that you must decide.  If you find for Ms. Pete and against Ms. Cooper on her claims for defamation or intentional infliction of emotional distress, you must decide whether, in addition to compensatory damages, punitive damages are warranted as punishment to Ms. Cooper and as a deterrent to others.

Ms. Pete claims that punitive damages should be awarded against Ms. Cooper for her conduct in coordinating with Mr. Daystar Peterson and his affiliates to distribute, promote, and disseminate false and disproved statements and theories about Ms. Pete and to intentionally or recklessly promote and distribute an altered sexual depiction of Ms. Pete.  Punitive damages are warranted against Ms. Cooper if you find by clear and convincing evidence that Ms. Cooper was guilty of intentional conduct or gross negligence, which was a substantial cause of loss or damage to Ms. Pete.  Under those circumstances you may, in your discretion, award punitive damages against Ms. Cooper.  If clear and convincing evidence does not show such conduct by Ms. Cooper, punitive damages are not warranted against Ms. Cooper.

"Intentional misconduct" means that Ms. Cooper had actual knowledge of the wrongfulness of the conduct and that there was a high probability that injury or damage to Ms. Pete and, despite that knowledge, she intentionally pursued that course of conduct, resulting in injury or damage.

"Gross negligence" means that Ms. Cooper's conduct was so reckless or wanting in care that it constitute a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

If your verdict is for Ms. Cooper on Ms. Pete's claim of promotion of an altered sexual depiction, you will not consider the matter of damages.  But if the preponderance of the evidence supports Ms. Pete's claim for promotion of an altered sexual depiction, then the law allows Ms. Pete to recover monetary damages, in an amount of $10,000 or actual damages incurred, whichever is greater, for each instance that occurred, and reasonable attorneys' fees and costs.

Of course, the fact that I have given you instructions concerning the issue of Ms. Pete's damages as to any of her claims should not be interpreted in any way as an indication that I believe that Ms. Pete should, or should not, prevail in this case.

CASE NO.  24-24228-CIV-ALTONAGA

Your verdict must be unanimous — in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So, you must discuss the case with one another and try to reach an agreement. While you are discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges — judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

Take the verdict form with you to the jury room. When you have all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you will return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I will respond as promptly as possible — either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me. in your note or question.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-24228-CIV-ALTONAGA/Reid**

**MEGAN PETE,**

  Plaintiff,

v.

**MILAGRO ELIZABETH COOPER,**

  Defendant.

_____/

**JURY NOTES**

I apologize for the follow up question, but I'm confused about the names and aliases mentioned in the case. Would it be possible to have clarification on which individual is associated with? I'm unsure about who

Tory lanez is?
Daystar is Tony?
Sustar is the Dad?
Kelsey is former friend of Mrs. Megan

Also can you go over
sustain?
object?
overruled one more time -

Can you ask the lawyer
on the ~~de~~ plantif case
to stop typing on
the laptop. Its super
disctractiy to hearing th
Closirg arguments.

Which joint exhibit is of
the video of deepfake?

AND WHICH ONE is of screen
Shot with emoji posted on
Milagro's Show

Is the Deepfake Statue
exist in other States?
OR IN THE CASE IN TEXAS

WHERE WAS ~~IN~~ MS. Pele
when milagre shoed
happered?

Folio address should be blacked Out — it's the same as finding the address! IF They are trying to keep this private. Even thug it's public record?

what is reasonable doubt? explain how this pertains to "Daystar?"

++

ARE WE AllOWED TO take
out exhibits from Binder
to make sense of timeling
since they aren't in timeline
order?

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

## CASE NO. 24-24228-CIV-ALTONAGA

### PETE v. COOPER

**PLEASE NOTE:   DO NOT SHOW YOUR NUMERICAL DIVISION**
**PLEASE RETAIN THIS FORM WITH THE EXHIBITS**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**FOREPERSON'S SIGNATURE:** _____

**DATE:**_____  **TIME:** _____

**COURT=S ANSWER:** _Yes, you may move exhibits to_
_correspond to a timeline._

_____

_____

_____

_____

**SIGNED:** _Cecilia M Altng_  **DATE:** 11/26/25  **TIME:** _____
      **JUDGE CECILIA M. ALTONAGA**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 24-24228-CIV-ALTONAGA

### PETE v. COOPER

**PLEASE NOTE:   DO <u>NOT</u> SHOW YOUR NUMERICAL DIVISION**
**PLEASE RETAIN THIS FORM WITH THE EXHIBITS**

○ Could you better define "maliciously" as in some of us i need better examples.

● When did Ms. Pete register as a voter in FLORIDA + when property screen shot happened (DATE).

○ pg S attached 1-S WE ARE CONFUSED if we believ half is that considered a yes 💭

**FOREPERSON'S SIGNATURE:** _____

**DATE:** 11/20/25    **TIME:** 2;35

**COURT=S ANSWER:** _____

1- Please refer back to the Court's Instructions on the law.

2- Please rely on your recollection of the testimony and evidence presented.

3- There is no set number.

