

FILED BY_____D.C.

JUL 0 7 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO. 24-cv-24228-CMA**

MEGAN PETE,

     Plaintiff,

v.

MILAGRO ELIZABETH COOPER,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)(6) BASED ON UNDISCLOSED APPEARANCE OF PARTIALITY UNDER 28 U.S.C. § 455(a)

Defendant Milagro Elizabeth Cooper ("Defendant"), proceeding pro se, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 60(b)(6), for relief from the Final Judgment [ECF No. 227] and Amended Final Judgment [ECF No. 318] entered in this action, on the ground that circumstances creating an appearance of partiality under 28 U.S.C. § 455(a) were not disclosed to Defendant and were not known to Defendant, through no fault of her own, until after judgment was entered. In support of this Motion, Defendant states as follows.

### I. INTRODUCTION

This Motion does not allege that the presiding judge, the Honorable Cecilia M. Altonaga, harbored any actual bias against Defendant. Rather, this Motion is brought under the objective standard set forth in 28 U.S.C. § 455(a), which requires disqualification whenever a judge's "impartiality might reasonably be questioned," regardless of whether the judge was subjectively aware of, or influenced by, the circumstances giving rise to that appearance. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858, 861 (1988). At its core, this Motion rests on a straightforward chain of documented facts: the presiding judge's spouse, George Mencio, Jr., is a partner and Board member at Holland & Knight LLP; Holland & Knight LLP represents non-

party Desiree Perez; and Ms. Perez was represented on the record, without contradiction, as having funded and been personally involved in this litigation against Defendant from its inception. Defendant sets forth below a series of relationships and connections, each independently verifiable, which she respectfully submits would cause a reasonable, objective observer to question the appearance of impartiality in this proceeding. As set forth further below, Defendant also sets forth evidence that a law firm connected to non-party Desiree Perez took affirmative steps to remove public reporting on these same relationships from social media prior to trial in this action.

## II. PROCEDURAL HISTORY

This action was commenced on October 30, 2024, when Plaintiff filed her Complaint. Following trial, the jury returned its verdict on December 1, 2025, and the Court entered Final Judgment the next day, on December 2, 2025 [ECF No. 227]. Defendant's trial counsel's representation effectively ended on January 9, 2026, and Defendant has proceeded without the assistance of counsel in this Court since January 12, 2026. Defendant filed her original Notice of Appeal on January 2, 2026 [ECF No. 283]. On May 29, 2026, this Court entered an Order granting in part Plaintiff's Motion to Reinstate Jury Verdict [ECF No. 317] and entered an Amended Final Judgment the same day [ECF No. 318]. Defendant filed an Amended Notice of Appeal on June 30, 2026 [ECF No. 324]. That same day, the United States Court of Appeals for the Eleventh Circuit granted Defendant's appellate counsel, Jeremy McLymont, leave to withdraw from his representation of Defendant on appeal. Defendant had no communication with Mr. McLymont regarding that withdrawal, either before or after it occurred, and received no notice from him regarding his withdrawal as attorney of record before the Eleventh Circuit. On June 25, 2026, the Eleventh Circuit issued a Dismissal Notice in the pending appeal, Case No. 26-10032, warning that the appeal would be dismissed without further notice within fourteen days unless Defendant filed a Civil Appeal Statement; that notice was addressed to Mr. McLymont as counsel of record. (USCA11 Case No. 26-10032, Doc. 13 (Exhibit A).) The next day, June 26, 2026, Mr. McLymont filed an appearance of counsel form in the appeal and, the same day, moved for leave to withdraw as Defendant's counsel, representing to the Eleventh Circuit that Defendant had been informed of and consented to the withdrawal. (USCA11 Case No. 26-10032, Doc. 18 (Exhibit B).) Defendant did not receive the June 25, 2026 Dismissal Notice directly from the Eleventh

Circuit or from Mr. McLymont, and first learned of both the Dismissal Notice and Mr. McLymont's motion to withdraw on June 27, 2026, through a social media post summarizing those filings. (Exhibit C.) That same day, Defendant emailed Mr. McLymont, asking him to clarify the status of his representation and any pending appellate filings. (Exhibit D.) Mr. McLymont responded on July 5, 2026, confirming that he had withdrawn from the district court — consistent with Defendant having proceeded pro se in this Court since January 12, 2026, as set forth above — but had not yet withdrawn from the appeal, and that he had since done so. (Exhibit M.) Defendant responded the following day, July 6, 2026, confirming that she had filed an Amended Notice of Appeal covering each part of the judgment she intends to challenge. (Exhibit N.)

