**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 24-24228-CIV-ALTONAGA/Reid**

MEGAN PETE,

          Plaintiff,

v.

MILAGRO ELIZABETH COOPER,

          Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION**
**FOR RELIEF FROM JUDGMENT PURSUANT TO FED. R. CIV. P. 60(b)(6)**

Plaintiff MEGAN PETE ("Plaintiff"), by and through her undersigned counsel, hereby submits this response in opposition to the Motion For Relief From Judgment Pursuant to Fed. R. Civ. P. 60(b)(6) [ECF No. 328] (the "Motion"), the supporting Declaration [ECF No. 329], and the Notice of Supplemental Facts [ECF No. 330], filed by Defendant MILAGRO ELIZABETH COOPER ("Defendant"), and in support states as follows:

**INTRODUCTION**

Defendant asks this Court to vacate a judgment entered on a jury's verdict — a verdict returned after a multi-day trial at which Defendant was represented by counsel, testified at length, and presented her own case — based on a theory she admits she found on social media. The theory runs as follows: the presiding judge's spouse is a partner at Holland & Knight LLP; different lawyers at Holland & Knight represent Desiree Perez ("Ms. Perez"), who is *not a party* to this action, in a *different* lawsuit, pending before a *different* judge of this District; Ms. Perez is the CEO of Plaintiff's management company; therefore, a reasonable observer would question the Court's

1

impartiality in this case. That is not a showing under 28 U.S.C. § 455(a). It is a chain of innuendo connecting the Court to this litigation through two law firms that have never appeared in it and a person who has never been a party to it. Defendant subsequently filed a set of "supplemental facts" that, as shown below, defeat her Motion rather than support it.

The Motion fails three times over. *First*, it fails on the merits. Section 455(a) asks whether an objective, disinterested, fully informed lay observer would entertain significant doubt about the judge's impartiality — not whether a losing litigant, mining attorney biographies and third-party dockets after judgment, can draw lines between strangers to the case. Neither the presiding judge, nor her spouse, nor his firm has any interest — financial, professional, or otherwise — in the outcome of this action. Every authority that Defendant cites involved a judge or a judge's relative with an actual connection to the case before the court. None supports disqualification, much less vacatur, on the attenuated facts alleged here.

*Second*, the Motion is untimely, and the argument is waived. By Defendant's own account, the entire theory was published on X on September 17, 2025 — seven weeks *before* trial began — in a post expressly directed at the purported relationship between this Court and Ms. Perez. Every "fact" in the Motion is drawn from *public* dockets, *public* attorney biographies, and *public* social media. Defendant, a self-described commentator who broadcasts for hours each day and litigated this case through counsel until January 2026, did not raise the issue before trial, during trial, before judgment, or at any point in the seven months that followed — including while she briefed and lost a motion to stay enforcement of the Amended Final Judgment in June 2026. A recusal theory held in reserve and deployed only after every adverse ruling has issued is a litigation tactic, not a basis for relief.

*Third*, nothing about this record is "extraordinary" within the meaning of Rule 60(b)(6).

2

Defendant's liability was determined by a jury, not the Court. The financial hardship she describes is the ordinary consequence of an adverse money judgment — and Defendant recycles, nearly verbatim, the arguments this Court rejected in denying her motion to stay enforcement. [ECF No. 323]. Rule 60(b)(6) does not exist to give a losing party a second appeal, and it "does not reward a party that seeks to avoid the consequences of its own free, calculated, and deliberate choices." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1357 (11th Cir. 2014) (quotation marks and citations omitted).

Because Defendant's appeals are pending, the Motion is styled as a request for an indicative ruling under Federal Rule of Civil Procedure 62.1. The Court need not defer consideration or issue an indicative ruling. Rule 62.1(a)(2) expressly authorizes the Court to *deny* the Motion outright, notwithstanding the pending appeals. It should do so.

## BACKGROUND

Plaintiff sued Defendant in October 2024 for defamation per se, promotion of an altered sexual depiction in violation of Fla. Stat. § 836.13, intentional infliction of emotional distress, and cyberstalking. *See* Second Am. Compl. [ECF No. 37]. The case was tried to a jury over nine trial days between November 17 and December 1, 2025, with Defendant represented by counsel throughout. *See* May 29, 2026 Order [ECF No. 317] ("Order") at 4 n.2. On December 1, 2025, the jury found Defendant liable to Plaintiff on Counts I (defamation per se), II (promotion of an altered sexual depiction), and III (intentional infliction of emotional distress). *See* Verdict [ECF No. 226]; Order at 13.