**SIGNED:** _Cecilia M. Altonaga_    **DATE:** 12/1/25    **TIME:** 9:00am.
**JUDGE CECILIA M. ALTONAGA**

CASE NO. 24-24228-CIV-ALTONAGA

On Plaintiff's claim for defamation *per se* there is a preliminary issue for you to decide. That issue is whether Defendant Milagro Cooper is a media defendant. To qualify as a "media defendant" under Florida law, a party must be engaged in the dissemination of news and information to the public in order to initiate the uninhibited, robust, and wide-open debate on public issues. Not every person or entity that publishes information is a media defendant.

In deciding if Defendant Cooper is a media defendant, you should consider whether the defendant:

1.   During the time period in which the statements were made, provided disinterested and neutral commentary or editorialized on matters of public interest, rather than advocated for a particular client or personal interest;

2.   During the time period in which the statements were made, regularly disseminated news or information to the public, rather than making an isolated or one-time publication;

3.   During the time period in which the statements were made, impartially disseminated information, rather than acting primarily to promote her own business, products, or services;

4.   During the time period in which the statements were made, operated for the purpose of informing the public about matters of public concern through news reporting, analysis, or commentary; and

5.   During the time period in which the statements were made, functioned in a similar manner to traditional news media, such as newspapers, magazines, television, radio, or their online equivalents, even if using newer platforms such as blogs or websites.

The fact that a defendant used the internet, maintained a website, or reached a large audience does not alone make that defendant a media defendant. Similarly, the fact that a defendant is not affiliated with a traditional newspaper or broadcast station does not automatically disqualify them from being a media defendant.

Plaintiff, Ms. Pete, claims that Defendant, Ms. Cooper, defamed her by publishing false statements about her on social media which caused Ms. Pete harm. Ms. Pete claims Ms. Cooper defamed her by accusing Ms. Pete of perjury—a felony—by lying under oath in a criminal trial when she asserted that: (1) Ms. Pete was a "non-credible witness"; (2) "I could go down the list of all the different shit that was not true"; and (3) asked "Was Megan Thee Stallion caught trying to deceive the courts again?"

The issues you must decide for Ms. Pete's claim of defamation against Ms. Cooper are:

First, whether Ms. Cooper published a statement about Ms. Pete.

Second, whether the statement was in some significant respect false;

5

CASE NO. 24-24228-CIV-ALTONAGA

Third, whether Ms. Cooper made the statement with actual malice; and

Fourth, whether Ms. Cooper's defamatory statement was a legal cause of loss, injury, or damage to Ms. Pete.

The first issue you must decide is whether Ms. Cooper published the statements. A statement is published when it is communicated to someone other than Ms. Pete or Ms. Cooper. In order to be communicated, a statement must be read, seen, or heard by a person other than Ms. Pete or Ms. Cooper and that person must understand the statement's significance.

The next issue for you to decide is whether Ms. Cooper's statement concerning Ms. Pete was in some significant respect a false statement of fact and, if so, whether, at the time the statement was made, Ms. Cooper made the statement with actual malice. A statement is in some significant respect false if its substance or gist conveys a materially different meaning than the truth would have conveyed. In making this determination, you should disregard any minor inaccuracies that do not affect the substance of the statement.

A statement that is literally true is in some significant respect a false statement of fact if it is conveyed in such a way as to create a false impression. Actual malice is defined as knowledge that a statement is false, or reckless disregard for whether the statement is false.

Ms. Pete must prove actual malice by clear and convincing evidence. Clear and convincing evidence is a higher standard of proof than proof by a greater weight of the evidence (or preponderance of the evidence). It means the evidence must persuade you that the claim or defense is highly probably or reasonably certain. If Ms. Pete has not proven "actual malice" by clear convincing evidence, then your verdict should be for Ms. Cooper.

Ms. Pete's defamation claim is what is known under Florida law as "Defamation *per se.*" Florida law holds that certain statements are so harmful in nature that they are presume defamatory as a matter of law. In a claim for defamation *per se*, the harmful nature of the statement is apparent from the words in the statement itself.

Next, you must decide whether the statement was a legal cause of loss, injury, or damages to Ms. Pete. A statement is a legal cause of loss, injury, or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury, or damage, so that it can reasonably be said that, but for the statement, the loss, injury, or damage would not have occurred.

In order to be regarded as a legal cause of loss, injury, or damage, a statement need not be the only cause. A statement may be a legal cause of loss, injury, or damage even though it operates in combination with the act of another or some other cause if the statement contributes substantially to producing such loss, injury, or damage.

If the appropriate burden of proof does not support the elements of Ms. Pete's defamation claim, then your verdict should be for Ms. Cooper. Actual malice must be proved by clear and convincing evidence, the remaining elements must be proven by a preponderance of the evidence.

6

```
MILAGRO COOPER                          0.5 LBS LTR
(281) 640-4536                      SHP WT: LTR
PMB 529                             DATE: 14 JAN 2026
21175 ST HWY 249
HOUSTON  TX 77070

     SHIP CLERK OF COURT - MIAMI DIVISION
     TO: US DIST CRT SOUTH DIST OF FLORIDA
     RE  MEGAN PETE V MILAGRO COOPER
     WILKIE D FERGUSON, JR US COURTHOUS
     400 N MIAMI AVE, FL8
     MIAMI FL 33128-1801
```



FL 330 9-03

UPS NEXT DAY AIR          1
TRACKING #: 1Z 759 093 01 4923 4941



BILLING: P/P

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. UPS, the UPS brandmark, and the color brown are trademarks of United Parcel Service of America, Inc. All rights reserved. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.