### III. LEGAL STANDARD

A. Rule 60(b)(6). Rule 60(b)(6) permits a court to relieve a party from a final judgment for "any other reason that justifies relief," and applications under this subsection must be made "within a reasonable time." Fed. R. Civ. P. 60(b)(6), (c)(1). Unlike Rule 60(b)(1)-(3), Rule 60(b)(6) carries no fixed outer limit; the timeliness inquiry instead turns on the circumstances of the case, including the reason for and length of the delay. See Liljeberg, 486 U.S. at 862-64, 869 (10-month delay excusable where attributable to circumstances beyond the moving party's control). Relief under Rule 60(b)(6) is available only in narrow circumstances upon a showing of "extraordinary circumstances." Klapprott v. United States, 335 U.S. 601, 613-14 (1949); Gonzalez v. Crosby, 545 U.S. 524, 535 (2005); BLOM Bank SAL v. Honickman, 605 U.S. ___, ___ (2025).

B. Section 455(a). A judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This is an objective standard: a violation is established when a reasonable person, aware of all the relevant facts, would question the judge's impartiality — irrespective of whether the judge had actual knowledge of, or was in fact influenced by, the circumstances in question. Liljeberg, 486 U.S. at 859-60. The Eleventh Circuit applies the same objective standard. See United States v. Patti, 337 F.3d 1317, 1321 (11th Cir. 2003) (asking whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality"). See also Parker v. Connors Steel Co., 855 F.2d 1510, 1523–27 (11th

Cir. 1988) (discussing the objective appearance-of-partiality standard under § 455(a)). Section 455(a) exists to protect "the public's confidence in the judicial process," not merely the interests of the individual litigants. Id. at 860.

C. Vacatur Under § 455(a) After Final Judgment. In determining whether a § 455(a) violation warrants vacatur of an already-final judgment under Rule 60(b)(6), courts weigh: (1) the risk of injustice to the parties in the particular case; (2) the risk that denial of relief will produce injustice in other cases; and (3) the risk of undermining the public's confidence in the judicial process. Liljeberg, 486 U.S. at 864. No showing of actual prejudice or subjective bias is required. Id. at 860-61.

## IV. STATEMENT OF FACTS

### A. The Presiding Judge's Spouse Is a Longtime Partner and Board Member at a Law Firm With a Documented Connection to This Case.

George Mencio, Jr. is the spouse of the Honorable Cecilia M. Altonaga, the United States District Judge who presided over all proceedings in this action. Mr. Mencio has been a partner at Holland & Knight LLP since 1987 and currently serves on the firm's Board of Directors. See Holland & Knight LLP, Attorney Biography of George Mencio, https://www.hklaw.com/en/professionals/m/mencio-george (last visited July 1, 2026); Best Lawyers, George Mencio Jr., https://www.bestlawyers.com/lawyers/george-mencio-jr/37365 (last visited July 1, 2026).

Holland & Knight LLP is counsel of record for non-party Desiree Perez, as further described below, and Barbara A. Martinez, a partner in Holland & Knight's Miami office, is among the attorneys representing Ms. Perez. See Holland & Knight LLP, Attorney Biography of Barbara A. Martinez, https://www.hklaw.com/en/professionals/m/martinez-barbara-a (last visited July 1, 2026).

### B. Non-Party Desiree Perez's Documented Role in Funding and Participating in This Litigation, Including Sworn Trial Testimony Confirming a Longstanding Interest in Pursuing Defendant.

At a status conference held September 5, 2025, Defendant's then-counsel, Ronda Dixon, represented to the Court that non-party Desiree Perez — Chief Executive Officer of Roc Nation, LLC — was "paying the bills on behalf of Megan in this case," had been "involved in this case from the very beginning," and was present at the hospital and on the telephone when police were first contacted regarding the underlying incident. (Tr. 35:1-25, 36:1-25, Status Conference, Sept. 5, 2025.) Plaintiff's counsel did not dispute these specific factual representations regarding Ms. Perez's funding of and involvement in this litigation. Rather, Plaintiff's counsel confirmed on the record that Ms. Perez is Plaintiff's business manager who "manages her affairs," while clarifying only that counsel does not represent Ms. Perez in her separate capacity as an employee of Roc Nation, LLC or in other matters unrelated to managing Plaintiff's affairs. (Tr. 37:1-17.) Plaintiff's counsel thus disputed only the scope of counsel's own representation of Ms. Perez as an individual — not that Ms. Perez, in her role as Plaintiff's manager and as a Roc Nation executive, was funding and involved in this litigation as represented by Defendant's then-counsel. Whether the funds described above were paid by Ms. Perez in her individual capacity or through Roc Nation, LLC, does not affect the analysis below; the record establishes that Ms. Perez, personally or through her company, funded and was personally involved in this litigation from its inception.