Because the jury also answered special interrogatories concerning Defendant's claimed news-media status — interrogatories all parties agreed to submit, with the Court's repeated assurance that the issue would remain subject to post-verdict briefing — the Court initially entered

Final Judgment on Counts II and III only. *See* Final Judgment [ECF No. 227]; Order at 10–13. On Plaintiff's post-trial motion [ECF No. 257], which Defendant opposed through counsel [ECF No. 304], the Court held on a full trial record that Defendant was not entitled to pre-suit notice under Fla. Stat. § 770.01, reinstated the jury's defamation verdict, and entered an Amended Final Judgment awarding Plaintiff $75,000.00 across all three counts. *See* Order at 20–25; Am. Final Judgment [ECF No. 318].

The sequence of Defendant's appellate and post-judgment filings is central to the timeliness and extraordinary circumstances questions that the Motion raises. Defendant first appealed on January 2, 2026, filing a Notice of Appeal from the December 2, 2025 Final Judgment on Counts II and III. [ECF No. 283]. That notice was filed through counsel while Plaintiff's post-trial motion to reinstate the defamation verdict and amend the judgment [ECF No. 257] remained pending – a motion Defendant was then opposing through counsel [ECF No. 304]. At no point in that briefing did Defendant suggest that the presiding judge's impartiality could reasonably be questioned.

After the Court granted that motion in part and entered the Amended Final Judgment on May 29, 2026 [ECF Nos. 317, 318], Defendant continued to invoke this Court's processes. On June 3, 2026, she moved to stay enforcement of the Amended Final Judgment and to waive or reduce the supersedeas bond [ECF No. 319] – asking this very judge, whose impartiality she now questions, to exercise discretion in her favor and expressly representing that she was "pursuing appellate review in good faith." She then filed an Amended Notice of Appeal on June 30, 2026 (mailed June 25, 2026), encompassing the Amended Final Judgment and all rulings merged in it, including the May 29 Order [ECF No. 324]. Neither filing said anything about disqualification. The Court denied the stay motion on June 29, 2026 [ECF No. 323]. Only *then* – nine days after

losing her motion to stay motion, more than six months after her first Notice of Appeal, and after two notices of appeal and a discretionary stay request that never hinted at any partiality concern – did Defendant file the present Rule 60(b)(6) Motion, on July 8, 2026, asking the Court to vacate both judgments on the theory that circumstances creating an "appearance of partiality" under 28 U.S.C. § 455(a) were not disclosed to her. Defendant's Motion expressly disclaims any allegation of actual bias and concedes that the mandatory disqualification provisions of § 455(b) do not apply. Notably, the Motion does not ask the presiding judge to recuse herself from anything. It asks only that the judgments Defendant lost be vacated.

Because a notice of appeal transfers jurisdiction over the matters appealed to the court of appeals and divests the district court of authority over those aspects of the case, *see Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982) (per curiam), and both of Defendant's notices of appeal are effective, this Court cannot grant the Motion outright. Defendant accordingly styles the Motion as a request for an indicative ruling under Federal Rule of Civil Procedure 62.1. As explained below, the Court may deny the Motion without issuing an indicative ruling. Rule 62.1(a)(2) authorizes the Court to deny the Motion notwithstanding the pending appeals. That Defendant twice invoked this Court's judgments as the basis for appellate relief – and asked this very judge to exercise discretion in her favor on the stay motion – before turning around to argue that the same judge's impartiality was reasonably in question is itself telling.

The post-judgment filings have continued. On July 10, 2026 — two days after filing the present Motion — Defendant moved the United States Court of Appeals for the Eleventh Circuit to stay the briefing schedule and hold her appeal in abeyance pending this Court's ruling on the instant Motion. *See* USCA11 Case No. 26-10032, Doc. 23. Defendant simultaneously transmitted to the Eleventh Circuit, as an exhibit to that appellate motion, a "Notice of Supplemental Facts in

Support of Pending Motion for Relief from Judgment," which she mailed to this Court and which has since been docketed. [ECF No. 330]. Defendant neither sought nor obtained leave to file it. Plaintiff addresses the Supplemental Notice's assertions on the merits below, so that no further round of briefing is required.