This asserted interest is corroborated by Plaintiff's own trial testimony. During cross-examination on November 21, 2025, Plaintiff testified that she told Ms. Perez, in substance, that she wanted to sue Defendant and hoped that Ms. Perez and her staff had "been keeping all the info and folder on her," and that this exchange occurred roughly a year to sixteen months before suit was actually filed. Plaintiff further testified that this was not the first time she had raised the subject with Ms. Perez, and that she wanted to "make sure" Ms. Perez knew she wanted to sue Defendant and was preserving materials concerning her. See Trial Tr. 47:1-19, Cross-Examination of Megan Pete (Cont'd), Nov. 21, 2025 [ECF No. 232 at 47]. This sworn testimony — describing a standing "folder" compiled on Defendant well before litigation commenced — reinforces the representations made at the September 5, 2025 status conference regarding Ms. Perez's active, sustained interest in this litigation. (Exhibit E.)

**C. Holland & Knight LLP's and Reed Smith LLP's Representation of Ms. Perez in a Separate Matter in Which Defendant Has Repeatedly Been Referenced.**

Ms. Perez is a party to a separate matter pending in the Southern District of Florida, Case No. 1:25-cv-22162-BB, arising from an action brought against her by her daughter, Demoree Hadley, who sued her mother, Ms. Perez, in that matter. Ms. Perez is named as a defendant in that action and is represented by both Holland & Knight LLP, including by Ms. Martinez, and Reed Smith LLP. A separate action, Perez v. Hadley, No. 1:25-cv-21607-BB, was filed by Ms. Perez against Javon Hadley, Ms. Hadley's husband, on April 8, 2025, and was consolidated with the Hadley matter on July 1, 2025. Reed Smith LLP represented Ms. Perez as plaintiff in that action from its filing — before consolidation — and Reed Smith LLP, together with Holland & Knight LLP, continues to represent Ms. Perez in both the plaintiff and defendant postures within the now-consolidated proceeding. Reed Smith LLP and Holland & Knight LLP are accordingly counsel of record for Ms. Perez on both sides of the consolidated case — as her counsel in prosecuting her own claims against Mr. Hadley, and as her counsel in defending against the claims brought by Ms. Hadley. Defendant was referenced — by her initials, "M.C." — in that proceeding on September 15, 2025. Although Defendant was not identified by her full name, the surrounding text, including references to Plaintiff Megan Pete and to the separate, widely reported California criminal matter referenced below, see infra § IV.D, makes clear that the reference is unmistakably to Defendant. (No. 1:25-cv-22162-BB, ECF No. 239, § IV, at 8-9.)

Defendant's connection to the Hadley/Perez matter has continued well past September 2025, notwithstanding that it remains a legally separate case from this action. On June 18, 2026, counsel for the consolidated plaintiffs and for Ms. Perez filed a motion for sanctions against the Hadleys for alleged violation of a special order restricting extrajudicial statements. (No. 1:25-cv-22162-BB, ECF No. 450.) An exhibit to that motion — an analysis performed by FTI Consulting, Inc. of X (formerly Twitter) accounts followed by Demoree Hadley as of June 13, 2026 — lists Defendant's X account, "MOBBISH_," among the accounts reviewed. (No. 1:25-cv-22162-BB, ECF No. 450-3, at 2.) Defendant testified at her own deposition regarding the limited nature of her contact with Ms. Hadley: that she is a media personality who interviewed Ms. Hadley once, by video call, for a segment that was never released; that no lawyer was present for that interview; and that she has had no contact with Ms. Hadley since. See Deposition of Milagro Elizabeth Cooper, July 21, 2025 [ECF No. 120-1 at 292-306]. Defendant's continued, incidental presence in filings by counsel connected to Ms. Perez — including the same Holland & Knight and Reed Smith attorneys identified above — as recently as June 2026 illustrates the

degree to which Defendant, Ms. Perez, and the firms connected to Judge Altonaga's spouse remain intertwined across this separate but factually overlapping litigation, notwithstanding that Pete v. Cooper and the Hadley/Perez matter are not formally related cases. (Exhibits F, G.)

**D. Reed Smith LLP's Representation of Roc Nation, LLC Alongside Quinn Emanuel's Representation of Plaintiff's Own Business Entities in a Separate Federal Matter.**

Joanna Menillo, counsel of record for Plaintiff in this action, and Alex B. Spiro, an attorney at the same firm, Quinn Emanuel Urquhart & Sullivan, LLP, have each represented interests connected to Plaintiff beyond this litigation. Mr. Spiro has not entered a formal appearance in this case, but has been publicly and repeatedly identified in press coverage as Plaintiff's attorney in a separate, widely reported California criminal matter involving Plaintiff. Mr. Spiro was also the first attorney from Quinn Emanuel Urquhart & Sullivan, LLP to contact Defendant directly, notifying her by email on or about October 29, 2024 of the impending lawsuit and transmitting a litigation-hold/preservation notice, prior to Defendant's formal service in this action.