**ARGUMENT**

**I.      Legal Standard**

Rule 60(b)(6) is a "catchall" available "only when Rules 60(b)(1) through (b)(5) are inapplicable" and only upon a showing of "extraordinary circumstances" justifying reopening. *Kemp v. United States*, 596 U.S. 528, 533 (2022) (quotation marks and citation omitted); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005); *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 214 (2025) ("A party seeking Rule 60(b)(6) relief must always demonstrate 'extraordinary circumstances' justifying relief."). Relief under the Rule lies in the Court's "sound discretion," *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (quotation marks and citation omitted), and is unavailable to a movant seeking "to avoid the consequences of [her] own free, calculated, and deliberate choices," *Aldana*, 741 F.3d at 1357 (alteration added; quotation marks and citations omitted); *see Ackermann v. United States*, 340 U.S. 193, 198 (1950). The movant bears the burden.

Because a notice of appeal has been filed, Rule 62.1 governs. It provides that the Court "may: (1) defer considering the motion; (2) deny it; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a). The pendency of the appeal is no obstacle to outright denial.

**II.     The Court Should Deny the Motion Outright Under Rule 62.1(a)(2).**

Defendant requests that the Court either state it would grant the Motion on remand or certify that the Motion raises a "substantial issue." Neither is warranted, but those are not the

Court's only options. Rule 62.1(a)(2) authorizes the Court to deny the Motion now, without awaiting any action by the Eleventh Circuit. Because the Motion fails on its face — on the merits, on timeliness, and on the demanding Rule 60(b)(6) standard — the Court should exercise that authority and deny it.

**III.    The Motion Fails on the Merits.**

    **A.    No Objective Observer Would Question the Court's Impartiality on These Facts.**

        *1.    Section 455(a) requires significant doubt held by a fully informed, objective observer — not speculation assembled from strangers to the case.*

Under § 455(a), the question is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (citation omitted). The standard is objective, but it is also demanding. A judge "should not recuse himself on unsupported, irrelevant, or highly tenuous speculation," and has as strong an obligation not to step aside when the statute does not require it as to step aside when it does. *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (quotation marks and citation omitted). Section 455(a) protects public confidence in the judiciary. It is not a device by which a disappointed litigant may undo a jury verdict by tracing degrees of separation between the judge's family and persons who are not before the Court.

Stripped of its rhetoric, the Motion alleges the following: (1) the presiding judge's spouse, George Mencio, Jr., is a partner at Holland & Knight; (2) Holland & Knight attorneys — not Mr. Mencio — represent Desiree Perez in *Hadley v. Perez*, No. 1:25-cv-22162-BB, a separate action pending before a different judge of this District; (3) Ms. Perez is the CEO of the management company that manages Plaintiff and, per statements by *Defendant's former counsel* at a September

7

5, 2025 status conference, was involved in this litigation; and (4) Plaintiff testified she asked Ms. Perez to preserve materials concerning Defendant before filing suit.

Even taken at face value, these facts establish no connection — none — between this case and the presiding judge, her spouse, or his firm. Mr. Mencio has never appeared in this action. No Holland & Knight lawyer has ever appeared in this action. Holland & Knight does not represent Plaintiff.  Holland & Knight's client, Ms. Perez, is not a party here, and her separate dispute is being litigated before another judge. Nothing about the outcome of *this* case affects Holland & Knight, its fees, Mr. Mencio, or Ms. Perez's position in the *Hadley* matter in any way. Defendant does not and cannot allege otherwise. An objective observer, fully informed of those facts, would understand that judges' spouses at large law firms have colleagues with thousands of clients, and that a colleague's representation of a non-party in an unrelated case creates no doubt — let alone significant doubt — about the judge's impartiality. Were it otherwise, no judge married to a lawyer at a national firm could ever preside over any case touching, however remotely, anyone the firm has ever represented.

Defendant concedes that the mandatory spousal-disqualification provisions of § 455(b)(5) do not apply, and proceeds solely under § 455(a)'s appearance standard. That leaves her to argue that a relationship Congress did not treat as disqualifying nonetheless creates an appearance of partiality – which it does not, for the same reason it fails every other test—the connection runs only through a firm that never appeared in this case, to a non-party, in separate litigation before a different judge.