This overlapping representation is corroborated by a second, independent matter. In Garcia v. Roc Nation LLC, et al., No. 1:24-cv-07587-GHW (S.D.N.Y.) (Woods, J.) — a labor action removed from the Central District of California, No. 2:24-cv-04448, and filed October 7, 2024 — Roc Nation, LLC is named as a defendant alongside Plaintiff's own affiliated business entities, Hot Girl Touring, LLC and Megan Thee Stallion Entertainment, Inc., and alongside Plaintiff herself, sued there under the name Megan Thee Stallion. As reflected in a December 11, 2025 certificate of service filed in that action, Roc Nation, LLC is represented there by Reed Smith LLP attorneys Michael R. Kleinmann, Charlyn Jones, Corrie Buck, and Jordan W. Siev, while Plaintiff and her affiliated entities are represented by the same team of Quinn Emanuel Urquhart & Sullivan, LLP attorneys who represent Plaintiff in this action, including Ms. Menillo and Mr. Spiro. See Certificate of Service, Garcia v. Roc Nation LLC, No. 1:24-cv-07587-GHW, ECF No. 174 at 32 (S.D.N.Y. Dec. 11, 2025). (Exhibit H.)

Garcia is accordingly an independent matter in which Reed Smith LLP — the same firm that separately represents Ms. Perez as plaintiff in the consolidated Hadley matter, see supra § IV.C, and that submitted the DMCA takedown request described below, see infra § IV.E — represents Roc Nation, LLC as a co-defendant in litigation where Plaintiff's own business entities are

represented by Plaintiff's own litigation team in this action. This further illustrates the ongoing relationship between Ms. Perez's company and the firms and individuals connected to this litigation.

**E. Public Reporting on These Relationships Was the Subject of a DMCA Takedown Request Submitted Through Reed Smith LLP, a Firm That Separately Represents Ms. Perez, Shortly After Defendant Was Referenced in the Separate Hadley/Perez Litigation.**

On September 27, 2025 — twelve days after Defendant was referenced, by initials, in the separate Hadley/Perez matter, see supra § IV.C — a commentary account on X, "Lex Noir" (@noir_lex), published a post titled "Roc Nation, the Bench, and the Appearance of Bias," raising questions about a potential appearance of bias arising from Judge Altonaga's supervision of matters involving Ms. Perez, given that the Judge's spouse is a senior partner at a firm that has represented Roc Nation. See Lex Noir (@noir_lex), X post (Sept. 27, 2025), https://x.com/noir_lex/status/1971941741487182313?s=46&t=5p7ntu1YYbiVd_VqX8ZfrQ (last visited July 1, 2026); Lex Noir, Roc Nation, the Bench, and the Appearance of Bias, Substack (Sept. 27, 2025), https://substack.com/@lexnoir/note/p-173890549?r=fn54z&utm_medium=ios&utm_source=notes-share-action (last visited July 1, 2026). (Exhibit I.)

That same day, a second X account, "Riri" (@LcdBarbie), reposted the Lex Noir article and stated that the original post had been removed from X the previous day pursuant to a copyright complaint submitted on behalf of Shawn Carter, including a screenshot identifying the submitting attorney as John Kennedy of Reed Smith LLP. See Riri (@LcdBarbie), X post (Sept. 27, 2025), https://x.com/lcdbarbie/status/1971945576691651057?s=46&t=5p7ntu1YYbiVd_VqX8ZfrQ (last visited July 1, 2026). Mr. Carter is a co-founder of Roc Nation, LLC, also represented by Reed Smith LLP, and the underlying photograph subject to the copyright complaint depicted Mr. Carter and Ms. Perez together. Reed Smith LLP is the same firm that separately represents Ms. Perez as plaintiff in the consolidated Hadley matter described above, see supra § IV.C. Defendant does not contend that Holland & Knight LLP submitted or was involved in this takedown request; Defendant notes only that a firm with a direct, separate representation of Ms. Perez sought removal of online reporting concerning the

relationships at issue in this Motion, through a DMCA request, within days of Defendant's own reference in litigation involving Ms. Perez. (Exhibit J.)

Defendant respectfully submits that this sequence of events supports a reasonable inference that individuals and firms connected to Ms. Perez were aware, at or near the time of the article's publication and well before trial commenced in this action on November 17, 2025, of the relationships and connections Defendant raises here.