The factual predicate is weaker still than the Motion lets on. The asserted "funding" of this litigation rests entirely on unsworn statements by Defendant's *own former counsel* at a status conference — statements Plaintiff's counsel answered by confirming only that Ms. Perez is the

8

CEO of Plaintiff's management company, which manages Plaintiff's business. Ms. Perez does not handle cash or money for Plaintiff and paid no bills in this litigation. Defendant leans hardest on a single line of Plaintiff's trial testimony—that, over a year before the suit, Plaintiff told Ms. Perez she wanted to sue Defendant and hoped Ms. Perez's staff had "been keeping all the info and folder on her." From the word "folder," Defendant builds the image of a standing dossier—evidence, she says, of Ms. Perez's sustained, personal drive to pursue Defendant. But the testimony shows only that a prospective plaintiff asked her own manager's CEO to preserve materials relevant to a suit she was contemplating. That is not a sinister "standing folder." It is a litigant discharging the ordinary duty to preserve evidence in anticipation of litigation. And even on Defendant's reading, assistance provided to a plaintiff to pursue her own case is unremarkable and says nothing about the impartiality of the Court, which is the only question § 455(a) asks.

2. ***Every case Defendant cites involved a judge or a judge's relative with an actual connection to the case before the court. None supports relief here.***

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), on which the Motion principally relies, proves the opposite of what Defendant needs. The presiding judge in *Liljeberg* personally served as a trustee of Loyola University, and Loyola was, at that very time, negotiating a land deal whose success depended on how the judge ruled in the case before him. *Id.* at 850-51, 855-58. The conflict was direct. The judge himself sat on the board of an institution with a concrete financial stake in the outcome of the case he was deciding. Nothing of the sort is present here. The presiding judge serves on no such body. Her spouse serves on no such body. And no one connected to the judge stands to gain or lose anything, financially or otherwise, from the result of this case. The judge's spouse's firm has never appeared in it. *Liljeberg* establishes the objective, reasonable observer test that governs § 455(a) – but it came nowhere near suggesting that the test is satisfied

9

by a spouse's partnership in a firm that represents a non-party in a different case before a different judge.

*SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977), on which Defendant builds her "firm-wide imputation" argument, is equally inapposite. There, the judge's brother was a partner in the law firm serving as *counsel of record for a party in the very case before the judge*, and the firm — and thus the brother — stood to share in fees generated by that case. *Id.* at 111–12, 115–17. Whatever one member's appearance in a case may impute to his partners, the imputation principle has no work to do here. Holland & Knight has never appeared in this case, so there is nothing in this case to impute to anyone.

The same is true of *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706 (7th Cir. 1976), which did not involve judicial disqualification at all. It concerned the imputation of client confidences among lawyers within a firm for purposes of *attorney* disqualification under the ethics canons. *Id.* at 708–10. Rules governing when a law firm may appear adverse to a former client say nothing about when a judge's impartiality may reasonably be questioned based on her spouse's partners' unrelated client roster.

Anticipating that Plaintiff would rely on *S.J. Groves & Sons Co. v. International Brotherhood of Teamsters*, 581 F.2d 1241 (7th Cir. 1978), and *In re Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania,* 839 F.2d 1226 (7th Cir. 1988), Defendant tries to set them aside on a single ground—the law firms in those cases had only "brief" or "concluded" ties to the relative, whereas Holland & Knight's representation of Ms. Perez is "ongoing." That distinction gets the point backwards. In both *Groves* and *National*, the judge's relative belonged to a firm that had actually appeared *in the case the judge was deciding* — and recusal still was not required. *Groves*, 581 F.2d at 1246–48; *In re National*, 839 F.2d at 1229–33. That is a far closer connection than

10

anything here. Holland & Knight has never appeared in this case at all. If a relative's firm appearing in the very case before the judge does not require recusal, a relative's firm representing a *non-party* in a *different* case before a *different* judge cannot possibly require it. Whether that outside representation is "ongoing" changes nothing. The question under § 455 is the relationship between the judge's family and the case before the judge — not the duration of the family member's firm's relationship with a stranger to the litigation. On that measure, Defendant's "ongoing" representation point concedes the dispositive fact—the representation she describes is ongoing *somewhere else.*