**F. Timing of Defendant's Discovery of These Facts.**

The facts giving rise to this Motion came to Defendant's attention no later than May 29, 2026, when two separate X accounts independently directed her attention to the article. First, an account styled "Queen Nicki" (@queenfractions), a self-identified fan account, reposted the September 27, 2025 Lex Noir post and tagged Defendant's X account, @MOBBISH_, directly beneath it. See Queen Nicki (@queenfractions), X post (May 29, 2026), https://x.com/queenfractions/status/2060464913034703091?s=46&t=5p7ntu1YYbiVd_VqX8ZfrQ (last visited July 1, 2026). Second, a separate account, "Mickey M" (@ParisNchicago), a self-identified commentary account, independently posted "Reminder: @MOBBISH_" the same day. See Mickey M (@ParisNchicago), X post (May 29, 2026), https://x.com/parisnchicago/status/2060462041270276346?s=46&t=5p7ntu1YYbiVd_VqX8ZfrQ (last visited July 1, 2026). After reviewing those posts, Defendant located and reviewed the underlying September 27, 2025 article and the related posts described in Section IV.E, and thereafter began independently researching the attorneys, firms, and relationships identified therein. (Exhibits K, L.)

Defendant understands, based on her review of the public commentary described above, that renewed attention to the September 27, 2025 article coincided with this Court's May 29, 2026 Order reinstating the jury verdict [ECF No. 317], which generated substantial online discussion among Defendant's supporters and followers; it was in that context that the article began recirculating and was brought to Defendant's attention.

Upon learning of these facts, Defendant took prompt steps to investigate. That investigation included reviewing publicly available attorney biographies, news articles, and court dockets to verify the attorney-client and firm relationships among the parties, non-parties, and counsel

described in this Motion, including Defendant's own continued, incidental presence in the separate Hadley/Perez matter, see supra § IV.C.

Taken together, the timeline set forth above reflects diligence at each stage: Defendant's trial counsel's representation ended January 9, 2026, see supra § II; Defendant has proceeded pro se since January 12, 2026, during which time she was focused on preserving her appellate rights, including filing her original Notice of Appeal on January 2, 2026 and her Amended Notice of Appeal on June 30, 2026, see supra § II; she first learned of the September 27, 2025 article and the underlying relationships on May 29, 2026; she began investigating those facts immediately upon learning of them; she independently verified each fact set forth in this Motion using publicly available court dockets, attorney biographies, and news articles; and she is filing this Motion promptly upon completing that investigation.

## V. ARGUMENT

### A. A Reasonable, Objective Observer Would Question the Appearance of Impartiality Under the Objective Standard of § 455(a) and Liljeberg.

Section 455(a) applies an objective standard: a violation is established when a reasonable, informed person — one who not only knows the relevant facts but understands their significance — would conclude that the judge's impartiality might reasonably be questioned. Liljeberg, 486 U.S. at 859-61; Pepsico, Inc. v. McMillen, 764 F.2d 458, 460 (7th Cir. 1985); Chase Manhattan Bank v. Affiliated FM Ins. Co., 343 F.3d 120, 132 (2d Cir. 2003). At its core, this Motion rests on four facts, each independently documented in the record: (1) the presiding judge's spouse has been a partner at Holland & Knight LLP for nearly four decades and sits on that firm's Board of Directors, see supra § IV.A; (2) Holland & Knight LLP represents Ms. Perez, see supra §§ IV.A, IV.C; (3) Ms. Perez was represented on the record, without contradiction, as funding and being personally involved in this litigation from its inception, whether individually or through her company, Roc Nation, LLC, see supra § IV.B; and (4) Plaintiff's own sworn trial testimony corroborates that Ms. Perez maintained a standing file on Defendant well before suit was filed, see supra § IV.B. Those four facts, standing alone, establish that a reasonable person, aware of and understanding them, would question whether the presiding judge's impartiality might reasonably be questioned. The additional facts set forth above — including the overlapping

representation across multiple federal matters, see supra § IV.D, and the DMCA-related events described above, see supra § IV.E — are offered as further, corroborating context regarding the extent to which Ms. Perez and firms connected to her are enmeshed in overlapping litigation; they reinforce, but are not necessary to, the core showing above.

## B. The Firm-Wide Imputation Principle Confirms That Mr. Mencio's Partnership Interest Is Properly Considered in This Analysis.