Defendant's citation to *Parker v. Connors Steel Co.*, 855 F.2d 1510 (11th Cir. 1988) likewise undermines her position. In *Parker*, the judge's son was an associate at the law firm representing a *party in the case before the judge* — again, a connection far closer than anything alleged here. The Eleventh Circuit nevertheless held that § 455(b)(5)(iii) was not violated, and that even assuming an appearance problem under § 455(a), vacatur was unwarranted because the violation was harmless under the very *Liljeberg* factors Defendant invokes. *Id.* at 1522–27. *Parker* thus establishes two propositions fatal to the Motion: a relative's association with a firm — even a firm actually appearing in the case — does not automatically require disqualification; and even a proven § 455(a) violation does not automatically justify disturbing a final judgment. Defendant's remaining standard-of-review citations, *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir. 1985), and *Chase Manhattan Bank v. Affiliated FM Insurance Co.*, 343 F.3d 120 (2d Cir. 2003), recite the objective test. Neither involved facts resembling these, and the test these cases recite defeats the Motion for the reasons stated above.

### 3. The "corroborating" allegations involve strangers to this case and are irrelevant.

The balance of the Motion — a DMCA takedown notice, a labor case in the Southern

11

District of New York, and a consultant's exhibit in the *Hadley* matter — does not concern the presiding judge, her spouse, or Holland & Knight at all, as Defendant concedes. The takedown notice was allegedly submitted by Reed Smith LLP — a firm with no alleged connection to Mr. Mencio or the Court — on behalf of Shawn Carter, who is not a party to this case, is not Ms. Perez, and is not alleged to have any relationship to the Court, concerning a photograph. In *Garcia v. Roc Nation LLC*, No. 1:24-cv-07587-GHW (S.D.N.Y.), Quinn Emanuel represents Plaintiff and two of her companies – Hot Girl Touring, LLC and Megan Thee Stallion Entertainment, Inc. – in unrelated labor litigation in another district. That Plaintiff's counsel also represents Plaintiff's own business entities is exactly what one would expect. It reveals nothing about this case, and still less about the presiding judge, whose spouse's firm plays no role in *Garcia* at all.

And the appearance of Defendant's X handle on a list of accounts followed by a litigant in the *Hadley* case establishes only that Defendant's account is among those in a coordinated, paid campaign of accounts that work in concert to post about Roc Nation, Ms. Perez, and Plaintiff on behalf of Tony Lanez – and that Defendant has sought to have those same accounts post in the *Hadley* matter as well, in an effort to connect the two cases. These allegations are offered to create an atmosphere of intrigue around persons who are not before this Court. Section 455(a) is concerned with the impartiality of the *judge.* Conduct by unrelated law firms on behalf of unrelated non-parties cannot generate an appearance of partiality where none exists.

> **4.      *The "supplemental facts" Defendant has announced defeat her Motion rather than support it.***

The Notice of Supplemental Facts advances three new assertions. Each fails, and the first affirmatively destroys the two arguments on which the Motion depends.

*First*, Defendant reports that Holland & Knight — through a partner in its Houston office — previously represented *Plaintiff herself* in a Harris County, Texas contract litigation matter

against her former record label. By Defendant's own exhibits, each of those actions is "Disposed (Final)." They were concluded before this action was filed in October 2024. (Suppl. Notice Exs. A-1, A-4). A relative's firm's *concluded* engagement is precisely the circumstance in which courts decline to find any basis for disqualification — as in *Groves* and *National*, the very decisions Defendant's Motion labors to distinguish on the ground that the engagements there were "brief, historical, or had concluded well before the challenged proceedings." Defendant cannot have it both ways. Having argued that *Groves* and *National* are inapposite because the firm relationships there had ended, she cannot build an appearance-of-partiality theory on a firm relationship that ended before this lawsuit existed. If a relative's firm's concluded appearance *in the very case* does not require recusal, *Groves*, 581 F.2d at 1246–49, a concluded engagement in unrelated, out-of-state contract litigation years earlier cannot.