It is well settled that the interest and appearance created by one member of a law firm is imputed to the firm as a whole under ordinary principles of partnership and agency law. See SCA Services, Inc. v. Morgan, 557 F.2d 110, 116-17 (7th Cir. 1977) (per curiam) (disqualifying a district judge whose brother was a partner in a firm involved in the case, holding that the appearance of the firm in the case is the appearance of every lawyer in the firm); see also Schloetter v. Railoc of Ind., Inc., 546 F.2d 706, 710 (7th Cir. 1976) (confidential information and interests presumptively possessed by one attorney are imputed to that attorney's firm); ABA Comm. on Prof'l Ethics, Formal Op. 33 (1931) (every member of a law firm is prohibited from accepting employment that another member could not accept because of a conflict of interest). Mr. Mencio has been a partner at Holland & Knight LLP for nearly forty years and currently sits on the firm's governing Board of Directors, see supra § IV.A — a leadership role considerably more central to the firm's affairs than the rank-and-file partnership at issue in SCA Services. Under the imputation principle recognized in SCA Services, Holland & Knight's representation of Ms. Perez is properly considered an interest shared, in a professional and reputational sense, by every partner of the firm, including Mr. Mencio.

## C. Defendant Anticipates the Argument That This Connection Is Too Attenuated to Warrant Relief, and Respectfully Submits the Governing Case Law Is Distinguishable.

Defendant anticipates that Plaintiff may cite decisions declining to require disqualification based on a relative's law firm connection where that connection was brief, historical, or had concluded well before the challenged proceedings. See S.J. Groves & Sons Co. v. Int'l Bhd. of Teamsters, 581 F.2d 1241, 1246-49 (7th Cir. 1978) (disqualification not required where the firm in which the judge's brother was a partner had withdrawn from the case at an early stage); In re Shadur, 839 F.2d 1226, 1229-33 (7th Cir. 1988) (disqualification not required where the relative's firm

engagement lasted approximately one month, involved compensation of less than $10,000, and had concluded long before the judge's substantive rulings, such that neither the judge nor his relative retained any interest in the case's outcome by the time of decision). Defendant respectfully submits that the facts here are materially distinguishable from Groves and Shadur in at least three respects.

First, unlike the terminated, weeks-long engagements at issue in those cases, Holland & Knight's and Reed Smith's representation of Ms. Perez has been active and ongoing — spanning from before the September 2025 article, through trial in this action, through entry of both the original and Amended Final Judgment, and continuing, on the present record, through at least June 2026, see supra §§ IV.C, IV.E. The connection at issue here is contemporaneous with every material stage of this litigation, not a stale or concluded engagement of the kind that led those courts to decline disqualification.

Second, the interest identified in this Motion is not limited to the professional connection between Mr. Mencio's firm and Ms. Perez; it is reinforced by Ms. Perez's own documented, sustained, and — per Plaintiff's sworn testimony — personally motivated interest in litigation against Defendant specifically, see supra § IV.B, a circumstance with no analog in Groves or Shadur.

Third, the DMCA-related removal of online reporting on these very relationships, see supra § IV.E, has no counterpart in either case and independently supports an inference of contemporaneous knowledge of the publicly discussed relationships, rather than the kind of attenuated, after-the-fact connection those courts found insufficient.

### D. Defendant Proceeds Under § 455(a)'s Independent, Broader "Appearance" Standard.

Defendant recognizes that the facts recited above do not fit neatly within the enumerated, mandatory categories of § 455(b) — for example, Mr. Mencio is not counsel of record in this action, and § 455(b)(5) by its terms applies where a judge's spouse is "acting as a lawyer in the proceeding" or has an interest "that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(ii)-(iii). Defendant therefore proceeds under § 455(a)'s independent and considerably broader standard, which does not require that the disqualifying relationship fit within § 455(b)'s specific categories, but instead asks only whether a reasonable,

informed observer would question the judge's impartiality based on the totality of the circumstances. See Liljeberg, 486 U.S. at 859-60 (§ 455(a) was intended to promote public confidence in the integrity of the judicial process independent of the specific circumstances enumerated in § 455(b)). Defendant submits that this is a deliberate and appropriate choice of legal theory given the facts here, not an attempt to invoke an inapplicable standard, and respectfully requests that the Court evaluate this Motion accordingly.

**E. The Liljeberg Factors Favor Vacatur.**

1. Risk of injustice to the parties. The original Final Judgment, entered December 2, 2025, awarded Plaintiff $59,000.00 in compensatory and punitive damages on Counts II and III of the Second Amended Complaint, after the Court determined that Plaintiff's defamation claim (Count I) could not proceed to judgment because Plaintiff had failed to serve the pre-suit notice required under Florida law. [ECF No. 227 at 2.] On May 29, 2026, the Court granted in part Plaintiff's motion to reinstate the jury's verdict as to the defamation claim and entered the Amended Final Judgment the same day, awarding Plaintiff a total of $75,000.00 across all three counts — $15,000 in compensatory damages for defamation per se, $8,000 in compensatory damages for intentional infliction of emotional distress, $50,000 in compensatory damages for promotion of an altered sexual depiction, and $1,000 in punitive damages on each of the defamation and emotional-distress claims. [ECF Nos. 226 at 4-5, 317, 318.] Defendant subsequently moved to stay enforcement of the Amended Final Judgment pending appeal, or in the alternative to reduce the supersedeas bond required to obtain such a stay [ECF No. 319]. That motion was opposed [ECF No. 320], and Defendant's reply was supported by a sworn declaration describing her financial circumstances [ECF Nos. 321, 322]. The Court denied the motion on June 29, 2026, noting that the declaration should have accompanied the original motion; the declaration nonetheless remains part of the record in this action. [ECF No. 323.] The Amended Final Judgment is accordingly enforceable against Defendant now, during the pendency of her appeal.