The supplemental exhibits are more damaging still to Defendant's timeliness position. To document the prior representation, Defendant attaches public Harris County docket records and entertainment-press coverage — including a 2022 article identifying the Holland & Knight partner by name as "Megan's attorney." (Suppl. Notice Exs. A-2, A-5). The fact Defendant now presents as the centerpiece of her supplemented theory was plainly reflected in the press and on public dockets years before trial — and Defendant, by her own trial evidence, broadcasts daily and has centered her commentary on Plaintiff's litigation history, and so was uniquely positioned to know it. A movant cannot claim to have been "faultless in the delay" as to facts that her own exhibits show were publicly reported three years before the verdict.

*Second*, Defendant asserts that in May and June 2026, Holland & Knight represented Roc Nation, LLC in consolidated Harris County litigation brought by a Texas law firm and its former clients, in which Quinn Emanuel is a co-defendant. That is litigation between strangers to this case,

13

in a different forum, in a different State, before a different court — and it postdates the trial and both judgments here. It says nothing about this Court, and adding a third unrelated lawsuit to the pile does not shorten the chain of inferences. It lengthens it.

*Third*, Defendant points to Administrative Order 2024-4, by which the Chief Judge appointed the members of an ad hoc advisory committee to review the District's jury pools — a twelve-member body including a district judge, an Assistant United States Attorney, an Assistant Federal Public Defender, an assistant county attorney, court staff, and private practitioners, among them a Holland & Knight partner. (Suppl. Notice Ex. B). That order is a routine act of court administration, entered January 18, 2024 — nearly nine months before this lawsuit was filed.  On Defendant's theory, that appointment would cast a shadow over every later case involving any client of that partner's firm. Chief judges routinely appoint practicing lawyers to committees of this kind. If each appointment created an appearance of partiality in every matter touching the appointee's firm, the work could not be staffed at all. No reasonable, fully informed observer would draw such an inference, much less harbor the "significant doubt" that § 455(a) requires.

Finally, Local Rule 7.1(c) contemplates a motion, a response, and a reply. It does not authorize serial "notices" of supplemental facts filed without leave — particularly notices first transmitted to the court of appeals as exhibits to a motion to stay. Plaintiff has nonetheless addressed the assertions on their merits so that no further briefing cycle is required.

## IV.     The Motion Is Untimely, and the Argument Was Waived.

Although § 455 contains no express time limit, the Eleventh Circuit has held that a timeliness requirement must be read into the statute: a party must raise a disqualification claim "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Summers v. Singletary*, 119 F.3d 917, 921 (11th Cir. 1997) (citation omitted). The rule

exists precisely to prevent what Defendant attempts here — holding a recusal theory in reserve as insurance against an adverse outcome, then deploying it only after the verdict, the judgment, the amended judgment, and the denial of a stay have all gone against her.

By the Motion's own account, the entire theory was publicly published by no later than September 17, 2025[1] — seven weeks before trial — in a post titled "Roc Nation, the Bench, and the Appearance of Bias" that expressly raised "questions about a potential appearance of bias arising from Judge Altonaga's supervision of matters involving Ms. Perez, given that the Judge's spouse is a senior partner at a firm that has represented Roc Nation." That the theory originated in the same coordinated, paid social media campaign that has been used to target Plaintiff underscores that it was publicly available to Defendant well before trial. Every input into the Motion — Mr. Mencio's firm biography, Holland & Knight's appearance for Ms. Perez in *Hadley*, the September 5, 2025 status conference colloquy at which Defendant's own counsel was the speaker, Plaintiff's November 21, 2025 trial testimony elicited on cross examination by Defendant's own counsel — was either public or known to Defendant's side of the case before the jury retired. Defendant is not an ordinary litigant as to this material. She is, by her own trial evidence, a self-described commentator who broadcasts daily for hours on one of the very platforms where the article circulated, and she was represented by trial counsel through the verdict and until January 2026. *See* Order 4–6. On these facts, the disqualification argument was available before trial and was waived when Defendant proceeded through trial and judgment without raising it.

---

[1] https://lexnoir.substack.com/p/roc-nation-the-bench-and-the-appearance (last visited July 20, 2026); https://x.com/noir_lez/status/1971941741487182313?s=46&t=5p7nu1YYbiVd_VqX8ZfrQ (last visited July 20, 2026).