Defendant's sworn declaration, filed in support of her reply in further support of that motion, states, without contradiction in this record, that she is self-employed and earns income primarily through audience support, subscriptions, platform monetization, and related content-creation activity; that this income fluctuates significantly and is not guaranteed; that she is responsible for supporting her household and two minor children; that she does not own a home or other

substantial real property; and that she lacks sufficient liquid assets to post a full supersedeas bond without imposing severe financial hardship on herself and her family. [ECF No. 322 ¶¶ 2-7.] The declaration further states that Defendant has, over the course of this litigation, lost multiple attorneys and at various stages relied on legal assistance provided without compensation, and that she now proceeds entirely pro se. [Id. ¶ 12.] It also states that Defendant lost one of her primary sources of income — a contract with Stationhead — during the pendency of this litigation, contributing substantially to the financial hardship she and her family have experienced. [Id.]

This financial exposure stands in direct contrast to the record concerning Plaintiff. As set forth above, Plaintiff's litigation has been funded throughout by non-party Desiree Perez, individually or through her company, Roc Nation, LLC, see supra § IV.B, and Plaintiff — together with her own affiliated business entities and Ms. Perez's company — has been represented, often simultaneously across multiple, independent federal matters, by the same team of attorneys at Quinn Emanuel Urquhart & Sullivan, LLP. See supra §§ IV.B, IV.D. Enforcement of a $75,000 judgment, now unstayed, poses a materially different — and considerably more severe — practical risk to a self-employed, unrepresented individual defendant supporting minor children than any risk delay poses to a plaintiff who is represented by well-resourced counsel and has, on this record, been funded by a non-party with the documented means to retain multiple law firms across multiple matters simultaneously. Absent relief, Defendant faces irreparable harm to her livelihood and her ability to support her household during the pendency of an appeal from a judgment entered without disclosure of the circumstances set forth in this Motion. Defendant respectfully submits that this asymmetry weighs in favor of relief under the first Liljeberg factor.

2. Risk of injustice in other cases. Declining to grant relief on these facts risks discouraging the prompt investigation and disclosure of judicial relationships by future litigants, undermining § 455(c)'s requirement that a judge "make a reasonable effort to inform himself about the personal financial interests of his spouse." 28 U.S.C. § 455(c).

3. Risk to public confidence in the judicial process. The underlying facts here were the subject of public reporting as early as September 2025, see supra § IV.E, and the fact that a firm connected to a non-party funder of this litigation sought removal of that reporting through a DMCA request heightens, rather than diminishes, the public interest in the Court's transparent resolution of this

Motion. See Liljeberg, 486 U.S. at 864, 868 (the purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible).

**F. Defendant Anticipates and Addresses the Argument That This Motion Is Untimely or Was Waived.**

Defendant anticipates that Plaintiff may argue that the underlying facts were publicly available — including through the September 2025 Lex Noir article itself — well before Defendant raised them, and that Defendant should therefore be charged with constructive notice sufficient to bar relief. Defendant respectfully submits that this argument should be rejected for several reasons.

First, Rule 60(b)(6) asks whether the movant exercised due diligence upon learning the relevant facts, not whether the information was theoretically discoverable earlier by an idealized, omniscient litigant. See Liljeberg, 486 U.S. at 863 n.11 (movant's diligence, not the theoretical availability of the underlying facts, governs the timeliness inquiry); Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 393 (1993) (Rule 60(b)(6) relief requires that the movant be "faultless in the delay"). In Liljeberg itself, the Supreme Court excused a ten-month delay in seeking relief where the delay was attributable to circumstances beyond the movant's control, notwithstanding that the underlying conflict — the judge's own trustee position — was a matter of public record throughout that period. 486 U.S. at 862-64, 869.

Second, Defendant was, during the relevant period, a self-represented, non-attorney litigant actively engaged in preserving her rights through direct appeal, not a litigant who made a considered choice to forgo this ground for relief while possessing the facts necessary to raise it. Compare Ackermann v. United States, 340 U.S. 193, 198 (1950) (relief unavailable where movant made a "free, calculated, deliberate choice" not to pursue a known remedy), with Klapprott v. United States, 335 U.S. 601, 613-14 (1949) (relief available where circumstances beyond the movant's control prevented earlier action).