*Liljeberg* does not excuse the delay. There, the Supreme Court permitted a ten-month post-judgment motion because the movant had no reason to know of the judge's trusteeship, which came to light fortuitously after judgment. 486 U.S. at 850, 861. Here, the asserted basis for disqualification was not buried in a university's board minutes. It was published on social media, before trial, in a post about this judge and Plaintiff's manager — the same channel through which Defendant says she ultimately learned of it. A theory that was one search away from a represented, media-professional litigant for the entire pendency of trial is not the concealed conflict of *Liljeberg*.

Defendant's own supplemental exhibits put the point beyond dispute. The prior Holland & Knight representation of Plaintiff that Defendant now treats as her strongest fact is documented, in her filing, by public Harris County dockets and a 2022 press article naming the firm's partner as Plaintiff's attorney. (Suppl. Notice Exs. A-1 through A-5). Every addition to the theory only lengthens the period during which it was publicly available and unraised. Under *Summers*, a disqualification claim assembled entirely from years-old public materials, raised for the first time after verdict, judgment, amended judgment, and a denied stay, is waived. 119 F.3d at 921.

Even crediting Defendant's assertion that she first learned of the article on May 29, 2026, her ensuing conduct confirms tactics rather than diligence. Over the following six weeks, Defendant filed an Amended Notice of Appeal and fully litigated a motion to stay enforcement or reduce the supersedeas bond [ECF Nos. 319, 321, 322] — asking this very judge for discretionary relief — without a word about disqualification. Only after the Court denied that motion on June 29, 2026 [ECF No. 323] did Defendant file the present Motion. And even now, Defendant does not seek the presiding judge's recusal from any pending or future proceeding. She seeks only the vacatur of the judgments she lost. A litigant genuinely concerned about the Court's impartiality

does not spend the month of June asking the Court for a favorable exercise of discretion and then in July asking that its judgments be erased. That sequence is the signature of the "free, calculated, deliberate choice[s]" for which Rule 60(b)(6) affords no relief. *Ackermann*, 340 U.S. at 198 (alteration added).

**V.      Defendant Identifies No Extraordinary Circumstances Under Rule 60(b)(6).**

Rule 60(b)(6) relief requires "extraordinary circumstances," *Gonzalez*, 545 U.S. at 535, and applies "only as a means to achieve substantial justice when something more" than the ordinary incidents of losing a lawsuit is present. Nothing here qualifies.

*First*, the centerpiece of the "extraordinary circumstances" showing — that a $75,000 judgment is now enforceable against a self-employed defendant — is the ordinary consequence of an adverse money judgment. It is also a recycled version of the hardship arguments Defendant presented in her motion to stay enforcement, which this Court considered and denied. [ECF Nos. 319–323]. Rule 60(b) is not a vehicle for relitigating a denied stay motion, and financial hardship flowing from a judgment is a matter for supersedeas and appeal, not vacatur.

*Second*, the authorities Defendant cites confirm how far short she falls. In *Klapprott v. United States*, 335 U.S. 601 (1949), the movant's citizenship was stripped by *default* while he was imprisoned, ill, and penniless — deprived of any opportunity to defend at all. *Id.* at 613–14. Defendant, by contrast, received a full jury trial at which she was represented by counsel, testified, and presented documentary and testimonial evidence spanning years of her business operations. (*See* Order 4–6). The decision *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993), involves an excusable-neglect decision construing Bankruptcy Rule 9006(b) and Rule 60(b)(1). To the extent it speaks to Rule 60(b)(6) at all, it is to reiterate that the movant must be "faultless in the delay." *Id.* at 393. As shown above, Defendant was not

17

faultless. The theory she now advances was published, on her own professional platform, seven weeks before trial. And *Ackermann*, *Gonzalez*, and *BLOM Bank* each *denied* or reaffirmed the denial of Rule 60(b)(6) relief under standards Defendant cannot meet.

*Third*, Defendant argues that the disparity in resources between the parties — her limited means against Plaintiff's better-funded representation — weighs in favor of relief. It does not. Rule 60(b)(6) asks whether extraordinary circumstances justify reopening the judgment, not which party has more money. And the equities do not run the way Defendant suggests. A jury found that she defamed Plaintiff, promoted an altered sexual depiction of her, and intentionally inflicted emotional distress upon her. (*See* Verdict; Order 6–10, 23–24). That a jury reached those conclusions, and that Plaintiff now seeks to enforce the resulting judgment, is not made unjust by the parties' relative resources.