Third, and most directly, Defendant's own account of when and how she actually learned of these specific facts — set forth in detail at Section IV.F above, and supported by dated, publicly available social-media posts — establishes the diligence required by Gonzalez v. Crosby, 545 U.S. 524, 535 (2005), and its progeny, including the Supreme Court's most recent reaffirmation

of the "faultless in the delay" standard in BLOM Bank SAL v. Honickman, 605 U.S. ___, ___ (2025).

### G. Defendant's Circumstances Satisfy Rule 60(b)(6)'s "Extraordinary Circumstances" Standard.

Relief under Rule 60(b)(6) is available only upon a showing of "extraordinary circumstances." Klapprott, 335 U.S. at 613-14; Gonzalez, 545 U.S. at 535; BLOM Bank SAL, 605 U.S. at ___. Defendant respectfully submits that the combination of circumstances present here — an undisclosed judicial relationship implicating the objective standard of § 455(a); sworn trial testimony corroborating the interested non-party's sustained, personal interest in pursuing Defendant; documented, contemporaneous efforts by counsel connected to that non-party to seek removal of public reporting on the relationship through a DMCA request; a $75,000 judgment now enforceable against a self-employed, pro se defendant supporting minor children; and Defendant's own diligent, good-faith investigation upon first learning these facts while proceeding pro se and without appellate counsel's assistance — together satisfy this demanding standard, and are readily distinguishable from the "free, calculated, deliberate choice[s]" that the Supreme Court has held insufficient in cases such as Ackermann. 340 U.S. at 198.

### VI. RELIEF REQUESTED

Because Defendant's Amended Notice of Appeal [ECF No. 324] is currently pending before the United States Court of Appeals for the Eleventh Circuit, this Court presently lacks authority to grant this Motion outright. See Fed. R. Civ. P. 62.1(a). Accordingly, Defendant respectfully requests that this Court issue an indicative ruling pursuant to Fed. R. Civ. P. 62.1(a)(3), stating either (a) that it would grant this Motion if the Eleventh Circuit remands for that purpose, or (b) that this Motion raises a substantial issue warranting such a remand, so that Defendant may notify the Eleventh Circuit accordingly pursuant to Fed. R. App. P. 12.1(a).

WHEREFORE, should the Eleventh Circuit remand this action for that purpose, Defendant respectfully requests that this Court vacate the Final Judgment [ECF No. 227] and Amended Final Judgment [ECF No. 318] pursuant to Fed. R. Civ. P. 60(b)(6).

### VII. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court issue an indicative ruling pursuant to Fed. R. Civ. P. 62.1, and, should the Eleventh Circuit remand for that purpose, grant this Motion.

## CERTIFICATE OF CONFERRAL PURSUANT TO S.D. FLA. L.R. 7.1(a)(3)

Defendant certifies that she conferred with counsel for Plaintiff by email sent on July 2, 2026, requesting Plaintiff's position on the relief sought in this Motion. Counsel for Plaintiff responded by email on July 5, 2026, stating that Plaintiff objects to this Motion. Accordingly, the parties have been unable to resolve the issues raised herein.

Respectfully submitted,

Milagro Elizabeth Cooper

Defendant, Pro Se

21175 Tomball Parkway #529

Houston, Texas 77070

Email: milagrogramz@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 6th, 2026, I filed the foregoing with the Clerk of the Court and served a true and correct copy on all counsel of record by [electronic filing / U.S. Mail, postage prepaid], addressed as follows:

Alejandro Brito (Fla. Bar No. 098442)

Jalaine Garcia (Fla. Bar No. 058632)

abrito@britopllc.com

jgarcia@britopllc.com

BRITO, PLLC

2121 Ponce de Leon Boulevard, Suite 650

Miami, FL 33134

(305) 614-4071

Daniel L. Humphrey (Fla. Bar No. 1024695)

danielhumphrey@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP

2601 S. Bayshore Drive, Suite 1500

Miami, FL 33133

(305) 402-4880

Mari F. Henderson (pro hac vice)

Marie Hayrapetian (pro hac vice)

marihenderson@quinnemanuel.com

mariehayrapetian@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP

865 South Figueroa Street, 10th Floor

Los Angeles, CA 90017

(213) 443-3000

Joanna E. Menillo (pro hac vice)

Stephanie Kelemen (pro hac vice)

joannamenillo@quinnemanuel.com

stephaniekelemen@quinnemanuel.com

QUINN EMANUEL URQUHART & SULLIVAN, LLP

295 Fifth Avenue

New York, NY 10010

(212) 849-7050

Attorneys for Plaintiff

Milagro Elizabeth Cooper, Defendant, Pro Se