## VI. Even Under the *Liljeberg* Factors, Vacatur Would Be Unwarranted.

Because there is no § 455(a) violation, the Court need not reach *Liljeberg*'s three-factor vacatur analysis. But that analysis, too, forecloses relief. *See Liljeberg*, 486 U.S. at 864; *Parker*, 855 F.2d at 1523–27 (applying the factors and declining to vacate):

*Risk of injustice to the parties.* Defendant's liability was determined by a jury — not by any ruling of the Court she now seeks to impugn. The post-trial ruling she implicitly attacks did not substitute the Court's judgment for the jury's. It *reinstated the jury's own defamation verdict*, on a fully briefed motion that Defendant opposed through counsel, after the Court had assured both parties throughout trial that the media-defendant issue would remain subject to post-verdict review. (*See* Order 14, 19–24). Vacating a jury verdict and forcing a retrial of claims a jury has

18

already resolved would inflict a concrete injustice on Plaintiff. Denying the Motion inflicts none on Defendant, whose appellate rights remain fully preserved in her pending appeal.

*Risk of injustice in other cases.* Granting relief on this showing would announce that any losing litigant may obtain vacatur — or at minimum a remand and evidentiary excursion — by searching, post-judgment, for a connection between a judge's relatives' law firms and any person adjacent to the opposing party, then packaging social media commentary as newly discovered grounds for disqualification. That rule would invite gamesmanship in every case tried before a judge whose spouse practices law, and would penalize judges' families for the ordinary breadth of large-firm client rosters. The injustice in other cases runs entirely against Defendant's position.

*Public confidence in the judicial process.* Public confidence is not served by vacating jury verdicts on the strength of anonymous social media commentary about relationships among non-parties. The public's confidence rests on the principle that verdicts, rendered after fair trials, are undone only for substantial reasons — not because a judgment debtor, having exhausted her other options, located an article online. *See In re Moody*, 755 F.3d at 895 (judges are obliged not to recuse on "unsupported, irrelevant, or highly tenuous speculation" (quotation marks and citation omitted)).

## CONCLUSION

Defendant received a fair trial. A jury heard her evidence, rejected her defenses, and found her liable. Her Motion gives the Court no reason to undo that result. It identifies no fact connecting the presiding judge, her spouse, or his firm to this case. It rests on a theory that was public before trial, yet went unraised through the verdict, the judgment, and a denied motion to stay. And it describes no hardship beyond the ordinary consequence of losing a lawsuit. For these reasons,

19

Plaintiff respectfully requests that the Court deny the Motion in its entirety and grant such other

relief as the Court deems just and proper.

Dated: July 21, 2026

Respectfully submitted,

*/s/ Alejandro Brito*

Alejandro Brito (Fla. Bar No. 098442)
Jalaine Garcia (Fla. Bar No. 058632)
abrito@britopllc.com
jgarcia@britopllc.com
**BRITO, PLLC**
2121 Ponce de Leon Boulevard, Suite 650
Miami, FL 33134
Telephone: (305) 614-4071

Daniel L. Humphrey (Fla. Bar No. 1024695)
danielhumphrey@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
2601 S. Bayshore Drive, Suite 1500
Miami, FL 33133
Telephone: (305) 402-4880

Mari F. Henderson (pro hac vice)
Marie Harapetian (pro hac vice)
marihenderson@quinnemanuel.com
marieharapetian@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000

Joanna E. Menillo (pro hac vice)
Stephanie Kelemen (pro hac vice)
joannamenillo@quinnemanuel.com
stephaniekelemen@quinnemanuel.com
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
295 Fifth Avenue
New York, NY 10010
Telephone: (212) 849-7000

*Counsel for Plaintiff Megan Pete*

20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 21, 2026, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, and served a true and correct copy on Defendant, Milagro Elizabeth Cooper, pro se, by U.S. Mail, postage prepaid, and by email, addressed as follows: Milagro Elizabeth Cooper, 21175 Tomball Parkway #529, Houston, Texas 77070; milagrogramz@gmail.com.

/s/ Jalaine Garcia
Jalaine Garcia